**LOWE & ASSOCIATES, P.C.**
Steven T. Lowe, Esq. (SBN 122208)
8383 Wilshire Blvd., Ste. 1038
Beverly Hills, CA 90211
Telephone: (310) 477-5811
Facsimile: (310) 477-7672
steven@lowelaw.com

Counsel of record for
**Jane Doe**

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JANE DOE**, an Individual<br><br>Plaintiff,<br>v.<br><br>**LEILANI JOY GACUTAN**, an Individual; **MONIKA SWOBODA**, an Individual; **JULIEN DUFRESNE**, an Individual, and **ŁUCJA MATUSIAK**, an Individual;<br><br>Defendants. | Case No.: 3:25-cv-3001<br><br>**COMPLAINT FOR:**<br>1. **DEFAMATION – LIBEL;**<br>2. **CIVIL HARASSMENT – CALIFORNIA CIVIL CODE OF PROCEDURE §527.6**<br>3. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br>4. **STALKING – CALIFORNIA CIVIL CODE OF PROCEDURE §1708.7**<br>5. **UNFAIR COMPETITION - FALSE ADVERTISING – CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17200 et seq. and 17500 et seq.**<br><br>**DEMAND FOR JURY TRIAL** |

PLAINTIFF JANE DOE ("Doe" or "Plaintiff") hereby brings her Complaint ("Complaint") against DEFENDANTS LEILANI JOY GACUTAN ("Defendant Gacutan"), MONIKA SWOBODA ("Defendant Swoboda"), JULIEN DUFRESNE ("Defendant Dufresne), and ŁUCJA MATUSIAK ("Defendant Matusiak") as follows:

## PRELIMINARY STATEMENT

1. This case centers around cyberbullying, gaslighting, defamation, and harassment, online, whereby, Plaintiff, a businesswoman, drew the ire of strangers online. These strangers ganged up on her and relentlessly harassed her for years, for no rational reason, to the point of driving her to despair and attempted suicide; the latter was one of their apparent goals.

## PARTIES

2. Plaintiff is, and at all times herein relevant was, an individual residing and doing business in San Antonio, Texas.

3. At all times herein relevant, Defendant Gacutan was and is an individual residing and doing business in Rohnert Park, California.

4. At all times herein relevant, Defendant Swoboda was and is an individual residing and doing business in Manchester, England.

5. At all times herein relevant, Defendant Dufresne was and is an individual residing and doing business in Beaumes-De-Venise, Provence-Alpes-Côte d'Azur, France.

6. At all times herein relevant, Defendant Matusiak was and is an individual residing and doing business in Wałcz, Zachodniopomorskie, Poland.

## JURSIDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states and citizens of foreign states.

8. Venue is proper in this district under 28 U.S.C. § 1391(b) because Defendant Gacutan resides and does business in the Northern District of California while the other Defendants are citizens of foreign states.

## DIVISIONAL ASSIGNMENT

9. According to Local Rules 3-2(c) and (d), this case should be assigned to the San Francisco Division or the Oakland Division of the Northern District of California because Defendant Gacutan resides in Sonoma County.

## STATEMENT OF FACTS

**A. Jane Doe Becomes Member of Videogame Community and Monetizes Her IP**

10. Plaintiff Jane Doe has been a well-respected member of the "Cyberpunk 2077" community since 2021. "Cyberpunk 2077" is a role-playing video game released in 2020 where players can create and customize their own protagonist. Throughout the game, players must work with the character Johnny Silverhand who is voiced and visually modeled off Keanu Reeves.

11. Plaintiff, via her aliases "Zwei," "therockergf," and "rockergirlfriend," has established popularity within the "Cyberpunk 2077" community and the video game modification ("mod") community, where people alter one or more aspects of a video game, such as how it looks, behaves, poses, or performs, to create new game functionalities.

12. Plaintiff's alias "Zwei" is a well-known game character that is modeled after the Plaintiff's own likeness. While Jane Doe has allowed multiple people to take inspiration from her character in the past, when she felt the character went beyond inspiration, she would kindly ask the other party not to use certain aspects of her character, especially not recreating her exact likeness, in order to establish a boundary. If there was a disagreement, Jane Doe would just block the other person and move on.

13. Jane Doe has monetized this hobby by uploading her modifications to a website, *NexusMods.com*, where she obtains payment for downloads of her intellectual property ("IP"). She is well-known for her "pose mods." Pose mods are modifications made to a video game character's posture.

//

**B. A Dispute Arises in 2022**

14. In 2022, a friend of Plaintiff, @xBaebsae, had her modifications stolen by user @Flvck0, who then posted the stolen work to *Patreon.com*. Because of Plaintiff's stature in the community, @xBaebsae asked Plaintiff if she could bring attention to the issue and help her get the stolen work taken down.

15. Shortly thereafter, Jane Doe posted a Tweet on *X.com* ("X") and asked if people could report the upload to *Patreon.com*. @Flvck0 then reached out to Jane Doe, stated they did not know the work belonged to someone else, and promptly removed it. Considering the matter resolved, Jane Doe deleted her initial Tweet.

16. Shortly after, Plaintiff received a private message on X from Defendant Monika Swoboda ("Swoboda"). Swoboda scolded Jane Doe for her rudeness towards @Flvck0 and accused her of going on a "witch hunt" against them. Jane Doe informed Swoboda that the matter had been resolved privately, that the conversation was making her uncomfortable, and asked Swoboda to leave her alone. Swoboda then told Jane Doe, "**maybe one day someone will hit [you] so hard that [you] will fall off [your] high horse and think for a moment as clearly right now you lack class and brain**." In October 2022, Jane Doe blocked Swoboda.

17. Following this interaction, in October 2022, Defendant Swoboda went on to post Tweets **accusing Jane Doe of being a bully**. The Tweets contained screenshots of conversations that Jane Doe had with other individuals a few years prior. Jane Doe did not recall several of the conversations, but she did remember in one instance she had apologized to one of the individuals and they had moved past the conflict. Furthermore, Jane Doe reasonably believes that some of the posted conversations were manufactured.

18. Defendant Swoboda continued to harass Plaintiff and went on several homophobic rants on her own X page. Jane Doe is a member of the LGBTQIA+ community and reasonably believes that these rants were targeted towards her.

19. Defendant Swoboda then had Dong Hae Lee ("Lee") join in harassing Jane Doe on X. Lee constantly tweeted that he "**ha[d] the ability to do something**" to Plaintiff,

**and then delete the post**. This caused Plaintiff to often feel unsettled, concerned for her safety, and emotionally distressed.

### C. Plaintiff Hires Counsel to Stop the Harassment in Late 2022

20. In October 2022, Jane Doe hired Minc LLC, a law firm in Ohio, to issue cease-and-desist letters to Swoboda and Lee demanding that they discontinue harassing Plaintiff and posting false accusations about her. The letter demanded that they delete the false accusations and stop the harassment. Jane Doe's attorney also threatened to seek a restraining order against Lee, since he lived an hour away from her and was threatening her physical safety. Thereafter, Lee complied and left Jane Doe alone. In contrast, Swoboda posted the cease-and-desist letter she had received and gloated publicly online. Additionally, Swoboda claimed that Plaintiff had not hired a real lawyer and responded to the letter by asking if the attorney was real. Swoboda then continued to encourage people to harass Jane Doe. Attached hereto as **Exhibit 1** is a true and correct copy of Tweets posted by Defendant Swoboda on November 9, 2022, ridiculing Plaintiff.

21. In early 2023, Plaintiff hired McAllister Olivarius, attorneys in the United Kingdom, since Swoboda resides there. However, no action was taken because at that time, Swoboda had temporarily quieted down and Jane Doe believed that perhaps the harassment would finally end.

### D. Anonymous Defamatory and Cruel Posts Begin Appearing Again in March 2023

22. However, in March 2023, anonymous hate blogs arose on *Tumblr.com* ("Tumblr") that were dedicated to harassing Plaintiff. These blogs accused Jane Doe of being a horrible person who should not exist. **These blogs mirrored a lot of the language that Defendant Swoboda had previously been posting, as well as personal attacks against Jane Doe's work product, her physical appearance, age, sexuality, and more**.

23. From March 2023 to present, a total of five (5) anonymous "hate" blogs were posted. Every time a blog was created, it would soon be deleted, and another one would

soon appear, each more hateful and caustic than the last. Attached hereto as **Exhibit 2** is a true and correct copy of anonymous messages posted on the Tumblr hate blogs which attack the Plaintiff's character, insult the Plaintiff, and are overall calculated to cause the Plaintiff emotional distress.

24. The "hate" blogs caused Jane Doe significant emotional distress because people within the "Cyberpunk 2077" community were exposing her to hatred, contempt, ridicule, and obloquy. Jane Doe tried to ignore the blogs, hoping the organizer(s) would grow tired and stop, but instead, the blogs began to normalize the hatred that Jane Doe was receiving, and the anonymity of the blogs only caused further cyber bullying. Plaintiff reasonably believes that Defendants herein, either alone or in conjunction with others, are responsible therefor.

25. During this time period, anonymous users online published hateful messages about Jane Doe and anyone they perceived to be allies of Plaintiff, including her boyfriend. As a result, several of Jane Doe's friendships and close relationships ended because others began to believe the hateful messages posted about her were true.

26. Due to the "hate" blogs and the continuous harassment she received, Plaintiff attempted suicide in October 2023.

**E. Gacutan Jumps on the Hate Bandwagon Against Plaintiff in Late 2023**

27. Around this time, Defendant Leilani Joy Gacutan ("Gacutan") began to harass Plaintiff on *NexusMods.com* calling Plaintiff a "massive narcissist" and "attention w***e" who "manipulates, bullies, and runs players out of the fandom." Attached hereto as **Exhibit 3** is a true and correct copy of a comment that Defendant Gacutan made on *NexusMods.com* on December 16, 2023, harassing the plaintiff.

28. Jane Doe had assisted some of her friends in creating posing mods. Specifically, one of Jane Doe's friends asked for her help in creating explicit poses for "Cyberpunk 2077."

29. In response to the explicit poses, Defendant Gacutan claimed that Jane Doe did not respect the game or its creators. **Defendant Gacutan also falsely asserted that Jane**

**Doe was using Keanu Reeves's likeness to make porn without his consent**.

30. In February 2024, Gacutan began contacting Plaintiff's friends and sending messages such as "how dare you include [Jane Doe] in your work" and **falsely claiming that Jane Doe had harassed and abused people in the past**.

31. **Gacutan was eventually banned from *NexusMods.com* because she violated the website's policy by creating multiple accounts to harass Jane Doe and others**. It is reasonably believed that she did so in order to harass Ms. Doe constantly, while encouraging others to do the same. By maintaining her anonymity, Gacutan likely felt that she could harass Ms. Doe without consequences. *NexusMods.com* published the reason Gacutan was banned, the multiple accounts she held, and the harassing comments she made. Attached hereto as **Exhibit 4 is a true and correct copy of the post** *NexusMods.com* published explaining Gacutan's ban.

32. Gacutan then began acting as though she was the victim and posted a statement on X on May 2, 2024, in which she gaslit Jane Doe claiming that she was an advocate for those that had been bullied, despite having been consistently bullying Ms. Doe and encouraging others to do the same.

33. Soon thereafter, one of Plaintiff's friends, Lucent, confronted Gacutan about the *NexusMods.com* harassment and ban via private messages on X. Gacutan claimed that it had actually been her husband, Brian Matyas, who had used the *NexusMods.com* account in that manner, and accused Jane Doe of being the aggressor. It is of Plaintiff's reasonable belief that this is false and just a way for Gacutan to avoid liability. Gacutan then told Lucent that Ms. Doe is "known to harass tons of people, filing back charges on PayPal against artists, [and] getting people banned from Discord for no reason." All of these claims are demonstrably false. Attached hereto as **Exhibit 5** is a true and correct copy of the message between Lucent and Defendant Gacutan where she makes these false statements.

34. Lucent responded that Gacutan was falsifying accusations. In response, Gacutan "doxxed" Lucent by posting his private information, including his business and personal

phone number, online. It is reasonably believed that she did so in order to also cause Jane Doe to be in fear.

### F. In May 2024, the Cyberbullying and Online Harassment Against Plaintiff Continued Unrelentingly and Intensified

35. After this occasion, the cyberbullying and online harassment towards Jane Doe only intensified. **Beginning in or about May 2024, Gacutan constantly tweeted about Doe and even claimed that Doe had bullied one of Gacutan's friends. This was false**.

36. On May 3, 2024, another friend of Gacutan's, Defendant Julien Dufresne ("Dufresne"), issued three Tumblr blog posts about Jane Doe and what he perceived to have occurred within the "Cyberpunk 2077" community. This post republished some of the comments Gacutan had posted and included an album containing over forty images of every mod that Jane Doe had worked on. Dufresne also wrongfully accused Jane Doe of harassing people in the community for the past three years. This post only facilitated the continued onslaught of hate and harassment against Jane Doe. Attached hereto as **Exhibit 6** is a true and correct copy of the Tumblr blog Dufresne posted on May 3, 2024.

### G. Matusiak Initiates Her Campaign of Harassment and Defamation Against Plaintiff

37. In or about March 2024, Defendant Matusiak also jumped on the bandwagon in the harassment of Plaintiff.

38. On May 3, 2024, Matusiak retweeted Gacutan's aforementioned statement regarding being an advocate for those being bullied and said, "this situation is more outrageous than I thought, I'm this close of choosing violence" along with an emoticon of the thumb and index fingers being held closely together, indicating little room. Ms. Doe reasonably felt threatened by this message that Matusiak was willing to become violent against her.

39. In June 2024, Matusiak alleged in a Tweet that Jane Doe made in-game assets available within any mod and that her character, Zwei, was not custom-made or in her likeness. This assertion falsely implied that Jane Doe was not selling custom mods nor

8
**COMPLAINT**

had the ability to create custom mods and otherwise tarnished her mods. Since Jane Doe runs a business selling mods, these assertions damaged her professional reputation as they framed her as someone who is not skilled in making mods, directly contrasting what Jane Doe has claimed. Individuals in the "Cyberpunk 2077" community would be less interested in purchasing Jane Doe's mods if they did not think she was capable of making them herself. **Defendant Matusiak also called Jane Doe a serial abuser and stated that Matusiak had no respect for Jane Doe's privacy**. Attached hereto as **Exhibit 7** is a true and correct copy of multiple Tweets Matusiak posted about Jane Doe as referenced above.

40. **Matusiak then declared that everyone may copy Plaintiff's mod and release photos of it publicly, since it was based on "vanilla assets."** This assertion falsely implied that Jane Doe did not own her mod since it was based on assets anyone could obtain for free.

41. Defendant Matusiak then said that Jane Doe destroyed one of Matusiak's romantic relationships, hurt her mental health, and spread lies about her. She accused Jane Doe of being a serial abuser to many within the "Cyberpunk 2077" community. All of these statements are false.

42. In June and July of 2024, Matusiak posted on X that Jane Doe was not able to create poses herself, that she had no idea how to mod, and had others make the poses and mods for her, which she then publishes as her own. This assertion again questioned Jane Doe's ability to create mods and damaged her professional reputation as a modder within the community. Attached hereto as **Exhibit 8** is a true and correct copy of multiple Tweets posted by Matusiak.

43. As a result of the foregoing, on July 4, 2024, Plaintiff attempted suicide a second time. Attached hereto as **Exhibit 9** is a true and correct copy of medical records detailing Jane Doe's suicide attempt. Both suicide attempts were directly caused by the harassment Plaintiff faced at the hands of the Defendants.

44. That same evening, Jane Doe's significant other posted a Tweet directed towards

the "Cyberpunk 2077" community alluding to Jane Doe's attempt. Shortly after, many people in the community, including Matusiak, claimed that Jane Doe was pretending to be her boyfriend to hide the fact that she was back online. Within the comments of this post, other individuals also suggested that Jane Doe had faked her suicide attempt and referred to Jane Doe as a "thing." Attached hereto as **Exhibit 10** is a true and correct copy of X threads about Jane Doe's suicide attempt.

45. On December 18, 2024, Jane Doe's counsel sent notice to the Defendants in an attempt to amicably resolve the instant claims without the necessity of litigation. Attached hereto as **Exhibit 11** is a true and correct copy of the notice of claims letter that was sent to Defendant Gacutan and other defendants.

46. After notice was sent out, several of the hate blog attacking Ms. Doe that were specifically identified in the notice of claims letter were suddenly deleted.

47. While Defendant Gacutan responded to the notice on December 27, 2024, and thereafter expressed a purportedly sincere interest in resolving the claims without litigation, instead Gacutan changed counsel on March 6, 2025; Defendant Gacutan's new counsel expressed interest in consummating a resolution but then never followed up with any counter-offer or any further communications after March 11, 2025.

48. Ultimately, it appears that compliance with the demands contained in **Exh. 11** were dangled in front of the Plaintiff, and then pulled away, for the sole purpose of attempting to run out the statute of limitations and/or further antagonizing the Plaintiff and running up her legal fees.

49. Throughout all these instances of cyberbullying and harassment, Jane Doe has repeatedly reported a plethora of Tweets, posts, blogs, and accounts to their respective social media providers. X has not removed any of these posts or comments, and Tumblr has been nonresponsive, stating that they will only engage if there is a legal proceeding involved. This practice has been extremely draining and defeating, as Jane Doe has received virtually no support against this harassment to this day, increasing her feelings of helplessness and futility. Ms. Doe and her significant other have paused their plans to

start a family and have been unable to move forward with their lives due to this incessant harassment via a mob mentality, which was started by Defendant Swoboda, with Defendant Gacutan as the new ringleader.

## FIRST CAUSE OF ACTION

### Defamation – Libel

### (As to all Defendants)

50. Plaintiff repeats, realleges, and incorporates by reference the above paragraphs as though fully set forth herein.

51. Defendants Gacutan, Swoboda, Dufresne, and Matusiak recklessly and/or intentionally published defamatory content, of and concerning Plaintiff, to be made to individuals within the "Cyberpunk 2077" community, as well as potential and actual clients of Plaintiff.

52. The defamatory statements made from June 2023 to present included express and implied statements claiming Plaintiff is "a serial abuser," "known to harass tons of people," and more. Defendants also claimed that Plaintiff's behavior had caused others to exit the "Cyberpunk 2077" community.

53. Around June 2024, Plaintiff was also wrongfully accused of not being capable of running her own business with Defendants claiming that Plaintiff had other individuals create the mods and poses she was selling. These statements were meant to undermine her business and reputation.

54. These false and defamatory publications were and are in violation of Cal. Civil Code § 45. The statements and similar ones published by Defendants also impliedly asserted that Plaintiff has a history of cruelty which could not be further from the truth.

55. Plaintiff is informed, believes, and fears that these false and defamatory statements will continue to be published by the Defendants, and will foreseeably be republished by their recipients, all to the ongoing harm and injury to Plaintiff's business, professional, and personal reputations. Plaintiff also seeks redress in this action for all foreseeable republications.

56. The defamatory statements intended to injure Plaintiff in her occupation, or to expose her to hatred, contempt, ridicule, or shame, or to discourage others from associating or dealing with her.

57. None of the Defendants' defamatory publications against Plaintiff referenced above are true, nor are they privileged.

58. The above defamatory statements were understood as assertions of fact, and not as opinion. Plaintiff is informed and believes this defamation will continue to be negligently, recklessly, and intentionally published and foreseeably republished by Defendants, and foreseeably republished by recipients of the Defendants' publications, thereby causing additional injury and damages for which Plaintiff seeks redress by this action.

59. Each of these false defamatory publications were recklessly and intentionally published in a manner equating to "malice." All the publications were made with hatred, ill will, and intent to vex, harass, annoy, and injure Plaintiff, with knowledge that they were untrue. These false and defamatory statements were made to cause damage to Plaintiff's professional and personal reputation, her good name, her ability to economically benefit from this profession, and to humiliate her before third parties.

60. As a proximate result of the publication and republication of these defamatory statements by the Defendants, Plaintiff has suffered injury to her personal, business, and professional reputation including mental anguish, grief, anxiety, depression, pain, loss of ambition, embarrassment, humiliation, severe emotional distress, anxiety, shunning, fear, and significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, and general damage in an amount according to proof.

61. The Defendants committed the acts alleged herein recklessly, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, for an improper and evil motive amounting to malice (as described above) and which abused and/or prevent the existence of any conditional privilege, which in fact did not exist, and with a reckless and conscious disregard of Plaintiff's rights.

62. Plaintiff is thus entitled to recover general damages to compensate her for her loss of reputation, special damages for the harm caused to Plaintiff's profession, and punitive damages for the wanton, obnoxious, and despicable acts in an amount to be determined at trial according to proof.

## SECOND CAUSE OF ACTION

### Civil Harassment (California Civil Code of Procedure § 527.6)

### (As to all Defendants)

63. Plaintiff repeats, realleges, and incorporates by reference the above paragraphs as though fully set forth herein.

64. Plaintiff alleges that Defendants engaged in a credible threat of violence, or a knowing and willful course of conduct, directed at her that seriously alarmed, annoyed, or harassed her.

65. Defendants' course of conduct also served no legitimate purpose.

66. Defendants perpetrated and continued a constant "hate train" towards Plaintiff on multiple social media platforms since 2022 to present time.

67. This pattern of conduct is such that it would cause a reasonable person to suffer substantial emotional distress and actually caused substantial emotional distress to Plaintiff, as illustrated by her suicide attempts in October 2023 and July 2024.

68. None of the courses of conduct were constitutionally protected activity.

69. A permanent restraining order should be issued against all Defendants to protect Plaintiff from their continued harassment.

70. Attorneys' fees should also be granted to Plaintiff pursuant to Cal. Civ. Code §527.6(s).

## THIRD CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### (As to all Defendants)

71. Plaintiff repeats, realleges, and incorporates by reference the above paragraphs as though fully set forth herein.

72. Defendants engaged in extreme and outrageous conduct towards Plaintiff. The conduct included, but was not limited to, publicly calling her cruel names, defaming her personality and her reputation, as well as her business, constantly harassing her online, encouraging other people to harass Plaintiff over an extended period of time, and causing her to fear for her life.

73. Several of the Defendants asserted online that Plaintiff had faked her suicide attempt.

74. Defendants' actions were intentional or carried out with reckless disregard for the probability of causing emotional distress to the plaintiff.

75. Defendants knew or should have known that such conduct would likely result in severe emotional distress.

76. Defendant Gacutan specifically should have known that such conduct would likely result in severe emotional distress, as she claimed to be an advocate against bullying in May 2024. As an "advocate," she should have been able to recognize that she and the other Defendants were bullying and harassing Plaintiff.

77. The Defendants' conduct was so extreme and outrageous that it went beyond all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community. Specifically, Defendants repeatedly published cruel, false statements about Plaintiff, hoping that they could push her out of the "Cyberpunk 2077" community, causing severe emotional harm and leading to two suicide attempts.

78. Furthermore, our society does not allow for cyberbullying, and its aversion to it is illustrated in the many policies of websites that ban cyberbullying, as well as the general disgust people have towards cyberbullying and harassment.

79. As a direct and proximate result of Defendants' extreme and outrageous conduct, Plaintiff has suffered severe emotional distress. Plaintiff's emotional distress was a foreseeable result of Defendants' actions.

80. Plaintiff has experienced severe emotional distress, including but not limited to, anxiety, depression, suicidal ideation, and several suicide attempts.

81. Plaintiff has sought medical and psychological treatment as a result of the distress caused by Defendants' conduct.

82. As a direct and proximate result of Defendants' intentional infliction of emotional distress, Plaintiff has suffered damages, including but not limited to, medical expenses, lost wages, and other economic and non-economic damages. Plaintiff seeks compensatory damages as well as punitive damages to punish Defendants for their malicious conduct and to deter similar conduct in the future.

## FOURTH CAUSE OF ACTION

### Stalking (California Civil Code of Procedure § 1708.7)

### (As to Defendant Swoboda only)

83. Plaintiff repeats, realleges, and incorporates by reference the above paragraphs as though fully set forth herein.

84. Defendant Swoboda stalked Plaintiff and engaged in the pattern of conduct outlined above with the intent to "harass the Plaintiff."

85. Swoboda continuously harassed Plaintiff online through social media since 2022 thus placing Plaintiff under surveillance with the intent to harass Plaintiff.

86. Swoboda's harassing conduct "would cause a reasonable person to suffer substantial emotional distress" and did cause Plaintiff to suffer substantial emotional distress.

87. Plaintiff "clearly and definitely demanded" on multiple occasions for Defendant Swoboda to cease her pattern of conduct through direct messaging and through a cease-and-desist letter. Despite these attempts, Swoboda persisted in her pattern of harassing conduct anyway.

88. Swoboda's harassment was made with hatred, ill will, and intent to vex, harass, annoy, and injure Plaintiff equating her conduct to malice. Accordingly, punitive damages should be awarded against Defendant Swoboda to punish her and deter her and other such persons from committing such wrongful and malicious acts in the future.

89. As a direct and proximate result of Defendant Swoboda's conduct, Plaintiff has

suffered both general and special damages in the form of medical expenses, lost wages, and other economic and non-economic damages.

90. Plaintiff may also seek an injunction against Defendant Swoboda pursuant to Cal. Civ. Code §1708.7(d) to protect Plaintiff from her continued harassment.

## FIFTH CAUSE OF ACTION

**Unfair Competition - False Advertising**

**(California Business and Professions Code §§ 17200 et seq. and 17500 et seq.)**

**(As to Defendant Matusiak only)**

91. Plaintiff repeats, realleges, and incorporates by reference the above paragraphs as though fully set forth herein.

92. Defendant Matusiak engaged in unfair, deceptive, untrue, and misleading acts by posting that Plaintiff does not create her own mods nor have the ability to create mods. These statements meet the legal definition of false and misleading statements constituting unfair competition.

93. Defendant's statements concern Plaintiff's services since they reference Plaintiff's name directly and explicitly state her inability to create her own mods.

94. The statements are untrue and misleading, and Defendant Matusiak knows, or by the exercise of reasonable care should know, that her statements are untrue and misleading, and these publications are unfair, illegal, and fraudulent.

95. Plaintiff's business of selling her custom mods has suffered due to Defendant Matusiak's false allegations as the business relies on credibility to maintain its status.

96. As a direct and proximate result of Defendant Matusiak's conduct, Plaintiff has suffered harm to her business thus allowing for Plaintiff to seek restitution and other remedies against Matusiak pursuant to Cal. Bus. & Prof. Code § 17206.

97. Plaintiff may also seek an injunction against Defendant Matusiak pursuant to Cal. Bus. & Prof. Code § 17203 to protect Plaintiff from the harm to her professional reputation.

//

# RELIEF REQUESTED

WHEREFORE, Plaintiff prays:

**ON THE FIRST CAUSE OF ACTION:**

1. For general damages in an amount to be proven at trial, but no less than $2,000,000;

2. For special damages in an amount to be proven at trial, but no less than $2,000,000;

3. For punitive damages in an amount sufficient to punish Defendants' wrongful conduct and future misconduct.

**ON THE SECOND CAUSE OF ACTION:**

1. For a temporary restraining order, preliminary injunction, and permanent restraining order against the Defendants to protect Plaintiff from their continued harassment.

**ON THE THIRD CAUSE OF ACTION:**

1. For compensatory damages in an amount to be proven at trial, but no less than $2,000,000;

2. For punitive damages in an amount sufficient to punish Defendants' wrongful conduct and future misconduct.

**ON THE FOURTH CAUSE OF ACTION:**

1. For general damages in an amount to be proven at trial, but no less than $2,000,000;

2. For special damages in an amount to be proven at trial, but no less than $2,000,000;

3. For punitive damages in an amount sufficient to punish Defendant's wrongful conduct and future misconduct;

4. For a temporary restraining order, preliminary injunction, and permanent restraining order against Defendant Swoboda to protect Plaintiff from her continued harassment.

**ON THE FIFTH CAUSE OF ACTION:**

1. For actual economic damages in an amount to be proven at trial;
2. For civil penalties in the amount of $2,500 per violation to be paid to the Unfair Competition Law Fund;
3. For an injunction against Defendant Matusiak to prevent Matusiak from committing acts that constitute unfair competition.

**ON ALL CAUSES OF ACTION:**

1. For attorney's fees and costs incurred herein; and
2. For any other and further relief this Court may deem proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Complaint and on all other issues so triable.

Respectfully submitted,

April 1, 2025                                                                **LOWE & ASSOCIATES, P.C.**

By: _/s/Steven T. Lowe_____
Steven T. Lowe, Esq.
Attorney for Plaintiff