1   JANOVE PLLC
    RAPHAEL JANOVE (Bar No. 361193)
2   (raphael@janove.law)
    500 7th Ave., 8th Fl.
3   New York, NY 10018
    Telephone:    646-347-3940
4
    LAW OFFICE OF MAX RODRIGUEZ PLLC
5   MAX E. RODRIGUEZ (admitted *pro hac vice*)
    (max@maxrodriguez.law)
6   575 5th Ave., 14th Fl.
    New York, NY 10017
7   Telephone:  646-741-5167
8   Attorneys for Defendant,
    LELANI JOY GACUTAN
9
10              UNITED STATES DISTRICT COURT
11             NORTHERN DISTRICT OF CALIFORNIA

12  ALISA TAYTS, an Individual                    Case No.    3:25-cv-03001-JSC

13                      Plaintiff,
                                                  **DEFENDANT LEILANI JOY**
14         v.                                     **GACUTAN'S MOTION TO DISMISS**
                                                  **UNDER RULE 12(B)(6), STRIKE**
15  LEILANI JOY GACUTAN, an Individual;           **UNDER CAL. CIV. PROC. CODE §**
    MONIKA SWOBODA, an Individual;                **425.16, FOR ATTORNEY'S FEES AND**
16  JULIEN DUFRESNE, an Individual;               **COSTS UNDER THE SAME,**
    LUCJA MATUSIAK, an Individual; and            **AND TO STAY DISCOVERY**
17  KYLE JAMES ERVIN, an Individual
                                                  Date: November 13, 2025
18                      Defendants.               Time: 10:00 AM
                                                  Judge: Hon. Jacqueline Scott Corley
19                                                Courtroom: 08
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

NOTICE OF MOTION ........................................................................................................... 1

INTRODUCTION .................................................................................................................. 1

SUMMARY OF ALLEGED FACTS ....................................................................................... 3

RELEVANT PROCEDURAL BACKGROUND ....................................................................... 5

STANDARD OF REVIEW .................................................................................................... 6

ARGUMENT ......................................................................................................................... 7

I.     This is a SLAPP suit and Cal. Civ. Proc. Code § 425.16 applies ....................................... 7

II.    Plaintiff fails to state a claim for defamation against Ms. Gacutan ................................. 9

       A.     Several statements ascribed to Ms. Gacutan in the FAC are time barred ................. 9

       B.     Several statements ascribed to Ms. Gacutan in the FAC
              are fatally nonspecific ...................................................................................... 10

       C.     Ms. Gacutan's alleged statements in the FAC are not actionable ......................... 10

       D.     Even if Ms. Gacutan's statements were actionable, Plaintiff fails to plausibly
              allege falsity and the statements are substantially true ......................................... 13

       E.     Even if Ms. Gacutan's statements were actionable, Plaintiff fails to plausibly
              allege they were made with actual malice ........................................................... 14

III.   Plaintiff fails to state a claim for IIED against Ms. Gacutan ........................................... 15

IV.    Plaintiff fails to state a claim for civil harassment against Ms. Gacutan ........................ 17

V.     The Court should award Ms. Gacutan
       all fees and costs associated with defense of this action ................................................ 18

VI.    Discovery must be stayed pending resolution of
       Ms. Gacutan's motions to dismiss and strike .................................................................. 19

1

CONCLUSION ................................................................................................................. 20

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

## <u>CASES</u>

3

*Abiola v. ESA Mgmt., LLC*,
4
    No. 13-cv-03496-JCS, 2014 WL 988928 (N.D. Cal. Mar. 3, 2014) ................................... 16

5

*Alcorn v. Anbro Eng'g, Inc.*,
6
    2 Cal. 3d 493 (1970) ..................................................................................................... 16

7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ....................................................................................................... 6
8

*Batzel v. Smith*,
9
    333 F.3d 1018 (9th Cir. 2004) ....................................................................................... 2

10

*Bolbol v. Feld Ent., Inc.*,
11
    No. 5:11-cv-05539-PSG, 2012 WL 2019790 (N.D. Cal. June 4, 2012) ...................... 17, 18

12

*Chaker v. Mateo*,
13
    209 Cal. App. 4th 1138 (2012) ..................................................................................... 9

14

*Clark v. California Dep't of Forestry & Fire Prot.*,
    212 F. Supp. 3d 808 (N.D. Cal. 2016) ........................................................................ 10
15

*Clifford v. Trump*,
16
    339 F. Supp. 3d 915 (C.D. Cal. 2018) ......................................................................... 12

17

*Cochran v. NYP Holdings, Inc.*,
18
    58 F. Supp. 2d 1113 (C.D. Cal. 1998) ......................................................................... 11

19

*Cook v. UPS Cartage Servs., Inc.*,
    No. 2:18-cv-01182-MCE-KJN, 2018 WL 5013669 (E.D. Cal. Oct. 16, 2018) ................. 13
20

*Du Charme v. Int'l Bhd. of Elec. Workers*,
21
    110 Cal. App. 4th 107 (2003) ....................................................................................... 8

22

*Flowers v. Carville*,
23
    310 F.3d 1118 (9th Cir. 2002) ..................................................................................... 10

24

*Gallagher v. Philipps*,
25
    563 F. Supp. 3d 1048 (S.D. Cal. 2021) ........................................................................ 16

26

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974) ..................................................................................................... 15

27

*Gilbert v. Sykes*,
28
    147 Cal. App. 4th 13 (2007) ..................................................................................... 9, 16

*Gilbert v. Sykes*,
    147 Cal. App. 13 (2007)..................................................................................................... 16

*Hecimovich v. Encinal Sch. Parent Tchr. Org.*,
    203 Cal. App. 4th 450 (2012) ............................................................................................... 8

*Herring Networks, Inc. v. Maddow*,
    8 F.4th 1148 (9th Cir. 2021) ................................................................................... 7, 10, 19

*In re Nexus 6p Prod. Liab. Litig.*,
    No. 17-cv-02185-BLF, 2017 WL 3581188 (N.D. Cal. Aug. 18, 2017)............................... 19

*Jackson v. Mayweather*,
    10 Cal. App. 5th 1240 (2017) ............................................................................................. 16

*Jiang v. KNTV Television LLC*,
    No. 21-cv-01293-LB, 2025 WL 240798 (N.D. Cal. Jan. 17, 2025) .................................... 15

*Johnson v. City & Cnty. of San Francisco*,
    No. 23-cv-02110-HSG, 2023 WL 7003697 (N.D. Cal. Oct. 23, 2023) ................................. 6

*Kelley v. Conco Cos.*,
    196 Cal. App. 4th 191 (2011) ............................................................................................. 16

*Krinsky v. Doe 6*,
    159 Cal. App. 4th 1154 (2008) ........................................................................................... 12

*Leidholdt v. L.F.P. Inc.*,
    860 F.2d 890 (9th Cir. 1988) .............................................................................................. 16

*Lyons v. Hall Ambulance Serv. Inc.*,
    172 F.3d 57 (9th Cir. 1999) ................................................................................................ 13

*Makaeff v. Trump Univ., LLC*,
    715 F.3d 254 (9th Cir. 2013) .......................................................................................... 7, 14

*Maloney v. T3Media, Inc.*,
    853 F.3d 1004 (9th Cir. 2017)............................................................................................... 2

*Masson v. New Yorker Magazine, Inc.*,
    501 U.S. 496 (1991)............................................................................................................ 13

*Michel v. NYP Holdings, Inc.*,
    816 F.3d 686 (11th Cir. 2016)............................................................................................. 15

*Milkovich v. Lorain Journal Co.*,
    497 U.S. 1 (1990)................................................................................................................ 12

*Miller v. Sawant,*
    18 F.4th 328 (9th Cir. 2021) ........................................................................................ 10

*Obsidian Finance Grp., LLC v. Cox,*
    740 F.3d 1284 (9th Cir. 2014) ..................................................................................... 11

*Partington v. Bugliosi,*
    56 F.3d 1147 (9th Cir. 1995) ................................................................................. 11, 12

*Penrose Hill, Ltd. v. Mabray,*
    479 F. Supp. 3d 840 (N.D. Cal. 2020) ....................................................................... 12

*Planet Aid, Inc. v. Reveal,*
    44 F.4th 918 (9th Cir. 2022) ....................................................................................... 14

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress,*
    890 F.3d 828 (9th Cir. 2018)......................................................................................... 6

*Resolute Forest Prods., Inc. v. Greenpeace Int'l,*
    302 F. Supp. 3d 1005 (N.D. Cal. 2017) ..................................................................... 15

*Ringler Assocs. Inc. v. Md. Cas. Co.,*
    80 Cal. App. 4th 1165 (2000) ....................................................................................... 9

*Rockridge Tr. v. Wells Fargo, N.A.,*
    985 F. Supp. 2d 1110 (N.D. Cal. 2013) ..................................................................... 17

*Schrader Cellars, LLC v. Roach,*
    No. 21-cv-01431-SK, 2021 WL 9816545 (N.D. Cal. June 10, 2021) .................... 9, 10

*Shahid Buttar for Cong. Comm. v. Hearst Commc'ns, Inc.,*
    No. 21-cv-05566-EMC, 2022 WL 1215307 (N.D. Cal. Apr. 25, 2022) ..................... 13

*Shively v. Bozanich,*
    31 Cal. 4th 1230 (2003) ................................................................................................ 9

*Sprewell v. Golden State Warriors,*
    266 F.3d 979 (9th Cir. 2001).......................................................................................... 6

*Steam Press Holdings, Inc. v. Hawaii Teamsters, Allied Workers Union, Loc. 996,*
    302 F.3d 998 (9th Cir. 2002)........................................................................................ 12

*Summit Bank v. Rogers,*
    206 Cal. App. 4th 669 (2012) ....................................................................................... 7

*Taft v. Barresi,*
    No. 5:24-cv-01930-TJH-DTB, 2025 WL 2370831 (C.D. Cal. May 1, 2025) .................... 18

*Terry v. Davis Cmty. Church*,
   131 Cal. App. 4th 1534 (2005) ........................................................................ 7, 8

*Torain v. Liu*,
   No. 06-cv-5851-GBD, 2007 WL 2331073 (S.D.N.Y. Aug. 16, 2007) ............................... 12

*Tradin Organics USA LLC v. Terra Nostra Organics, LLC*,
   No. 23-cv-03373-AMO, 2023 WL 8481814 (N.D. Cal. Dec. 7, 2023) .............................. 19

*Underwager v. Channel 9 Australia*,
   69 F.3d 361 (9th Cir. 1995) ........................................................................ 11, 12

*Unelko Corp. v. Rooney*,
   912 F.2d 1049 (9th Cir. 1990) ........................................................................ 10

*Wenger v. Monroe*,
   282 F.3d 1068 (9th Cir. 2002) ........................................................................ 19

*Wilbanks v. Wolk*,
   121 Cal. App. 4th 883 (2004) ........................................................................... 9

*Wilcox v. Superior Ct.*,
   27 Cal. App. 4th 809 (1994) ............................................................................ 1

*Wong v. Tai Jing*,
   189 Cal. App. 4th 1354 (2010) ......................................................................... 8

*Wynn v. Chanos*,
   75 F. Supp. 3d 1228 (N.D. Cal. 2014) ................................................................ 15

*Yamasaki v. Zicam LLC*,
   No. 21-cv-02596-HSG, 2021 WL 3675214 (N.D. Cal. Aug. 19, 2021) .............................. 19

## STATUTES

Cal. Civ. Proc. Code § 340 ................................................................................. 9

Cal. Civ. Proc. Code § 425.16 ..................................................................... *passim*

Cal. Civ. Proc. Code § 527.6 ..................................................................... 5, 17, 18

## FEDERAL RULES

Fed. R. Civ. P. 12 ............................................................................ 1, 5, 6, 7, 19

Fed. R. Civ. P. 26 ......................................................................................... 19

CASE NO. 3:25-CV-03001-JSC
DEFENDANT GACUTAN'S MOTION TO DISMISS,
STRIKE, FOR FEES, AND TO STAY DISCOVERY

1
2
3
4
5
6

**NOTICE OF MOTION**

Defendant Leilani Joy Gacutan hereby respectfully moves this Court to: (1) dismiss Plaintiff Alisa Tayts' First Amended Complaint, ECF no. 12 ("FAC"), under Fed. R. Civ. P. 12(b)(6); (2) strike the FAC under Cal. Civ. Proc. Code § 425.16; (3) award attorney's fees and costs under Cal. Civ. Proc. Code § 425.16; and (4) stay discovery pending the Court's decision on (1)–(3). The motion is scheduled for a hearing on November 13, 2025, at 10:00AM. ECF no. 47–48.

7

**INTRODUCTION**

8
9
10
11
12
13
14
15
16
17
18

Plaintiff's claims against Ms. Gacutan — for defamation, civil harassment, and intentional infliction of emotional distress ("IIED") — are an improper attempt to transform Constitutionally-protected criticism of someone who considers herself a "well-respected member of" a video game community into tort liability. FAC ¶ 12. Plaintiff's own conduct, tellingly admitted in part in her own FAC, invited opinion about and vigorous disagreement from others in the same community. Whatever Plaintiff's personal struggles, personal disputes, or legal claims with respect to others may be, Ms. Gacutan has been sued for calling Plaintiff, among other things, "toxic," ECF no. 12-1 ("FAC Exs." or "FAC Exhibits") at 17, abusive, FAC ¶ 32, and a bully, FAC ¶ 49. But Plaintiff's displeasure does not manufacture liability. Plaintiff fails to state a claim against Ms. Gacutan in any respect. Ms. Gacutan's motions to dismiss, to strike, for attorney's fees, and to stay discovery should be granted for several reasons.

19
20
21
22
23
24
25
26
27
28

First, this case is a prime example of a strategic lawsuit against public participation (a "SLAPP" suit) and therefore Cal. Civ. Proc. Code § 425.16 applies. Despite "masquerad[ing] as [an] ordinary lawsuit[]," Plaintiff's allegations and claims against Ms. Gacutan are entirely meritless and appear intended not to vindicate any real legal right or address any real legal injury, but instead to deter "common citizens" like Ms. Gacutan "from exercising their political or legal rights or to punish them for doing so." *Wilcox v. Superior Ct.*, 27 Cal. App. 4th 809, 816 (1994). Ms. Gacutan's statements at issue in the FAC were made on public forums on an issue of public interest: the behavior of high-profile users in her video game community and their mistreatment of others in that community. California's "anti-SLAPP statute was enacted to allow for early dismissal of [such] meritless first amendment cases aimed at chilling expression through costly, time-

consuming litigation." *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1009 (9th Cir. 2017) (quoting *Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2004)).

<u>Second</u>, Plaintiff has failed to state a claim for defamation. Several statements referenced in the FAC were published more than one year before the original complaint in this case, placing them beyond the statute of limitations. Others are not plausibly alleged at all, lacking particularity that is required under California law. All of the statements are non-actionable opinion, insult, or hyperbole. Even if they were actionable, the FAC reveals they were substantially true. And even if they were actionable and provably false, Plaintiff was a limited-purpose public figure in the dispute over her own public behavior in the relevant video game community, requiring her to plausibly allege provably false statements of fact were made with actual malice. She cannot satisfy any of these necessary elements.

<u>Third</u>, Plaintiff has failed to state a claim for IIED. California law requires alternate claims that sound in defamation to fail along with the defamation claim. They are also duplicative for the same reason. Furthermore, even considered on its own terms, Plaintiff fails to state an IIED claim against Ms. Gacutan because nothing she is alleged to have said in the FAC satisfies any of the elements of that claim.

<u>Fourth</u>, Plaintiff has failed to state a claim for civil harassment. Similarly to IIED, it is a duplicative claim that must fail alongside Plaintiff's defamation claim. And because California's anti-SLAPP statute applies to Ms. Gacutan's statements, those statements are categorically excluded from civil harassment liability. Furthermore, Plaintiff fails to allege any of the necessary elements.

<u>Fifth</u>, because the anti-SLAPP statute applies and Plaintiff has failed to plausibly allege any claims, the FAC should be struck under Cal. Civ. Proc. Code § 425.16, entitling Ms. Gacutan to a mandatory award of attorney's fees and costs.

<u>Sixth and finally</u>, while the Court considers the motions to dismiss and strike, discovery should be stayed. The record already illustrates Plaintiff's efforts to abuse the discovery process in this case, seeking to hide an elephant in a mousehole and requesting early discovery based on shifting rationales that run afoul of binding Ninth Circuit precedent Plaintiff has repeatedly failed

to acknowledge or even attempt to address. Even leaving that aside, Ms. Gacutan has satisfied the threshold requirements for a stay, namely that she has submitted this motion which presents substantial arguments for dismissal of all claims against her.

## SUMMARY OF ALLEGED FACTS

The allegations herein are from the FAC and the FAC Exhibits. There are five named defendants — including Ms. Gacutan — and no unnamed or "Doe" defendants. FAC at 1. Plaintiff alleges she is a "well-respected member of the 'Cyberpunk 2077' community" who participated in these communities under the online names "Zwei," "therockergf," and "rockergirlfriend." FAC ¶¶ 12–13. Cyberpunk 2077 is a role-playing video game that allows substantial customization of the game's protagonist. *Id.* ¶ 12.

One aspect of the Cyberpunk 2077 online community Plaintiff participates in is designing and sharing "mods" — customized alterations to the look of the game, its environment, its characters' appearances or movements, or other game features. *Id.* ¶ 14. In 2022, Plaintiff alleges, in sum and substance, she had an argument online with Defendant Swoboda, another member of the Cyberpunk 2077 community, about Plaintiff's treatment of a third party whom she had publicly accused of stealing work from another community member, soliciting her followers to report the matter on another platform. *Id.* ¶¶ 16–19. Plaintiff explains the context that she encouraged others through a post on the social media site X.com to report another Cyberpunk 2077 modder on Patreon.com, a website where creators can monetize their work online, which forced the person to remove their work altogether. *Id.* ¶¶ 16–17. None of this alleged conduct involved Ms. Gacutan.

Plaintiff then elaborates that from October 2022 through "early 2023," she hired multiple lawyers to threaten Swoboda and another community member with legal action. *Id.* ¶¶ 22–23. Plaintiff then alleges that in March 2023, five "anonymous hate blogs" on the website Tumblr were created that included posts describing Plaintiff as "a horrible person who should not exist." *Id.* ¶ 24. The associated FAC Exhibit only shows two Tumblr accounts. FAC Exs. at 4–15. Based on her belief that the language used "mirrored" Swoboda's, Plaintiff alleges she must have been the author, FAC ¶ 24, but then leaps to conclude that all "Defendants herein, either alone or in conjunction with others, are responsible for the anonymous 'hate blogs.'" FAC ¶ 26. There are no factual

allegations included that permit the inference that other defendants like Ms. Gacutan were involved. Furthermore, as already mentioned above, Plaintiff does not list any Doe defendants with respect to these statements.

From December 2023 to February 2024, Plaintiff alleges Ms. Gacutan made a series of posts on the website NexusMods.com, which is a platform for Cyberpunk 2077 mod designers to share their work and engage with others. FAC ¶¶ 15, 29–33. Only some of these alleged posts by Ms. Gacutan are actually quoted or incorporated specifically in the FAC, but in specific language or even in Plaintiff's insufficient general summary, in each post Ms. Gacutan expresses her personal dislike for Plaintiff. In one, Ms. Gacutan allegedly says that Plaintiff is, among other things, a "massive narcissist," an "attention w***e," and "the most toxic modder in the entire [Cyberpunk 2077] community…." FAC Exs. at 17; *see also* FAC ¶ 29. In another, Ms. Gacutan objected to certain of Plaintiff's mods — which Plaintiff herself describes as "explicit poses" — calling them in Ms. Gacutan's view "porn." *Id.* ¶ 31. In another, Ms. Gacutan allegedly objected to others "includ[ing]" Plaintiff in their "work," and saying Plaintiff had harassed and abused others. *Id.* ¶ 32.

On May 2, 2024, Ms. Gacutan made a post on X.com explaining her general view that, in Plaintiff's words because she does not quote or include the post as she does others, Ms. Gacutan said "she was an advocate for those that had been bullied…." FAC ¶ 34.[1] The same day, Plaintiff alleges that one of her friends communicated with Ms. Gacutan in private messages on X.com. During the exchange, Plaintiff alleges Ms. Gacutan said Plaintiff is "known to harass tons of people, filing back charges on PayPal against artists, [and] getting people banned from Discord for no reason." FAC ¶ 35 (alteration in original). As explained above, Plaintiff's own FAC says she encouraged others to report a user on Patreon.com. FAC ¶¶ 16–17. Plaintiff alleges that Ms. Gacutan posted her friend's phone number, which she alleges was somehow intended to intimidate her. *Id.* ¶ 36. No direct quotes, dates, or associated screenshots are included in the FAC or FAC Exhibits for this post at Paragraph 36.

---

[1] The conspicuous failure to include this publicly-available post is telling. Post by @MrsVSilverhand, X.com, *available at* https://x.com/MrsVSilverhand/status/1786164335309644107 (May 2, 2024).

Plaintiff then alleges that starting in May 2024, Ms. Gacutan "constantly tweeted" about her, with the most specific representation being that Ms. Gacutan allegedly said "Plaintiff had bullied one of Gacutan's friends." *Id.* ¶ 49. No direct quotes, dates, or associated screenshots are included in the FAC or FAC Exhibits for any of these supposed posts.

Around her other allegations concerning statements by other defendants and not Ms. Gacutan, Plaintiff uses group pleading to claim, among other things, that Ms. Gacutan is a "ringleader" even though there is no alleged evidence indicating Ms. Gacutan coordinated with (or even knew) any other defendants, *id.* ¶ 69, that Ms. Gacutan and others published what Plaintiff generally calls "defamatory content" without specifying what it was or who said it, *id.* ¶ 71, and conclusorily gestures towards all the defendants — including Ms. Gacutan — being liable because of statements by unidentified authors, *id.* ¶¶ 72–74, 84–89.

As to Ms. Gacutan, Plaintiff asserts claims for (1) defamation; (2) civil harassment under Cal. Civ. Proc. Code § 527.6; and (3) IIED.

**RELEVANT PROCEDURAL BACKGROUND**

Plaintiff filed the original complaint in this action on April 1, 2025, originally proceeding as Jane Doe. ECF no. 1. On June 13, 2025, Plaintiff filed the FAC identifying herself by name. ECF no. 12. On June 16, 2025, Defendant Ervin filed a motion to dismiss under Rules 12(b)(1), 12(b)(3), and 12(b)(6). ECF no. 13. After Plaintiff voluntarily dismissed a breach of contract claim against Defendant Ervin, ECF no. 22, on June 28, 2025 he moved for leave to amend his motion to dismiss. ECF no. 23. Defendant Ervin then filed an amended motion to dismiss on July 24, 2025. ECF no. 42. Those motions are fully briefed.

On July 17, 2025, Plaintiff filed a waiver of service for Ms. Gacutan. ECF no. 36. On July 18, 2025, Plaintiff filed a "motion to conduct limited discovery early." ECF no. 37. Ms. Gacutan opposed that motion, pointing out that it was legally deficient in every respect. ECF no. 53. Defendant Ervin also opposed. ECF no. 54. After Plaintiff's reply brief changed rationales for the proposed early discovery, ECF no. 55–56, Ms. Gacutan filed an objection and sur-reply to point out that Plaintiff's newly-argued rationale was impermissible under binding Ninth Circuit precedent, ECF no. 58. Plaintiff objected to this being pointed out. ECF no. 59. On September 9,

1    2025, Plaintiff then attempted to accelerate consideration of the early discovery motion on the same

2    basis as her reply. ECF no. 60–61. This Court denied that request without prejudice. ECF no. 64.

3                                            **STANDARD OF REVIEW**

4            To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain factual

5    allegations that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662,

6    678 (2009). Although the Court must accept well-pleaded factual allegations as true, it "need not

7    … accept as true allegations that contradict matters properly subject to judicial notice or by exhibit,"

8    nor those "that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."

9    *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *as amended*, 275 F.3d 1187 (9th

10   Cir. 2001). The plaintiff's claims must be alleged not just adequately, but "'simpl[y], concise[ly],

11   and direct[ly]' to proceed…." *Johnson v. City & Cnty. of San Francisco*, No. 23-cv-02110-HSG,

12   2023 WL 7003697, at *2 (N.D. Cal. Oct. 23, 2023) (quoting Fed. R. Civ. P. 8(d)(1)). The defendant

13   should not be "left to speculate" what claims have been asserted, based on what conduct, because

14   the defendant cannot "prepare a defense … when it does not have adequate notice of what conduct

15   is alleged to have violated what law or right." *Johnson*, 2023 WL 7003697, at *2.[2]

16           Under California's anti-SLAPP statute, when a state-law claim "aris[es] from any act of

17   [the defendant] in furtherance of [the defendant's] right of … free speech … in connection with a

18   public issue," the cause of action "shall be subject to a special motion to strike, unless … the

19   plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Cal.

20   Civ. Proc. Code § 425.16(b)(1). The Court is required, in all respects, to "construe [Cal. Civ. Proc.

21   Code § 425.16] broadly." *Id.* § 425.16(a).

22           When "an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim" in

23   federal court, the usual Rule 12(b)(6) standard applies. *Planned Parenthood Fed'n of Am., Inc. v.*

24   *Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018). The

25   _____

26   [2] Plaintiff has previously claimed that statements raised in a pre-litigation demand letter attached
     to the FAC without any reference to their incorporation are actually additional actionable claims

27   at issue in this case. ECF no. 55 at 3. This argument, if Plaintiff still asserts it, violates basic rules
     of notice pleading, the *Iqbal* standard, and fair play. The Court should not consider any

28   statements not asserted as actionable in the FAC. Even if the Court does, these statements would
     fail for the same reasons discussed elsewhere in this brief.

plaintiff may not, in opposing such a motion, "convert [a defendant's] motion to strike into a motion for summary judgment" or "rel[y] on evidence outside of its complaint in defending against the motion…." *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1156 (9th Cir. 2021). If the Court grants the motion to strike (including under the Rule 12(b)(6) standard of review), the Court "<u>shall</u>" order that defendant "recover [his or her] attorney's fees and costs." Cal. Civ. Proc. Code § 425.16(c)(1) (emphasis added).

## ARGUMENT

## I.  <u>THIS IS A SLAPP SUIT AND CAL. CIV. PROC. CODE § 425.16 APPLIES</u>

California's anti-SLAPP statute allows a defendant to file a "special motion to strike" the complaint based on a two-step inquiry. First, "the moving defendant must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional right to free speech." *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013). Second, where the defendant's motion "challenge[s] the legal sufficiency of [the] complaint[]" the Court "analyze[s] pursuant to Rule 12" to determine whether the plaintiff has stated a claim. *Herring Networks*, 8 F.4th at 1156.

The first step is satisfied. Acts "in furtherance of the defendant's constitutional right to free speech" include, relevant here, "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or [] any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Cal. Civ. Proc. Code § 425.16(e)(3)–(4). In this case, all the statements allegedly made by Ms. Gacutan were on public internet forums, including but not limited to X and NexusMods. FAC ¶¶ 29, 49.[3] "Without doubt, Internet message boards are places 'open to the public or a public forum' for purposes of section 425.16." *Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 693 (2012) (collecting cases); *see also*

---

[3] One limited exception is a private message sent on X by Ms. Gacutan that Plaintiff claims (or at least implies) is defamatory. FAC ¶ 35. Although this private message is not in "a place open to the public or a public forum," it is still a statement in furtherance of Ms. Gacutan's exercise of her right of free speech in connection with an issue of public interest. *See* a We conclude subdivision (e)(4) applies to private communications concerning issues of public interest. *Terry v. Davis Cmty. Church*, 131 Cal. App. 4th 1534, 1546 (2005).

*Wong v. Tai Jing*, 189 Cal. App. 4th 1354, 1366 (2010) ("It is settled that Web sites accessible to the public … are public forums for purposes of the anti-SLAPP statute." (internal quotation marks omitted)).

Furthermore, Ms. Gacutan's alleged statements were in connection with an issue of public interest. The statements at issue in this case primarily concerned Plaintiff's conduct in the Cyberpunk 2077 mod community, and the effect that conduct had on numerous others and would have on others in the future. Where a person's conduct affects a larger community and thereby creates an issue of debate or discussion in that community, California courts have held that those are issues of public interest. *See Hecimovich v. Encinal Sch. Parent Tchr. Org.*, 203 Cal. App. 4th 450, 464–8 (2012) (holding basketball coach's treatment of players, giving rise to statements by parents about his behavior, was an issue of public interest); *Terry v. Davis Cmty. Church*, 131 Cal. App. 4th 1534, 1547 (2005) (holding accusation of sexual misconduct in church youth group, giving rise to statements by others in church community, was an issue of public interest). The operative question is whether the statements at issue "occur in the context of an ongoing controversy, dispute or discussion, such that it warrants protection by a statute that embodies the public policy of encouraging *participation* in matters of public significance." *Du Charme v. Int'l Bhd. of Elec. Workers*, 110 Cal. App. 4th 107, 118 (2003) (emphasis in original). As the FAC and exhibits make clear, numerous members of the Cyberpunk 2077 mod community were personally affected (or knew others personally affected) by Plaintiff's behavior. Ms. Gacutan and others wished to weigh in on what was going on in their online community.

Indeed, the sheer number of people Plaintiff has sued concerning the same debate and dispute reveals the degree of "ongoing controversy, dispute or discussion" her behavior inspired. *Du Charme*, 110 Cal. App. 4th at 118. Treatment of other community members in an open-to-all online community (and moderation of that community) is an important subject matter that all community members (whether they agree with Plaintiff or not) must feel free to speak on. This is precisely the kind of participation in a matter of public significance that the anti-SLAPP statute protects.

Furthermore, as the FAC itself explains, there were several commercial components to

Plaintiff's participation in that community. *See, e.g.*, FAC ¶ 15 (noting "Plaintiff has monetized this hobby" by "obtain[ing] payment for downloads of her mods"). Other participants in the community "have a legitimate interest in knowing about [Plaintiff's] character before engaging [her]" in any business relationship. *Chaker v. Mateo*, 209 Cal. App. 4th 1138, 1146–47 (2012); *see also Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 900 (2004) ("Wolk's statements [reporting a broker's business practices] were a warning not to use plaintiffs' services."). She also engaged in practices that affected other people's business interests in the Cyberpunk 2077 mod community. *See, e.g.*, FAC ¶¶ 16–17 (accusing someone else of stealing mod work and asking others on social media to report the person to the platform where that work is monetized).

Cal. Civ. Proc. Code § 425.16 applies to this case and the first step is satisfied.

## II.    PLAINTIFF FAILS TO STATE A CLAIM FOR DEFAMATION AGAINST MS. GACUTAN

The second step of the anti-SLAPP inquiry is satisfied because Plaintiff fails to state any claims against Ms. Gacutan, most importantly her claim for defamation. Under California law, defamation "involves the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special damage." *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 27 (2007) (quoting *Ringler Assocs. Inc. v. Md. Cas. Co.*, 80 Cal.App.4th 1165, 1179 (2000)). Plaintiff is separately required, to permit the Court to assess the merits at all, to "specifically identify the defamatory statement[s] and plead [their] substance." *Schrader Cellars, LLC v. Roach*, No. 21-cv-01431-SK, 2021 WL 9816545, at *5 (N.D. Cal. June 10, 2021). Plaintiff's claims are, in relevant part as explained below, time-barred, defectively pleaded, and have not satisfied any of the elements necessary to state a claim against Ms. Gacutan.

### A.  Several statements ascribed to Ms. Gacutan in the FAC are time barred

Under California law, defamation claims have a one-year statute of limitations, measured from the date of publication. Cal. Civ. Proc. Code § 340(c); *see also Shively v. Bozanich*, 31 Cal. 4th 1230, 1246–7 (2003). The original complaint in this action was filed on April 1, 2025, ECF no. 1, making the operative "cut off date" for statements in this action April 1, 2024.

Several statements Plaintiff alleges were made by Ms. Gacutan were published before April

1, 2024, and are inarguably time-barred. *See* FAC ¶¶ 29 (alleging Ms. Gacutan made statements "around this time" having just discussed conduct in October 2023, and identifying one statement from December 2023), 31 (same section describing statements "in Late 2023," without specifying the statement or the date it was made), 32 (February 2024), 72 ("defamatory statements made from June 2023 to present").

## B. Several statements ascribed to Ms. Gacutan in the FAC are fatally nonspecific

"[A] defamation complaint is sufficient … when it 'lists the precise statements alleged to be false and defamatory, who made them and when.'" *Miller v. Sawant*, 18 F.4th 328, 337 n.9 (9th Cir. 2021) (quoting *Flowers v. Carville*, 310 F.3d 1118, 1131 (9th Cir. 2002)); *see also Schrader Cellars*, 2021 WL 9816545, at *5. Failure to provide the "substance[,]" to "describe to whom Defendant allegedly made these comments[,]" or "the timing of these alleged statements" is grounds for dismissal. *Id.* at *5. The FAC repeatedly asserts that alleged statements by Ms. Gacutan are false or defamatory without specifically identifying them, where they were published, pleading their substance, or including dates. This approach is also separately suspect because the FAC includes several statements that are time-barred. Each of these vague and non-specific allegations separately fail on this basis. *See* FAC ¶¶ 29, 31–34, 49, 71, 73–74.

Separately, "it will not suffice to [] plead in conclusory fashion that allegedly defamatory statements were 'made by Defendants[.]'" *Clark v. California Dep't of Forestry & Fire Prot.*, 212 F. Supp. 3d 808, 815 (N.D. Cal. 2016). But that is precisely what Plaintiff has done, frequently relying on group pleading to lump together different alleged speakers. *See* FAC ¶¶ 25–27, 84–87, 92–95, 97.

## C. Ms. Gacutan's alleged statements in the FAC are not actionable

Plaintiff's defamation claim against Ms. Gacutan separately fails because each of the ascertainable and pleaded alleged statements by Ms. Gacutan are non-actionable opinion, hyperbole, or otherwise. "[T]he threshold question in every defamation suit is 'whether a reasonable factfinder could conclude that the [contested] statement implies an assertion of objective fact.'" *Herring Networks*, 8 F.4th at 1157 (quoting *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1053 (9th Cir. 1990)). The Court applies a three-factor test to determine whether a statement is an

actionable assertion of objective fact: "(1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates that impression, and (3) whether the statement in question is susceptible of being proved true or false." *Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995). The Court "examine[s] the totality of the circumstances in which [the statement] was made." *Underwager v. Channel 9 Australia*, 69 F.3d 361, 366 (9th Cir. 1995).

None of the alleged statements made by Ms. Gacutan in the FAC are actionable. The post included as Exhibit 3 and alleged at FAC ¶ 29 refers to Ms. Gacutan's request that "we [members of the Cyberpunk 2077 mod community] stop promoting this zwei person" and her view that Plaintiff is "the most toxic modder in the entire [] community" and is "a massive narcissist and attention w***e…." ECF no. 12-1 at 17. The post tells other modders to "watch out for her…." *Id.* In another alleged statement, Ms. Gacutan merely says "how dare you include [Plaintiff] in your work…." FAC ¶ 32. In another alleged statement, Plaintiff claims (without specific reference to the statement's text or its date) that Ms. Gacutan "claimed that Plaintiff did not respect the game or its creators" and — in response to what Plaintiff herself calls mods with "explicit poses" — that "Gacutan … asserted that Plaintiff was using Keanu Reeves's likeness to make porn without his consent." FAC ¶ 31. In another alleged statement, Ms. Gacutan refers to her belief that Plaintiff "harass[es] tons of people" in the Cyberpunk 2077 mod community and "get[s] people banned from Discord <u>for no reason</u>." FAC ¶ 35 (emphasis added); ECF no. 12-1 at 21.  In another alleged statement, Plaintiff claims that Ms. Gacutan "claimed that Plaintiff had bullied one of Gacutan's friends." FAC ¶ 49. Although they separately fail for non-specific or group pleading, numerous other alleged statements are similar. *See, e.g.*, FAC ¶¶ 25–27, 72.

These alleged statements include the kind of "loose, figurative [and] hyperbolic" language that "tends to negate the impression that a statement contains an assertion of verifiable fact." *Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113, 1123 (C.D. Cal. 1998), *aff'd*, 210 F.3d 1036 (9th Cir. 2000). This kind of language is especially common online, and courts applying California law are wary to find such online arguments to be actionable defamation. *See, e.g.*, *Obsidian Finance Grp., LLC v. Cox*, 740 F.3d 1284, 1293–94 (9th Cir. 2014) (affirming as non-actionable statements

1    website "obsidianfinancesucks.com" that individuals were "immoral," "really bad," "thugs," and

2    "evil doers"); *Penrose Hill, Ltd. v. Mabray*, 479 F. Supp. 3d 840, 856–58 (N.D. Cal. 2020) (finding

3    criticisms on Twitter were not actionable); *Clifford v. Trump*, 339 F. Supp. 3d 915, 925 (C.D. Cal.

4    2018), *aff'd*, 818 F. App'x 746 (9th Cir. 2020); *Krinsky v. Doe 6*, 159 Cal. App. 4th 1154, 1177

5    (2008) (calling someone a "mega scum bag" and the like on a message board not actionable).

6    Language that is "pointed, exaggerated, and heavily laden with emotional rhetoric and moral

7    outrage" is not defamatory. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 32 (1990).

8        The statements at issue were also made as a part of a substantial "war of words" between

9    Plaintiff, Ms. Gacutan, and others who disapproved of Plaintiff's behavior in the community.

10    *Torain v. Liu*, No. 06-cv-5851-GBD, 2007 WL 2331073, at *3 (S.D.N.Y. Aug. 16, 2007), *aff'd*,

11    279 F. App'x 46 (2d Cir. 2008). "In such a heated and volatile setting, even seemingly 'factual'

12    statements take on an appearance more closely resembling opinion than objective fact." *Steam*

13    *Press Holdings, Inc. v. Hawaii Teamsters, Allied Workers Union, Loc. 996*, 302 F.3d 998, 1006

14    (9th Cir. 2002); *see also Underwager*, 69 F.3d at 366–67 (explaining that statements were made

15    "on opposite sides of the heated debate" were not actionable).

16        Furthermore, none of the alleged statements are susceptible to being proven true or false.

17    Calling someone a "massive narcissist," calling the (in Plaintiff's words) "explicit poses" mods

18    Plaintiff made "porn," calling someone's treatment of others "harass[ment] and abuse[]" or

19    "bull[ying]," or claiming their actions getting others banned from a service "for no reason" cannot

20    be verified as true or false. *See Underwager*, 69 F.3d at 367 (statements that "reflect opinions of

21    [plaintiff's] motivations and personality" did not "rest on 'a core of objective evidence'").

22        Because statements must be assessed using the "general tenor of the entire work" to assess

23    whether "the defendant was asserting an objective fact," individual words or phrases cannot be

24    parsed out from the larger context indicated by the above. *Partington*, 56 F.3d at 1153. Ms. Gacutan

25    did not like Plaintiff, did not like the way she treated others in the community, and freely shared

26    that opinion using the classic linguistic hallmarks of non-actionable opinion, hyperbole, insult, or

27    otherwise.

28

1
2

**D.  Even if Ms. Gacutan's statements were actionable, Plaintiff fails to plausibly allege falsity and the statements are substantially true**

3  Plaintiff's claims of falsity as to Ms. Gacutan are entirely conclusory. *See, e.g.*, FAC ¶¶ 31–

4  32, 35, 49. The failure to provide any allegations that "support her conclusory allegations that those

5  statements are false" renders her defamation claim defective as a matter of law on a motion to

6  dismiss. *Cook v. UPS Cartage Servs., Inc.*, No. 2:18-cv-01182-MCE-KJN, 2018 WL 5013669, at

7  *2 (E.D. Cal. Oct. 16, 2018). But even if elements of Ms. Gacutan's statements were actionable,

8  and the FAC adequately pleaded falsity, the statements were substantially true. When a statement

9  is "substantially true so as to justify the 'gist or sting' of the remark" a Plaintiff cannot state a claim

10  for defamation under California law. *Lyons v. Hall Ambulance Serv. Inc.*, 172 F.3d 57 (9th Cir.

11  1999); *see also Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516–17 (1991). "In evaluating

12  whether challenged statements are substantially true, a court must examine whether a statement

13  'would have a different effect on the mind of the reader from that which the pleaded truth would

14  have produced." *Shahid Buttar for Cong. Comm. v. Hearst Commc'ns, Inc.*, No. 21-cv-05566-

15  EMC, 2022 WL 1215307, at *6 (N.D. Cal. Apr. 25, 2022) (quoting *Masson*, 501 U.S. at 517).

16  Plaintiff's own FAC and related exhibits admit, among other things, that she used her online

17  platform to report (and encourage others to report) users on monetizing platforms like Patreon,

18  FAC ¶ 17, includes  posts by others who agree Plaintiff "has been harassing people, either actively

19  or passively," ECF no. 12-1 at 32, that another community member (a defendant in this action) was

20  banned from Discord in relation to their dispute, ECF no. 12-1 at 29, and that she "help[ed]" others

21  to make mods that included "explicit poses," FAC ¶ 30. To the extent the alleged statements are

22  actionable at all, these admissions demonstrate it was substantially true for Ms. Gacutan to say,

23  among other things, that Plaintiff "harass[es] … people," FAC ¶ 35, reported people on another

24  monetizing platform, *id.*, made "porn," FAC ¶ 31, "bullied one of Gacutan's friends," FAC ¶ 49,

25  and so on. None of these statements can be said to have had a "different effect on the mind of the

26  reader" than what Plaintiff alleges is the truth (to the extent she alleges it at all).

27
28

**E.  Even if Ms. Gacutan's statements were actionable, Plaintiff fails to plausibly allege they were made with actual malice**

When assessing defamation claims, courts also look to whether the plaintiff is a "private individual[]," an "all-purpose public figure[]," or a "limited-purpose public figure[.]" *Planet Aid, Inc. v. Reveal*, 44 F.4th 918, 924 (9th Cir. 2022). If a plaintiff is an all-purpose or limited-purpose public figure, they must plausibly allege not just that statements are actionable statements of fact, and that they are false, but also that "the allegedly defamatory statement was made with 'actual malice'—that is, 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Planet Aid*, 44 F. 4th at 924 (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964)). Plaintiff was a limited-purpose public figure in the Cyberpunk 2077 mod community, especially as it pertained to her own behavior, which invited substantial controversy and debate. Plaintiff is therefore required to plausibly allege that defamatory statements, if actionable, were made with actual malice. She has not and cannot.

The Ninth Circuit has laid out a three-prong test to assess whether a plaintiff is a limited-purpose public figure: "whether (i) a public controversy existed when the statements were made, (ii) whether the alleged defamation is related to the plaintiff's participation in the controversy, and (iii) whether the plaintiff voluntarily injected itself into the controversy for the purpose of influencing the controversy's ultimate resolution." *Makaeff*, 715 F.3d at 266. Each of these factors is satisfied for Plaintiff here.

There was substantial controversy in the Cyberpunk 2077 mod community about Plaintiff and her behavior. *See, e.g.*, FAC ¶¶ 16–19 (Plaintiff's campaign to report another modder on Patreon results in Defendant Swoboda posting about her going on a "witch hunt" and "being a bully"). The FAC and its exhibits refers multiple times to Plaintiff's relative notoriety in this community. *See* FAC ¶¶ 12 (referring to herself as a "well-respected member of the 'Cyberpunk 2077' community"), 50 (describing a series of "three Tumblr blog posts about Plaintiff and what he perceived to have occurred within the 'Cyberpunk 2077' community"); ECF no. 12-1 at 4 (referring to Plaintiff as a "big player[] in the fandom"), 6 (joking that Plaintiff is "too far above all us peasants"), 29 (referring to Plaintiff's access to an "army to enforce her will"). All of these

instances of "controversy" within the Cyberpunk 2077 mod community were directly related to Plaintiff's participation in the controversy; indeed, she was the main subject of the controversy. And, whether she agrees with the characterization or not, Plaintiff's actions (admitted in the FAC) asking others to report people on Patreon, having people banned, and criticizing others (which Ms. Gacutan reasonably and within her rights called harassment and bullying) voluntarily injected her into the controversy.

Accordingly, Plaintiff is required to plausibly allege actual malice. "To demonstrate reckless disregard of the truth, the party seeking to show actual malice must show that the speakers 'entertained serious doubts as to the truth' of their statements." *Resolute Forest Prods., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1017–18 (N.D. Cal. 2017) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 334 n.6 (1974)). Plaintiff cannot — and indeed does not attempt to — reach this threshold in the FAC. Ms. Gacutan did not have any actual knowledge of any alleged falsity, and did not entertain serious doubts about the truth or falsity (if even actionable) of anything she said. The FAC does not attempt to say otherwise in more than conclusory fashion. The Court cannot consider "portions of the complaint where [the Plaintiff] alleges in a purely conclusory manner that the defendants had a particular state of mind in publishing the statements as '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,' are insufficient to support a cause of action." *Resolute Forest*, 302 F. Supp. 3d at 1018 (quoting *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 703–4 (11th Cir. 2016)). Absent those, Plaintiff "does not provide any specific allegations that would support a finding that [Ms. Gacutan] harbored serious subjective doubts as to the validity of [her] assertions." *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1239 (N.D. Cal. 2014).

For all these reasons, Plaintiff has filed to state a claim for defamation against Ms. Gacutan.

### III.    PLAINTIFF FAILS TO STATE A CLAIM FOR IIED AGAINST MS. GACUTAN

Plaintiff also fails to state a claim for IIED for three principal reasons. First, because Plaintiff has failed to state a claim for defamation, and the IIED claim arises from the same facts, she has necessarily failed to state a IIED claim too. *See Jiang v. KNTV Television LLC*, No. 21-cv-01293-LB, 2025 WL 240798, at *8 (N.D. Cal. Jan. 17, 2025) (dismissing IIED claim where

defamation claim was also dismissed); *Gilbert v. Sykes*, 147 Cal. App. 13, 34 (2007) ("[T]he collapse of [the] defamation claim spells the demise of all other causes of action … which allegedly arise from the same publication….").

Second, even leaving aside the merits of the defamation claim, the IIED claim is entirely duplicative and must be dismissed for this reason as well. *See Gallagher v. Philipps*, 563 F. Supp. 3d 1048, 1104 (S.D. Cal. 2021) (dismissing IIED claim "based solely on the publication of the allegedly defamatory [statements]" (quoting *Silva v. Hearst Corp.*, No. 97-cv-4142-DDP-BQRX, 1997 WL 33798080, at *3 (C.D. Cal. Aug. 22, 1997)).

Third, even on its own terms, Plaintiff has failed to state a claim for IIED. Under California law, "[a] cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Kelley v. Conco Cos.*, 196 Cal. App. 4th 191, 215 (2011) (cleaned up). Conduct is outrageous when it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* (cleaned up).

But liability for IIED "generally 'does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities,' but only to conduct so extreme and outrageous 'as to go beyond all possible bonds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Abiola v. ESA Mgmt., LLC*, No. 13-cv-03496-JCS, 2014 WL 988928, at *5 (N.D. Cal. Mar. 3, 2014) (quoting *Alcorn v. Anbro Eng'g, Inc.*, 2 Cal.3d 493, 499 (1970)). Plaintiff, in essence, seeks to transmute criticism into actionable extreme and outrageous conduct. Even extremely heated language in criticism has been rejected as not constituting extreme and outrageous conduct. *See Leidholdt v. L.F.P. Inc.*, 860 F.2d 890, 892–94 (9th Cir. 1988); *Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1265–66 (2017), *as modified* (Apr. 19, 2017); *Gilbert v. Sykes*, 147 Cal. 4th 13, 34 (2007).

Plaintiff similarly fails to plausibly allege other elements of IIED, including that she fails to make any allegation of Ms. Gacutan's intent, and fails to make any plausible (rather than

1  conclusory) allegation that Ms. Gacutan was the actual and proximate cause of any alleged

2  emotional distress.

3       Plaintiff's claim for IIED fails.

4  **IV.  PLAINTIFF FAILS TO STATE A CLAIM FOR CIVIL HARASSMENT**

5       **AGAINST MS. GACUTAN**

6       Plaintiff also fails to state a claim for Civil Harassment under Cal. Civ. Proc. Code § 527.6.[4]

7  A civil harassment claim under this provision "provides for the issuance of a temporary restraining

8  order or injunction on behalf of a person who has suffered harassment, defined in relevant part as

9  'a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys

10  or harasses the person, and that serves no legitimate purpose.'" *Bolbol v. Feld Ent., Inc.*, No. 5:11-

11  cv-05539-PSG, 2012 WL 2019790, at *13 (N.D. Cal. June 4, 2012) (quoting Cal. Civ. Proc. Code

12  § 527.6(b)(3)), *aff'd*, 613 F. App'x 623 (9th Cir. 2015). A "course of conduct" in this context is "a

13  pattern of conduct composed of a series of acts over a period of time, however short, evidencing a

14  continuity of purpose." Cal. Civ. Proc. Code § 527.6(b)(1). To be actionable, the course of conduct

15  "must be that which would cause a reasonable person to suffer substantial emotional distress, and

16  must actually cause substantial emotional distress to the petitioner." *Id.* § 527.6(b)(3). Finally,

17  critically here, a course of conduct does not include "constitutionally protected activity." *Id.* §

18  527.6(b)(1).

19       Plaintiff's civil harassment claim against Ms. Gacutan fails for three critical reasons. First,

20  and most importantly, California's anti-SLAPP statute applies to Ms. Gacutan's statements in this

21  case. *See supra* Argument § I. By their very nature, statements to which the anti-SLAPP statute

22  applies involve "the valid exercise of the constitutional right[] of freedom of speech…." Cal. Civ.

23  Proc. Code § 425.16(a). These statements are therefore *per se* excluded from civil harassment

24  liability. *See* Cal. Civ. Proc. Code § 527.6(b)(1); *Rockridge Tr. v. Wells Fargo, N.A.*, 985 F. Supp.

25  2d 1110, 1156–7 (N.D. Cal. 2013) (dismissing civil harassment claim for failure to plausibly allege

26  that conduct at issue "was not [for] a legitimate purpose … nor … improper").

27

28  ---
[4] Plaintiff's civil harassment claim separately also fails for the same reasons stated above about the IIED claim, namely that it must fall with the defamation claim and, in any case, is duplicative.

1    Second, even if anti-SLAPP didn't apply, the FAC's allegations fail to allege a single act,

2    much less a "course of conduct," that Ms. Gacutan engaged in that was sent to Plaintiff. *See* Cal.

3    Civ. Proc. Code § 527.6(b)(1) (describing a "course of conduct" as a "series of acts" including

4    "following or stalking <u>an individual</u>, making harassing telephone calls <u>to an individual</u>, or sending

5    harassing correspondence <u>to an individual</u> by any means" (emphasis added)); *id.* § 527.6(b)(3)

6    (defining harassment as "conduct <u>directed at a specific person</u>" (emphasis added)). All of the

7    alleged statements by Ms. Gacutan in the FAC are statements that were directed to public forums

8    or third parties, <u>not</u> to Plaintiff.

9    Third, the FAC does not plausibly allege that any of Ms. Gacutan's statements "seriously

10    alarm[ed], annoy[ed], or harass[ed]" Plaintiff, that any alleged "course of conduct" would "cause a

11    reasonable person to suffer substantial emotional distress," or that any of Ms. Gacutan's statements

12    "actually cause[d] substantial emotional distress" to Plaintiff. Cal. Civ. Proc. Code § 527.6(b)(3).

13    Instead, the FAC deploys a series of conclusory and unsupported allegations on this point. *See, e.g.*,

14    FAC ¶¶ 33 (alleging "[i]t is reasonably believed" why Ms. Gacutan allegedly used multiple

15    accounts without any evidence), 36 (alleging a statement not directed to Plaintiff is "reasonably

16    believed" to have been intended "to also cause Plaintiff to be in fear"). This is not sufficient to state

17    a claim. *See Taft v. Barresi*, No. 5:24-cv-01930-TJH-DTB, 2025 WL 2370831, at *13 (C.D. Cal.

18    May 1, 2025); *Bobol*, 2012 WL 2019790, at *13. Furthermore, most other allegations on these

19    points are pleaded in group fashion as to all defendants, which cannot square with the statute's

20    requirement that a defendant "actually cause substantial emotional distress…." Cal. Civ. Proc. Code

21    § 527.6(b)(3); *see also* FAC ¶¶ 84–89 (pleading entirety of civil harassment claim as to all

22    "Defendants").

23    Plaintiff's claim attempts to transform valid and legally protected criticism into actionable

24    harassment. She cannot and fails to state a claim.

## V.    <u>THE COURT SHOULD AWARD MS. GACUTAN ALL FEES AND COSTS</u>
## <u>ASSOCIATED WITH DEFENSE OF THIS ACTION</u>

27    As explained above, Ms. Gacutan has demonstrated that both steps of the anti-SLAPP

28    analysis are satisfied. On that basis, Ms. Gacutan's motion to strike should be granted and she "<u>shall</u>

be entitled to recover … [her] attorney's fees and costs." Cal. Civ. Proc. Code § 425.16(c)(1) (emphasis added). No other proof is required for Ms. Gacutan to be awarded fees as a general matter. The particulars of the awarded amount would be subject to Local Rule 54-5, and Ms. Gacutan will comply with those requirements upon the Court's grant of the motions to dismiss and strike.

## VI.  DISCOVERY MUST BE STAYED PENDING RESOLUTION OF MS. GACUTAN'S MOTIONS TO DISMISS AND STRIKE

Rule 26(c) allows the Court, upon a showing of good cause, to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by, among other things, staying discovery. Fed. R. Civ. P. 26(c). "Good cause for staying discovery may exist when the district court is 'convinced that the plaintiff will be unable to state a claim for relief.'" *In re Nexus 6p Prod. Liab. Litig.*, No. 17-cv-02185-BLF, 2017 WL 3581188, at *1 (N.D. Cal. Aug. 18, 2017) (quoting *Wenger v. Monroe*, 282 F.3d 1068, 1077 (9th Cir. 2002)). When considering a stay of discovery, the Court considers: "(1) whether the pending motion is potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is directed, and (2) whether the pending dispositive motion can be decided absent additional discovery." *Tradin Organics USA LLC v. Terra Nostra Organics, LLC*, No. 23-cv-03373-AMO, 2023 WL 8481814, at *1 (N.D. Cal. Dec. 7, 2023). Staying discovery does not require a full assessment of the merits of the related motion, but does ask the Court to take a "preliminary peek at the merits of the pending dispositive motion to assess whether a stay is warranted." *Yamasaki v. Zicam LLC*, No. 21-cv-02596-HSG, 2021 WL 3675214, at *1 (N.D. Cal. Aug. 19, 2021).

As explained above, Ms. Gacutan raises "potentially dispositive" arguments that Plaintiff fails to state a claim as to "the entire case as to [her]." *Tradin Organics*, 2023 WL 8481814, at *2. Furthermore, Ms. Gacutan's motions to dismiss and strike can be — indeed, must be — resolved without the need for discovery. *See Herring Networks*, 8 F.4th at 1156 (holding a plaintiff "cannot convert [a defendant's] motion to strike into a motion for summary judgment" and that a plaintiff therefore cannot "rel[y] on evidence outside of its complaint in defending against the motion" if it is analyzed under the Rule 12(b)(6) standard (emphasis added)). A stay is further warranted because

1   Plaintiff has aggressively and vexatiously tried to seek early discovery in this case —which she

2   now admits is supposedly to oppose this motion — even though as quoted above the Ninth Circuit

3   has explicitly said that no evidence can be used by a plaintiff for that purpose on an anti-SLAPP

4   motion like this one. The same has been pointed out to Plaintiff multiple times, who has failed to

5   acknowledge or address the issue in any way, instead insisting (while ignoring binding precedent)

6   that she is entitled to discovery for this improper purpose. *See* ECF no. 55–56, 58, 61-3.

7          Accordingly, a stay of discovery pending the resolution of Ms. Gacutan's other motions

8   should be granted.

9                                    **<u>CONCLUSION</u>**

10         For the reasons explained above, Defendant Leilani Joy Gacutan's motions to dismiss, to

11  strike, for attorney's fees and costs, and to stay discovery pending resolution of the other motions

12  should be granted.

13

14

15  Dated:  September 18, 2025         **LAW OFFICE OF MAX RODRIGUEZ PLLC**

16                                     By:_____*/s/ Max Rodriguez*_____
                                              Max E. Rodriguez (admitted *pro hac vice*)

17

18                                     575 5th Avenue, 14th Fl.
                                       New York, NY 10017

19                                     Tel: (646) 741-5167
                                       max@maxrodriguez.law

20
                                       **JANOVE PLLC**

21
                                       By:_____*/s/ Raphael Janove*_____

22                                            Raphael Janove

23                                     500 7th Ave., 8th Fl.

24                                     New York, NY 10018
                                       Tel: (646) 347-3940

25                                     raphael@janove.law

26

27                                     *Attorneys for Defendant Leilani Joy Gacutan*

28