UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALISA TAYTS,<br><br>        Plaintiff,<br><br>    v.<br><br>LEILANI JOY GACUTAN, et al.,<br><br>        Defendants. | Case No. 3:25-cv-03001-JSC<br><br>**ORDER DISCHARGING ORDER TO SHOW CAUSE AND RESOLVING PENDING MOTIONS**<br><br>Re: Dkt. Nos. 37, 42, 59, 60, 65, 66, 79 |

Alisa Tayts brings defamation and assorted state law claims against five Defendants regarding statements she alleges these Defendants made about her online. (Dkt. No. 12.[1]) Of the five Defendants, only two have appeared: Leilani Joy Gacutan and Kyle James Ervin. The other three Defendants have not appeared and are alleged to be foreign citizens. (*Id*. at ¶¶ 3-5.) Both Ms. Gacutan and Mr. Ervin moved to dismiss and Plaintiff moved for early discovery seeking to obtain information regarding 32 social media accounts. (Dkt. Nos. 37, 42, 65.) The Court previously granted Mr. Ervin's motion to dismiss in part dismissing the federal claim and issuing an Order to Show Cause (OSC) as to diversity jurisdiction. (Dkt. No. 79.) Having reviewed the parties' responses to the OSC and the briefing on all the motions, the Court concludes oral argument is unnecessary, *see* Civ. L.R. 7-1(b), DISCHARGES the OSC, and rules on the motions as set forth below.

---

[1] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

**BACKGROUND**

**A.     Amended Complaint Allegations**

Plaintiff is a video gamer in the "Cyberpunk 2077" community. (Dkt. No. 12 at ¶ 12.) "'Cyberpunk 2077' is a role-playing video game released in 2020 where players can create and customize their own protagonist." (*Id*.) Plaintiff, using the professional business names "Zwei," "therockergf," and "rockergirlfriend," established popularity within the "Cyberpunk 2077" community and the video game modification ("mod") community beginning in 2021. (*Id*. at ¶ 13.) Zwei is a "character modeled after Plaintiff's own likeness." (*Id*. at ¶ 14.) Plaintiff has monetized her hobby of making mods by selling them on NexusMods.com. (*Id*. at ¶ 15.) She is well-known for her "pose mods" which are mods made to a video game character's posture. (*Id*.)

In 2022, Defendant Monika Swoboda contacted Plaintiff on X accusing her of going on a witch hunt following posts Plaintiff had made on X regarding a friend's stolen mods, and Plaintiff thereafter blocked Swoboda on X. (*Id*. at ¶¶ 16-18.) Swoboda then made additional tweets accusing Plaintiff of being a bully and "harrass[ing] Plaintiff and [making] several homophobic rants on her own X page" which Plaintiff believed were targeted towards her as a member of the LGBTQIA+ community. (*Id*. at ¶¶ 19-20.) Swoboda then "enlisted Dong Hae Lee ('Lee') to join her in harassing Plaintiff on X" and he "constantly tweeted that he 'ha[d] the ability to do something' to Plaintiff, but would then delete the post" which "caused Plaintiff to often feel unsettled, concerned for her safety, and emotionally distressed." (*Id.* at ¶ 21.) In October 2022, Plaintiff hired counsel who sent cease-and-desist letters to Swoboda and Lee. (*Id*. at ¶ 22.) In response, Swoboda has continued to ridicule Plaintiff and encourages other people to harass her. (*Id*.)

In March 2023, "anonymous hate blogs arose on Tumblr.com ("Tumblr") that were dedicated to harassing Plaintiff." (*Id*. at ¶ 24.) Since this time, five anonymous hate blogs were posted "each containing hundreds of defamatory posts." (*Id*. at ¶ 25.) Plaintiff "believes that Defendants herein, either alone or in conjunction with others, are responsible for the anonymous 'hate blogs.'" (*Id*. at ¶ 26.) Plaintiff's relationships suffered because people believed the derogatory messages were true and as a result of the continuous harassment, Plaintiff attempted

2

1  suicide in October 2023.  (*Id.* at ¶¶ 27-28.)

2        Around this same time, Defendant Leilani Joy Gacutan began harassing Plaintiff on
3  NexusMods calling her a "massive narcissist" and "attention w***e" who "manipulates, bullies,
4  and runs players out of the fandom." (*Id.* at ¶ 29.)  After Plaintiff helped a friend "creat[] explicit
5  poses for 'Cyberpunk 2077," Defendant Gacutan "falsely asserted that Plaintiff was using Keanu
6  Reeves's likeness to make porn without his consent" and began contacting Plaintiff's friends
7  saying Plaintiff had harassed and abused people in the past.  (*Id.* at ¶¶ 29-32.)  "Gacutan was
8  eventually banned from NexusMods.com because she violated the website's policy by creating
9  multiple accounts to harass Plaintiff and others." (*Id.* at ¶ 33.)  Gacutan then posted something on
10 X claiming to have been bullied by Plaintiff and Gacutan falsely told one of Plaintiff's friends that
11 Plaintiff was the harasser and would get people banned from Discord for no reason.  (*Id.* at p 33-
12 35.)  Gacutan then "doxxed" Plaintiff's friend.  (*Id.* at ¶ 36.)

13       In January 2023, Plaintiff became friends with Defendant Kyle James Ervin and Plaintiff
14 commissioned Ervin "for his work on visual art projects" and he created images using Plaintiff's
15 character which he posted on his Patreon.com website. (*Id.* at ¶ 37-38.)  Ervin would not take any
16 compensation for his work.  In March 2023, Ervin declared his romantic feelings toward Plaintiff,
17 but Plaintiff told him she already had a boyfriend.  (*Id.* at ¶ 39.)  Ervin began to "exhibit
18 possessive behaviors toward Plaintiff" and "demanded all of Plaintiff's time." (*Id.* at ¶ 40.)  In
19 February 2024, they had a falling out and their friendship abruptly ended.  (*Id.* at ¶ 41.)  In March
20 2024, a mutual friend asked Ervin to delete all of Plaintiff's models and he said he did so.  (*Id.* at ¶
21 42.)  Ervin then publicly demanded $10,000 from Plaintiff on Discord for his work and threatened
22 to release nude explicit poses of her.  (*Id.* at ¶¶ 43-44.)  A few months later "Ervin tweeted a 3D
23 seminude model/render of Plaintiff's character to his 18,000+ followers." (*Id.* at ¶ 45.)  Ervin
24 claimed because he never received payment for the image, he had the right to do what he liked
25 with the work.  (*Id.* at ¶ 46.)  Ervin then posted several things about Plaintiff including her phone
26 numbers and called on his followers to harass her.  (*Id.* at ¶ 47.)

27       The online harassment and cyberbullying continued in May 2024.  Defendant Julien
28 Dufresne joined in and "wrongfully accused Plaintiff of harassing people in the community for the

3

1  past three years." (*Id.* at ¶ 50.)  Defendant Łucja Matusiak likewise began posting about Plaintiff
2  and "began engaging in a concerted attempt to hurt Plaintiff's products and business" falsely
3  implying "Plaintiff was not selling custom mods nor had the ability to create custom mods and
4  otherwise tarnished her products." (*Id.* at ¶¶ 51-53.)  As a result of all the harassment, Plaintiff
5  attempted suicide again. (*Id.* at ¶ 57.)

6        In July 2024, Plaintiff filed a civil harassment restraining order in Los Angeles County
7  Superior Court against Ervin and the court granted a temporary restraining order.  (*Id.* at ¶ 59.)  In
8  August 2024, shortly before a hearing on the permanent restraining order, Plaintiff and Ervin
9  entered a joint stipulation resolving the dispute wherein they agreed to have no further interactions
10 and that Ervin and Plaintiff would each delete all of the images Ervin had made. (*Id.* at ¶ 60.)
11 Immediately after the agreement was finalized, Ervin posted about it publicly and Plaintiff went
12 back to court and got a restraining order against Ervin that was good for five years. (*Id.* at ¶¶ 61-
13 63.)

14       Around this same time, Plaintiff "sent notice to Defendants Gacutan, Swoboda, Dufresne,
15 and Matusiak in an attempt to amicably resolve the instant claims without the necessity of
16 litigation." (*Id.* at ¶ 65.)  Shortly after this notice was sent, several of the hate blogs regarding
17 Plaintiff were deleted. (*Id.* at ¶ 66.)  Defendant Matusiak has continued her harassment of
18 Plaintiff. (*Id.* at ¶ 68.)

19       In March 2025, Ervin filed a request to terminate the restraining order, which the Los
20 Angeles County Superior Court granted. (*Id.* at ¶ 64.)

21       **B.**     **Procedural Background**

22       This civil action was filed in April 2025, in between Ervin's filing of the motion to
23 terminate the restraining order and the Los Angeles County Superior Court's grant of that motion.
24 Plaintiff initially brought claims for defamation, harassment, intentional infliction of emotional
25 distress, stalking, and violation of California's Unfair Competition Law against Gacutan,
26 Swoboda, Dufresne, and Matusiak. (Dkt. No. 1.)  Before any defendant appeared or responded to
27 the Complaint, Plaintiff filed an Amended Complaint adding Ervin as a defendant and adding
28 breach of contract and disclosure of intimate images claims. (Dkt. No. 12.) Three days later

United States District Court
Northern District of California

1   Ervin, who is representing himself, filed a motion to dismiss the complaint under Federal Rules of
2   Civil Procedure 12(b)(1), (3), (6). (Dkt. No. 13.) Less than two weeks later and before the deadline
3   for Plaintiff to respond to the motion to dismiss, Ervin filed a motion to amend his motion to
4   dismiss to include argument as to dismissal under Rule 12(b)(2) for lack of personal jurisdiction.
5   (Dkt. No. 23.)  The Court granted him leave to do so.  (Dkt. Nos. 42, 49, 52.)  Plaintiff also filed a
6   motion for early discovery.  (Dkt. No. 37.)  After Plaintiff filed the motion, Defendant Gacutan
7   entered an appearance and Plaintiff and Gacutan stipulated to an extended briefing schedule on the
8   motion for early discovery and a forthcoming motion to dismiss by Gacutan.  (Dkt. Nos. 41, 45.)
9   All of these motions are now fully briefed.  (Dkt. Nos. 53, 54, 55, 60, 66, 65, 72, 78.)

Upon review of the motions, the Court had concerns regarding subject matter jurisdiction. Plaintiff alleged subject matter jurisdiction based on diversity jurisdiction and federal question jurisdiction.  (Dkt. No. 12 at ¶¶ 7-8.)  Plaintiff, however, did not oppose Ervin's motion to dismiss the sole federal claim under 15 U.S.C. § 6851.  (Dkt. 42.)  Because Plaintiff had abandoned the Section 6851 claim, the Court dismissed the claim and issued an OSC as to diversity jurisdiction. (Dkt. No. 79.)  Plaintiff submitted a response to the OSC as did Ervin and Gacutan.  (Dkt. Nos. 80, 81, 82, 85, 86.)

**DISCUSSION**

**I.      SUBJECT MATTER JURISDICTION**

"Federal courts are courts of limited jurisdiction. They possess only the power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "In 28 U.S.C. §§ 1331 and 1332(a), Congress granted federal courts jurisdiction over two general types of cases: cases that 'aris[e] under' federal law, § 1331," which is known as "federal-question jurisdiction," and "cases in which the amount in controversy exceeds $75,000 and there is diversity of citizenship among the parties, § 1332(a)," which is known as diversity jurisdiction. *Home Depot U. S. A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019). Since Plaintiff filed this lawsuit in federal court, she "bears the burden of establishing subject matter jurisdiction." *Ashoff v. City of Ukiah*, 130 F.3d 409, 410 (9th Cir. 1997). Plaintiff invoked both diversity and federal question jurisdiction when she filed this action in federal court. (Dkt. No. 12 at ¶¶ 7-8.)  In its prior

5

1  Order, the Court dismissed Plaintiff's federal claim based on Plaintiff's abandonment of the claim.

2  (Dkt. No. 79 at 2.)

3       As to diversity jurisdiction, the Amended Complaint alleges complete diversity between the parties. Plaintiff alleges she is a resident of Texas, and Defendants are alleged to be residents of California, Washington, England, France, and Poland, respectively. (Dkt. No. 12 at ¶¶ 1-6.) However, in response to Mr. Ervin's motion to dismiss for lack of personal jurisdiction, Plaintiff submitted a declaration attesting that contrary to her Amended Complaint allegations, she was a resident of California throughout her relationship with Mr. Ervin (and thus at the time of the allegations underlying the Amended Complaint). (*Compare* Dkt. No. 12 at ¶ 1 ("Plaintiff is, and at all times herein relevant was, an individual residing and doing business in San Antonio, Texas.") *with* Dkt. No. 51, Tayts Decl. at ¶ 2 ("I lived [in Los Angeles] until August 2024 when I moved to San Antonio, Texas due to Defendant Ervin (and others) knowing my address in California.").) Mr. Ervin challenges Plaintiff's allegations as to her domicile arguing there is no "competent evidence" to support a Texas domicile as all the exhibits to her filings confirm a California domicile. (Dkt. No. 52 at 3 (citing Dkt. No. 12-1 at pp. 39-57).)

     For the purposes of diversity jurisdiction, a person is a citizen of his or her state of domicile, which is determined at the time the lawsuit is filed. *Lew v. Moss*, 797 F.2d 747, 750 (1986). "[A] person is 'domiciled' in a location where he or she has established a fixed habitation or abode in a particular place, and [intends] to remain there permanently or indefinitely." *Id.* at 749-50 (citations omitted); *see also Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state."). The determination of an individual's domicile involves several factors including "current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family ... driver's license and automobile registration, and payment of taxes." *Lew*, 797 F.2d at 749.

     In response to the OSC, Plaintiff submitted a declaration attesting she permanently relocated to San Antonio, Texas in August 2024 where her "significant other was living, to better protect my safety and privacy." (Dkt. No. 81, Tatys Decl. at ¶¶ 3-4.) Plaintiff has offered evidence

6

1    she terminated her California lease on July 1, 2024, obtained a Texas driver's license on
2    December 19, 2024, and subsequently registered her vehicle with the Texas Department of Motor
3    Vehicles. (*Id.* at ¶¶ 5-9; Dkt. No. 81-2 (Final Account for Apartment Lease); Dkt. No. 81-2
4    (Texas Driver's License).) Ervin submitted a reply to Plaintiff's response arguing Plaintiff has not
5    offered sufficient evidence she changed her domicile prior to the date this action was filed. (Dkt.
6    No. 82.) Gacatun's reply "takes no position as to whether [Plaintiff's] materials are sufficient to
7    demonstrate that complete diversity exists in this case." (Dkt. No. 85 at 2.)
8          Having reviewed Plaintiff's evidence, the Court concludes she has satisfied her burden of
9    demonstrating she changed her domicile from California to Texas prior to filing this lawsuit when
10   she physically moved to San Antonio in August 2024 with the intention of remaining their
11   permanently as evidenced by, among other things, obtaining a Texas driver's license in December
12   2024. *See Lew*, 797 F.2d at 750 ("A change in domicile requires the confluence of (a) physical
13   presence at the new location with (b) an intention to remain there indefinitely."). Accordingly, the
14   Court DISCHARGES the OSC and denies Ervin's motion to dismiss for lack of diversity
15   jurisdiction without prejudice to renewal if facts are later discovered which provide a basis for
16   challenging Plaintiff's domicile at the time this case was filed.

## II.    ERVIN'S MOTION TO DISMISS

In addition to the grounds discussed above, Ervin moves to dismiss Plaintiff's claims based on lack of personal jurisdiction, improper venue, and claim preclusion.

### A.    Personal Jurisdiction

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014); *see also* Fed. R. Civ. P. 4(k)(1) ("Serving a summons ... establishes personal jurisdiction over a defendant ... who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."). "Because 'California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution,'" the Court's "inquiry centers on whether exercising jurisdiction comports with due process." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting *Daimler AG*, 571 U.S. at 125); *see also* Cal. Civ. Proc. Code § 410.10 ("A court of

this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."). Due process requires the defendant "have certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

Plaintiff "bears the burden" of establishing personal jurisdiction exists. *In re Boon Global Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019). "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" *Ranza v. Nike, Inc*., 793 F.3d 1059, 1068 (9th Cir. 2015) (quoting *CollegeSource, Inc. v. AcademyOne, Inc*., 653 F.3d 1066, 1073 (9th Cir. 2011)).

"A court's exercise of personal jurisdiction over a nonresident defendant may be either general or specific." *Doe v. Am. Nat. Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997). General jurisdiction requires that the defendant's "affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quotation marks omitted). By contrast, specific jurisdiction requires a nonresident defendant's "suit-related conduct [to] create a substantial connection with the forum." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). "Where there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers*, 582 U.S. at 264. Plaintiff concedes there is no basis for general jurisdiction here. (Dkt. No. 49 at 15-16.)

### 1. Specific Jurisdiction

The Ninth Circuit uses a three-prong test to analyze specific jurisdiction:

> (1) the defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum;
> (2) the claim must be one which arises out of or relates to the defendants' forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Axiom Foods, Inc. v. Acerchem Int'l, Inc*., 874 F.3d 1064, 1068 (9th Cir. 2017) (cleaned up).

8

Courts utilize the "purposeful direction" test for cases bringing a tort claim, such as defamation. *Id.* at 1069 (citing *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)). Purposeful direction requires satisfaction of the three-factor test derived from *Calder v. Jones*, 465 U.S. 783, 789 (1984): the defendant must "have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017) (citations omitted).

Plaintiff has satisfied the *Calder* test. Plaintiff alleges Ervin committed multiple intentional acts including making defamatory statements about her online, subjecting her to intentional infliction of emotional distress, stalking, and public disclosure of private facts. (Dkt. No. 12 at ¶¶ 70-158.) Plaintiff has also made a prima facia showing as to the second and third parts of the test. Plaintiff has offered evidence she told Defendant she resided in California. (Dkt. No. 51, Tatys Decl. at ¶ 3; Ex. A.) She alleges he publicly attacked her on Discord in 2024, stated that she failed to pay him for work her did for her, threatened to release images of Plaintiff's character in nude explicit poses online, did in fact tweet a semi-nude render of Plaintiff's character to his followers, and then published her phone number on a public Discord server and "told others to 'call this stupid bitch and tell her to fuck off'; and 'call that number nonstop.'" (Dkt. No. 12 at ¶¶ 43-47.) Plaintiff also alleges Ervin harassed her over text, "stalked Plaintiff and monitored her social interactions" and as a result she feared for her safety. (*Id.* at ¶¶ 108-109.)

Given these allegations, Plaintiff has made a prima facie showing Ervin expressly intended his online posts and text messages would impact Plaintiff in California. *See Wealthy, Inc. v. Mulvehill*, No. 23-16132, 2025 WL 3764269, at *2 (9th Cir. Dec. 30, 2025) (finding the plaintiff "plausibly allege[d] that Mulvehill [made defamatory statements online] with the express intent that the comments would be published on a Nevada-based influencer's YouTube channel and disseminated to worldwide audiences, including those in Nevada" and "differential targeting" of Nevada residents was not required) (citing *Briskin v. Shopify, Inc.*, 135 F.4th 739, 757 (9th Cir. 2025)). Further, Ervin knew or should have known his alleged conduct would cause harm in California. *See Burri L. PA v. Skurla*, 35 F.4th 1207, 1215 (9th Cir. 2022) ("defamation causes harm to 'the subject of the falsehood' in the state where the defamatory material circulates").

As the first two prongs of *Axiom's* specific jurisdiction test are satisfied, the burden shifts to Ervin to show the exercise of jurisdiction would be unreasonable. *Briskin*, 135 F.4th at 751 (stating after plaintiff satisfies the first two prongs, "the burden shifts to [defendant] to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.") Courts consider seven factors in weighing reasonableness:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003). Ervin argues litigating in this forum would "impose a substantial burden" because he is a resident of Washington. However, "with the advances in transportation and telecommunications and the increasing interstate practice of law, any burden [of litigation in a forum other than one's residence] is substantially less than in days past." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1080 (9th Cir. 2011). The Court routinely conducts hearings via Zoom to minimize the need for travel to California. As Ervin has not made a showing as to any other factor and has not proposed an alternative forum (other than the Los Angeles Superior Court), the Court concludes he has not "carried [his] heavy burden of rebutting the strong presumption in favor of jurisdiction." *See Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995).

Accordingly, his motion to dismiss for lack of personal jurisdiction is denied.

**B.     Improper Venue**

Next, Ervin moves to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) on the grounds the parties previously agreed venue should be in a different forum. (Dkt. No. 42 at 9; Dkt. No. 52 at 4.) Ervin insists the following statement in the joint stipulation the parties submitted in Plaintiff's restraining order action in the Los Angeles County Superior Court is a forum selection clause governing this action:

> The parties agree that the Los Angeles County Superior Court is the sole venue for resolution of any disputes regarding or arising out of this STIPULATION, and such Court shall retain jurisdiction to

10

> enforce this STIPULATION pursuant to California Code of Civil Procedure § 664.6 and it is intended that this Agreement constitutes an out-of-court written settlement agreement pursuant thereto.

(Dkt. No. 42-3 at 4.) This clause does not apply on its face because it only governs disputes regarding or arising out of the stipulation. *See Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018) ("forum-selection clauses covering disputes 'arising out of' a particular agreement apply only to disputes 'relating to the interpretation and performance of the contract itself'"). Plaintiff has withdrawn her breach of contract claim and her other claims do not arise from the stipulation; rather, they arise from Ervin's alleged online defamation, harassment, cyberbullying which preceded the action in Los Angeles County Superior Court.

Accordingly, Ervin's motion to dismiss for improper venue based on the forum selection clause in the joint stipulation is denied.

### C. Claim Preclusion

Finally, Ervin contends Plaintiff's claims are barred under the doctrine of claim preclusion based on the joint stipulation filed in the Los Angeles County Superior Court action. California law governs claim preclusion arising from a state court judgment. *White v. City of Pasadena*, 671 F.3d 918, 926-27 (9th Cir. 2012) (stating 28 U.S.C. § 1738 extends effect of Full Faith and Credit Clause to federal courts) (citing *Migra v. Warren City Sch. Dist. Bd. of Ed.*, 465 U.S. 75, 81 (1984)). "[Claim preclusion] bars a cause of action that was or could have been litigated in a prior proceeding if: (1) the present action is on the same cause of action as the prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the parties in the present action or parties in privity with them were parties to the prior proceeding." *Fed. Home Loan Bank of San Francisco v. Countrywide Fin. Corp.*, 214 Cal. App. 4th 1520, 1527 (2013) (internal quotation marks and citation omitted). As a threshold matter, the civil restraining order action in the Los Angeles Superior Court did not result in a final judgment, and in light of Plaintiff's dismissal of the breach of contract claim, did not involve the same claims as presented here, nor could it. *See Olson v. Doe*, 12 Cal. 5th 669, 683 (2022) ("a petitioner seeking a civil harassment restraining order and a court reviewing such a request are confined by the limited nature of section 527.6 proceedings. Tort and other actions seeking retrospective relief by way of damages for the conduct

underlying a petition are not cognizable."). Accordingly, Ervin's motion to dismiss based on claim preclusion is denied.

\*\*\*

For the reasons discussed above, Ervin's motion to dismiss is DENIED except to the extent the Court previously granted the motion to dismiss the claim under 15 U.S.C. § 6851 based on Plaintiff's abandonment of that claim. (Dkt. No. 79 at 2.)

### III.  GACUTAN'S MOTION TO DISMISS

Plaintiff brings defamation, civil harassment, and intentional infliction of emotional distress claims against Gacutan based on her online posts and activity.

#### A.   Defamation Claim

Gacutan moves to dismiss Plaintiff's defamation claim under California's anti-SLAPP statute, which allows for pre-trial dismissal of SLAPP suits ("strategic lawsuits against public participation"). Cal. Civ. Proc. Code § 425.16; *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001). The statute aims to identify, early in the litigation process, "meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." *Metabolife*, 264 F.3d at 839. Federal courts in this circuit apply California's anti-SLAPP statute. *Id.* at 839–40.[2]

"A court considering a motion to strike under the anti-SLAPP statute must engage in a two-part inquiry." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1110 (9th Cir. 2003). First, the defendant must "make an initial prima facie showing that the plaintiff's suit arises from an act [by the defendant] in furtherance of the defendant's rights of petition or free speech." *Id.* (citation omitted). Second, if a defendant makes the required prima facie showing, "the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims." *Id.* at 1110.

Under the first step of *Vess'* two-step test, the Court considers whether the defendant has made an initial prima facie showing that the anti-SLAPP statute applies. Section 425.16 states:

> [An] act in furtherance of a person's right of petition or free speech

---

[2] But there is no right to an immediate appeal of the denial of an anti-SLAPP motion in federal court. *Gopher Media LLC v. Melone*, 154 F.4th 696, 703 (9th Cir. 2025)

under the United States or California Constitution in connection with a public issue includes:

(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law;

(2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law;

(3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; or

(4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Civ. Proc. Code § 425.16(e).

Prongs three and four are at issue here. There is no dispute the posts at issue were made on publicly accessible websites and thus in a public forum. (Dkt. No. 72 at 16.) Rather, the dispute is whether the posts were on an issue of public interest. Gacutan insists the statements regarding Plaintiff's conduct are of public interest to the Cyberpunk 2077 mod community. (Dkt. No. 65 at 15 ("[t]he statement at issue primarily concerned Plaintiff's conduct in the Cyberpunk 2077 mod community, and the effect that conduct had on numerous others and would have on others in the future.")).

In *FilmOn.com Inc. v. DoubleVerify Inc*., 7 Cal. 5th 133, 149–50 (2019), the California Supreme Court set forth a two-part test for determining if speech was about an issue of public interest. First, the court asks "what public issue or issue of public interest" the speech in question implicates"—a question that turns on "the content of the speech." *Id*. at 149 (cleaned up). Second, the court asks "what functional relationship exists between the speech and the public conversation about some matter of public interest"—a question that turns on the context of the speech. *Id*. at 149-50. In *Geiser v. Kuhns*, 13 Cal. 5th 1238, 1253–54 (2022), the California Supreme Court clarified the "first step is satisfied so long as the challenged speech or conduct, considered in light of its context, may reasonably be understood to implicate a public issue, even if it also implicates a private dispute" and it is only "when an expressive activity, viewed in context,

13

1  cannot reasonably be understood as implicating a public issue does an anti-SLAPP motion fail at
2  *FilmOn*'s first step."  *Geiser* acknowledged the overlap between the two steps and emphasized it
3  may be "more efficient to look to the whole context from which the conduct underlying the
4  lawsuit arises."  *Id*. at 1256.  When the conduct "further[s] public discussion of the public issues it
5  implicated[, i]t is a paradigmatic example of conduct in furtherance of the exercise of the
6  constitutional right of ... free speech in connection with a public issue or an issue of public
7  interest." *Id.* at 1255 (citing Cal. Civ. Pro. Code § 425.16(e)(4).)

8      Gacutan has failed to meet her burden of demonstrating the speech at issue implicated an
9  issue of public interest.  The statements Plaintiff alleges Gacutan made include calling Plaintiff a
10 "massive narcissist" and "attention w***e" who "manipulates, bullies, and runs players out of the
11 fandom," claiming "Plaintiff did not respect the game or its creators" and "using Keanu Reeve's
12 likeness to make porn without his consent." (Dkt. No. 12 at ¶¶ 29, 31.)  Gacutan has not shown
13 how this personal squabble between members of the Cyberpunk 2077 community is an issue of
14 public interest.

15     The cases on which Gacutan relies stand in stark contrast.  In *Hecimovich v. Encinal Sch.*
16 *Parent Tchr. Org.*, the court found "safety in youth sports, not to mention problem
17 coaches/problem parents in youth sports, is an[] issue of public interest within the SLAPP law."
18 203 Cal. App. 4th 450, 468 (2012).  Likewise, in *Terry v. Davis Cmty. Church*, "the
19 communications clearly involved issues of public interest, because they involved the societal
20 interest in protecting a substantial number of children from predators." 131 Cal. App. 4th 1534,
21 1547 (2005).  In *Wilbanks v. Wolk*, the court concluded statements on a consumer watchdog
22 website regarding a life insurance broker "were not simply a report of one broker's business
23 practices, of interest only to that broker and to those who had been affected by those practices,"
24 but were instead "a warning not to use plaintiffs' services" and "ostensibly provided to aid
25 consumers choosing among brokers," and thus of public interest.  121 Cal. App. 4th 883, 898
26 (2004); *see also Chaker v. Mateo*, 209 Cal. App. 4th 1138, 1146 (2012) (similarly concluding the
27 statements were intended to serve as a warning to customers about plaintiff's trustworthiness and
28 plaintiff had "made his character a matter of public interest").

14

No similar showing has been made here. Critically, there has been no showing the statements contribute to a public debate. *Wilbanks*, 121 Cal. App. 4th at 898 ("it is not enough that the statement refer to a subject of widespread public interest; the statement must in some manner itself contribute to the public debate."). Rather, the statements here are more akin to the post on a union local website in *Du Charme v. Int'l Bhd. of Elec. Workers*, advising union members the plaintiff had been removed from office for financial mismanagement. 110 Cal. App. 4th 107, 118 (2003). While the "statement [] was presumably of interest to the membership (else why post it at all?), [it was] unconnected to any discussion, debate or controversy" and thus not a matter of public interest. *Id*.

In *Geiser*, the California Supreme Court held section 425.16(e)(4) protected a sidewalk demonstration "to protest a real estate company's business practices after the company evicted two long-term residents from their home" because "[i]t is common knowledge that foreclosures, evictions, and inadequate housing are major issues in communities throughout California, and the participation of more than two dozen members of an advocacy group dedicated to fighting foreclosures and residential displacement" meant the speech implicated a public issue. *Geiser v. Kuhns*, 13 Cal. 5th 1238, 1243, 1251, 1253 (2022). Here, in contrast, there has been no showing of any ongoing debate or controversy regarding the statements; rather, there have been a series of posts labeling Plaintiff as a narcissist and a bully, and generally critiquing her character. (*See, e.g.*, Dkt. No. 12 a ¶¶ 24, 29, 31.) "If the mere publication of information [regarding a member of an online gaming community] were sufficient to make that information a matter of public interest, the public-issue limitation would be substantially eroded, thus seriously undercutting the obvious goal of the Legislature that the public-issue requirement have a limiting effect." *Rivero v. Am. Fed'n of State, Cnty., & Mun. Emps., AFL-CIO*, 105 Cal. App. 4th 913, 926 (2003); *see also Du Charme*, 110 Cal. App. 4th at 119 ("to satisfy the public issue/issue of public interest … in cases where the issue is not of interest to the public at large, but rather to a limited, but definable portion of the public (a private group, organization, or community)" the protected activity "must, at a minimum, occur in the context of an ongoing controversy, dispute or discussion, such that it warrants protection by a statute that embodies the public policy of encouraging participation in

matters of public significance.").

Because Gacutan has failed to meet her burden at step-one of the *Vess* inquiry, the Court need not proceed to the second step to determine whether Plaintiff has demonstrated a probability she will prevail on her claims. *See Gotterba v. Travolta*, 228 Cal. App. 4th 35, 43-44 (2014) ("court need not discuss second prong of two-step analysis if defendant fails to establish lawsuit arises from protected activity."). Gacutan's motion to strike the defamation claim under 425.16 is denied.

### B. Intentional Infliction of Emotional Distress Claim

Gacutan also moves to dismiss Plaintiff's Intentional Infliction of Emotional Distress (IIED) claim for failure to state a claim. To state a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must allege: (1) the defendant's extreme and outrageous conduct; (2) the defendant intended to cause, or recklessly disregarded the probability of causing, emotional distress; (3) the plaintiff suffered severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *See Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993). To be outrageous, conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* (quotation marks and citation omitted).

Plaintiff's allegations as to Gacutan fail to state a claim for IIED. The statements she attributes to Gacutan—labeling Plaintiff as a narcissist and bully—are not so extreme as to exceed all bounds of that usually tolerated in a civilized community. "Liability for intentional infliction of emotional distress generally 'does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities,' but only to conduct so extreme and outrageous 'as to go beyond all possible bonds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Abiola v. ESA Mgmt., LLC*, No. 13-CV-03496-JCS, 2014 WL 988928, at *5 (N.D. Cal. Mar. 3, 2014) (quoting *Alcorn v. Anbro Eng'g, Inc.*, 2 Cal. 3d 493, 499, n.5 (1970)). Plaintiff's contention in her opposition that Gacutan was the "ringleader" of the online harassment does not appear in her Amended Complaint. (Dkt. No. 72 at 31 (citing ¶ 24).) As currently pled, Plaintiff's allegations fail to state an IIED claim.

### C. Civil Harassment

Finally, Gacutan moves to dismiss Plaintiff's civil harassment claim brought under California Code of Civil Procedure § 527.6.

Under Section 526.7(a)(1) a person who has suffered harassment "may seek a temporary restraining order and an order after hearing prohibiting harassment." Harassment is defined as "a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose." Cal. Civ. Pro. Code § 527.6(b)(3). Further, a "[c]ourse of conduct" is defined as "a series of acts over a period of time, however short, evidencing a continuity of purpose, including following or stalking an individual, making harassing telephone calls to an individual, or sending harassing correspondence to an individual by any means." *Id.* at § 527.6(b)(1). The elements of unlawful harassment are:

> (1) a knowing and willful course of conduct (2) directed at a specific person; (3) which seriously alarms, annoys, or harasses the person; (4) which serves no legitimate purpose; (5) which would cause a reasonable person to suffer substantial emotional distress and actually causes substantial emotional distress to the plaintiff; and (6) which is not a constitutionally protected activity.

*E.G. v. M.L.*, 105 Cal. App. 5th 688, 699 (2024).

Plaintiff's conclusory allegations fails to state a claim against Gacutan under Section 526.7. Plaintiff alleges "Defendants engaged in a credible threat of violence, or a knowing and willful course of conduct, directed at her that seriously alarmed, annoyed, or harassed her" and they perpetuated "a constant 'hate train' towards Plaintiff on multiple social media platforms since 2022 to present time," and Defendants' conduct serves "no legitimate purpose." (Dkt. No. 12 at ¶¶ 84-86.) The claim is pled as to "Defendants" generally and does not include specific allegations as to actions taken by each defendant. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To the extent Plaintiff relies on her allegations that Gacutan posted statements labeling Plaintiff as a narcissist and bully, these are insufficient for the reasons stated as to the IIED claim.

Accordingly, Gacutan's motion to dismiss the civil harassment claim is granted.

17

\*\*\*

For the reasons discussed above, Gacutan's motion to dismiss is granted in part and denied in part. The motion to strike the defamation claim under 425.16 is denied, but the motion to dismiss the IIED and harassment claims is granted.

## IV. MOTION FOR EARLY DISCOVERY

Under Federal Rule of Civil Procedure Rule 26(d), absent a court order, no discovery can be sought "from any source before the parties have conferred as required by Rule 26(f)." Fed. R. Civ. P. 26(d)(1). District courts within the Ninth Circuit generally require a showing of good cause for early discovery. *See Strobel v. Lesnick*, No. 21-cv-01010-LB, 2021 WL 5121171, at \*2 (N.D. Cal. Nov. 1, 2021) (collecting cases). "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party.*" Semitool, Inc. v. Tokyo Electron Am., Inc*., 208 F.R.D. 273, 276 (N.D. Cal. 2002). To determine whether good cause exists, courts consider: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery request; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Rovio Ent. Ltd. v. Royal Plush Toys, In*c., 907 F. Supp. 2d 1086, 1099 (N.D. Cal. 2012). "Under appropriate circumstances, California district courts have found good cause to authorize early discovery to ascertain the identity of an unknown defendant." *Kippes v. Does 1-25*, No. 25-CV-03616-SVK, 2025 WL 2607669, at \*2 (N.D. Cal. Aug. 7, 2025) (collecting cases).

Plaintiff seeks leave to issue subpoenas to four social media platforms/websites: X.com, Tumbler.com, NexusMods.com, and Discord.com seeking to discover "User information" and "user data" on several accounts for each platform "to discover user information behind the Anonymous Accounts." (Dkt. No. 37 at 16.) Specifically, Plaintiff seeks this information for eleven X accounts, eight Tumblr accounts/blogs, eight NexusMods.com accounts, and five Discord accounts. (Dkt. No. 38-4.) Plaintiff has offered an evolving string of reasons for needing early discovery beginning with her intent to move for preliminary injunction (which never happened) to her current position that the discovery is necessary to respond to Gacutan's anti-

1  SLAPP motion.  (*Compare* Dkt. No. 37 at 15 (stating Plaintiff seeks the discovery because she

2  intends to move for a preliminary injunction) *with* Dkt. No. 66 at 5 (stating she needs the

3  discovery to respond to Gacutan's motion).)

4      Given the Court's denial of Gacutan's anti-SLAPP motion, Plaintiff's request for early

5  discovery to respond to the motion is moot.  To the extent Plaintiff seeks the discovery to identify

6  yet-to-be named defendants, the request is overbroad by seeking "Any and all USER

7  INFORMATION and USER DATA" for 32 social media accounts which are not even identified

8  in the Amended Complaint. (Dkt. No. 38-4 (proposed subpoenas).) To determine whether a

9  plaintiff has established good cause to seek the identity of a Doe defendant through early

10  discovery, courts consider whether the plaintiff (1) identifies the Doe defendant with sufficient

11  specificity that the Court can determine that the defendant is a real person who can be sued in

12  federal court, (2) recounts the steps taken to locate and identify the defendant, (3) demonstrates

13  that the action can withstand a motion to dismiss, and (4) shows that the discovery is likely to lead

14  to identifying information that will permit service of process. *Columbia Ins. Co. v. seescandy.com*,

15  185 F.R.D. 573, 578–80 (N.D. Cal. 1999).  Plaintiff has not attempted to make such a showing

16  here.

17      While Plaintiff now contends "Gacutan controls at least the following accounts:

18  ValerieSilverhand, MrsVSilverhand, TrashStudVince, OvergrownRuin and DawnJulio," this is not

19  alleged in the Amended Complaint and Plaintiff has not shown why she cannot seek this

20  information from Gacutan herself as part of the ordinary course of discovery.  (Dkt. No. 66 at 2-3.)

21      Accordingly, Plaintiff's motion for early discovery is denied.

## CONCLUSION

23  For the reasons discussed above, Ervin's motion to dismiss is DENIED except as to the

24  previously dismissed claim under 15 U.S.C. § 6851.  Gacutan's motion to strike the defamation

25  claim under Section 425.16 is denied, but the motion to dismiss the IIED and harassment claims is

26  granted with leave to amend.  Plaintiff's motion for early discovery is denied.

27      Plaintiff may file an amended complaint as to her IIED and harassment claims by February

28  12, 2026, but may not add any new defendants or claims without further leave of court.

The Court sets an initial case management conference for March 4, 2026 at 2:00 p.m. via Zoom videoconference. A joint case management conference statement is due February 25, 2026.

This Order disposes of Docket Nos. 37, 42, 59, 60, 65, 66, 79.

**IT IS SO ORDERED.**

Dated: January 16, 2026

_____
JACQUELINE SCOTT CORLEY
United States District Judge