1  **LOWE & ASSOCIATES, P.C.**
   Steven T. Lowe, Esq. (SBN 122208)
2  Giselle Espinola-Jimenez, Esq. (SBN 362538)
   8383 Wilshire Blvd., Ste. 1038
3  Beverly Hills, CA 90211
   Telephone: (310) 477-5811
4  Facsimile: (310) 477-7672
5  steven@lowelaw.com
   giselle@lowelaw.com
6  Attorney for Plaintiff,
   **ALISA TAYTS**
7

8              **UNITED STATES DISTRICT COURT**

9             **NORTHERN DISTRICT OF CALIFORNIA**

10

11  **ALISA TAYTS**, an Individual              Case No.: 3:25-cv-03001-JSC~~SK~~

12                                              *Hon. Jacqueline Scott Corley~~Sallie Kim~~*
                    Plaintiff,
13          v.                                  ~~FIRST~~ **SECOND AMENDED**
                                                **COMPLAINT FOR:**
14

15  **LEILANI JOY GACUTAN**, an Individual;     1. **DEFAMATION – LIBEL;**
    **MONIKA SWOBODA**, an Individual;          2. **CIVIL HARASSMENT –**
16  **JULIEN DUFRESNE**, an Individual;            **CALIFORNIA CIVIL CODE OF**
    **ŁUCJA MATUSIAK**, an Individual; and        **PROCEDURE § 527.6**
17  **KYLE JAMES ERVIN**, an Individual         3. **INTENTIONAL INFLICTION OF**
                                                   **EMOTIONAL DISTRESS**
18                                              4. **STALKING – CALIFORNIA**
                                                   **CIVIL CODE OF PROCEDURE**
19                  Defendants.                    **§1708.7**
                                                5. **UNFAIR COMPETITION FALSE**
20                                                 **ADVERTISING – CALIFORNIA**
                                                   **BUSINESS AND PROFESSIONS**
21                                                 **CODE §§ 17200 et seq. and 17500 et**
                                                   **seq.**
22                                              6. **PUBLIC DISCLOSURE OF**
                                                   **PRIVATE FACTS**
23                                              ~~7. BREACH OF CONTRACT~~
                                                ~~8.~~ **DISTRIBUTION OF PRIVATE**
24                                                 **SEXUALLY EXPLICIT**
                                                   **MATERIALS – CALIFORNIA**
25                                                 **CIVIL CODE OF PROCEDURE**
                                                   **§1708.85**
26                                                 ~~DISCLOSURE OF INTIMATE~~
                                                   ~~IMAGES – 15 U.S.C.S. § 6851~~
27                                              ~~7.~~

28                                              **DEMAND FOR JURY TRIAL**

                              1
                        **COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COMPLAINT**

PLAINTIFF ALISA TAYTS ("Plaintiff") hereby brings her Second Amended Complaint ("Complaint") against DEFENDANTS LEILANI JOY GACUTAN ("Defendant Gacutan"), MONIKA SWOBODA ("Defendant Swoboda"), JULIEN DUFRESNE ("Defendant Dufresne), ŁUCJA MATUSIAK ("Defendant Matusiak"), and KYLE JAMES ERVIN ("Defendant Ervin") as follows:

**PARTIES**

1. As of August 2024 (prior to the date this case was filed) to the present, Plaintiff is, and at all times herein relevant was, an individual residing and doing business in San Antonio, Texas. In light of the fact that a party who knows of her real name has been added, Plaintiff discloses that her real name is Alisa Tayts. Up until August 2024, during the time period that the bulk of the claims set forth herein arose, Plaintiff resided in Los Angeles, California.

2. At all times herein relevant, Defendant Gacutan was and is an individual residing and doing business in Rohnert Park, California.

3. At all times herein relevant, Defendant Swoboda was and is an individual residing and doing business in Manchester, England.

4. At all times herein relevant, Defendant Dufresne was and is an individual residing and doing business in Beaumes-De-Venise, Provence-Alpes-Côte d'Azur, France.

5. At all times herein relevant, Defendant Matusiak was and is an individual residing and doing business in Wałcz, Zachodniopomorskie, Poland.

6. At all times herein relevant, Defendant Ervin was and is an individual residing and doing business in Spokane Valley, Washington.

7. At all times mentioned herein, Defendants Gacutan, Dufresne, Swoboda, and Matusiak, were the co-conspirator, agent, or partner of every other Defendant and, in doing the things alleged herein, were acting knowingly and willfully pursuant to, and in furtherance of, the conspiracy and common goal of harassing, defaming, and bullying Plaintiff online.

6. //

3

**COMPLAINT**

**JURSIDICTION AND VENUE**

7.8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states and citizens of foreign states.

8. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the claims arise under the laws of the United States, specifically 15 U.S.C. § 6851, which provides a civil cause of action for the non-consensual disclosure of intimate visual depictions.

9. Venue is proper in this district under 28 U.S.C. § 1391(b) because Defendant Gacutan resides and does business in the Northern District of California while the other Defendants are citizens of a different state and foreign states.

**DIVISIONAL ASSIGNMENT**

10. According to Local Rules 3-2(c) and (d), this case has been assigned to the San Francisco Division of the Northern District of California because Defendant Gacutan resides in Sonoma County.

**PRELIMINARY STATEMENT**

11. This case arises out of a course of conduct by Defendants including cyberbullying, gaslighting, defamation, and harassment, online, whereby, Plaintiff, a businesswoman, drew the ire of strangers online. These strangers ganged up on her and relentlessly harassed her for years, for no rational reason, to the point of driving her to despair and attempted suicide; the latter being one of their apparent goals.

**STATEMENT OF FACTS**

**A. Plaintiff Becomes a Member of Videogame Community and Monetizes Her Mods**

12. Plaintiff has been a well-respected member of the "Cyberpunk 2077" community since 2021. "Cyberpunk 2077" is a role-playing video game released in 2020 where players can create and

customize their own protagonist. Throughout the game, players must work with the character Johnny Silverhand who is voiced and visually modeled off the famous actor Keanu Reeves.

13. During the period from 2021 to present, Plaintiff, via her professional business names "Zwei," "therockergf," and "rockergirlfriend," established popularity within the "Cyberpunk 2077" community and the video game modification ("mod") community. The latter community consists of people who alter one or more aspects of a video game, such as how a character in the game looks, behaves, poses, or performs, to create new game functionalities.

14. In particular, Plaintiff's professional name "Zwei" is a character that is modeled after the Plaintiff's own likeness. While Plaintiff has allowed multiple people to take inspiration from her character in the past, when she felt the character went beyond inspiration, she would kindly ask the other party not to use certain aspects of her character, especially not to use her exact likeness, in order to establish a value in her trade name and likeness.

15. Plaintiff has monetized this hobby by uploading her modifications to a website, *NexusMods.com*, where she obtains payment for downloads of her mods. She is well-known for her "pose mods." Pose mods are modifications made to a video game character's posture.

**B.  A Dispute Arises in 2022**

16. In 2022, a former friend of Plaintiff, @xBaebsae, had her modifications stolen by user @Flvck0, who then posted the stolen work to *Patreon.com*. Because of Plaintiff's stature in the community, @xBaebsae solicited Plaintiff to assist @xBaebsae in getting the stolen work taken down.

17. Shortly thereafter, Plaintiff posted a Tweet on *X.com* ("X") and asked if people could report the upload to *Patreon.com*. @Flvck0 then reached out to Plaintiff, stated they did not know the work belonged to someone else, and promptly removed it. At that point, Plaintiff considered the matter resolved, and deleted her initial Tweet about the subject.

18. Shortly after, Plaintiff received a private message on X from Defendant Monika Swoboda ("Swoboda"). Swoboda scolded Plaintiff for her rudeness towards @Flvck0 and accused her of going on a "witch hunt" against them. Plaintiff informed Swoboda that the matter had been resolved privately, that the conversation was making her uncomfortable, and asked Swoboda to leave her alone. Swoboda then told Plaintiff, "**maybe one day someone will hit [you] so hard that [you] will fall off [your] high horse and think for a moment as clearly right now you lack class and brain**." In October 2022, Plaintiff blocked Swoboda.

19. Following this interaction, in October 2022, Defendant Swoboda went on to post Tweets **accusing Plaintiff of being a bully**. The Tweets contained screenshots of conversations that Plaintiff had with other individuals a few years prior. Plaintiff did not recall several of the conversations, but she did remember in one instance she had apologized to one of the individuals and they had moved past the conflict. Furthermore, Plaintiff reasonably believes that some of the posted conversations were manufactured.

20. Defendant Swoboda continued to harass Plaintiff and went on several homophobic rants on her own X page. Plaintiff is a member of the LGBTQIA+ community and reasonably believes that these rants were targeted towards her.

21. Defendant Swoboda then enlisted Dong Hae Lee ("Lee") to join her in harassing Plaintiff on X. During this time period, Lee constantly tweeted that he "**ha[d] the ability to do something" to Plaintiff, but would then delete the post**. This caused Plaintiff to often feel unsettled, concerned for her safety, and emotionally distressed.

**C.  Plaintiff Hires Counsel to Stop the Harassment in Late 2022**

22. In October 2022, Plaintiff hired Minc LLC, a law firm in Ohio, to issue cease-and-desist letters to Swoboda and Lee demanding that they discontinue harassing Plaintiff and posting false accusations about her. The letter demanded that they delete the false accusations and stop the harassment. Plaintiff's attorney also threatened to seek a restraining order against Lee, since he

lived an hour away from her and was threatening her physical safety. Thereafter, Lee complied and left Plaintiff alone. In contrast, Swoboda posted the cease-and-desist letter she had received and gloated publicly online. Additionally, Swoboda claimed that Plaintiff had not hired a real lawyer and responded to the letter by asking if the attorney was real. Swoboda then continued to encourage people to harass Plaintiff. Attached hereto as **Exhibit 1** is a true and correct copy of Tweets posted by Defendant Swoboda on November 9, 2022, ridiculing Plaintiff.

23. In early 2023, Plaintiff hired McAllister Olivarius, attorneys in the United Kingdom, since Swoboda resides there. However, no action was taken because at that time, Swoboda had temporarily quieted down and Plaintiff believed that perhaps the harassment had ended.

**D. Anonymous Defamatory and Cruel Posts Begin Appearing Again in March 2023**

24. However, starting in March 2023 and continuing through April 2023 and thereafter, anonymous hate blogs arose on *Tumblr.com* ("Tumblr") that were dedicated to harassing Plaintiff. These blogs accused Plaintiff of being a horrible person who should not exist. **These blogs mirrored a lot of the language that Defendant Swoboda had previously been posting, as well as personal attacks against Plaintiff's work product, her physical appearance, age, sexuality, and more.**

25. From March 2023 and continuing through April 2023 to present, in addition to all of the cyberbullying by identified persons, a total of five (5) anonymous "hate blogs" were published, each containing hundreds of defamatory posts. Every time a blog was created, it would soon be deleted, and another one would soon appear, each more defamatory and caustic than the last. Attached hereto as **Exhibit 2** is a true and correct copy of some of the anonymous messages posted on Tumblr which attack the Plaintiff's character, insult the Plaintiff, and are calculated to cause the Plaintiff emotional distress. (Examples include: "[Zwei] is probably the worst of the lot. [I] have never met a more manipulative, controlling, narcissistic and petty person in any fandom or even real life."; "[I'm] not even convinced Zwei is much of a modder she just has …

**COMPLAINT**

someone do all the work and then she claims it."; "Zwei goes through friends like a pair of socks. Bribes you into friendship … and then discards you once she realizes she cannot control to whom you speak."; "There is narcissism, and then there's Zwei."; "I'd still prefer her blunt, no filter behavior… over the two-faced hypocrites like Zwei … who will only smear you behind your back and spread rumors about you in order to blacklist you, despite being the shitty perpetrators 90% of the time.")

26. The "hate blogs" caused Plaintiff significant emotional distress; people within the "Cyberpunk 2077" community began exposing her to hatred, contempt, ridicule, and obloquy. Plaintiff tried to ignore the blogs, hoping the organizer(s) would grow tired and stop, but instead, the blogs began to normalize the hatred that was directed at Plaintiff. The anonymity of the blogs caused further cyber bullying. Plaintiff reasonably believes that Defendants herein, either alone or in conjunction with others, are responsible for the anonymous "hate blogs."

27. During this time period, anonymous users online published derogatory messages about Plaintiff and anyone they perceived to be allies of Plaintiff, including her boyfriend. As a result, several of Plaintiff's friendships and close relationships ended because they began to believe the defamatory messages posted about her were true.

28. Due to the concerted efforts of the Defendants (the "hate blogs" and the continuous harassment she received), Plaintiff attempted suicide in October 2023.

**E.  Defendant Gacutan Jumps on the Cyberbullying Bandwagon Against Plaintiff in Late 2023**

29. On or about December 2023~~Around this time~~, Defendant Leilani Joy Gacutan ("Gacutan") began to harass Plaintiff on *NexusMods.com* calling Plaintiff a "massive narcissist" and "attention w***e" who "manipulates, bullies, and runs players out of the fandom." Gacutan also invited other "modders" to "watch out for her. She'll just try to get favors and then stab u in the back." Attached hereto as **Exhibit 3** is a true and correct copy of a comment that Defendant Gacutan made on *NexusMods.com* on December 16, 2023, harassing Plaintiff.

8

**COMPLAINT**

30. Plaintiff had assisted some of her friends in creating posing mods. Specifically, one of Plaintiff's friends asked for her help in creating explicit poses for "Cyberpunk 2077."

31. In response to the explicit poses, Defendant Gacutan claimed that Plaintiff did not respect the game or its creators. **Defendant Gacutan also falsely asserted that Plaintiff was using Keanu Reeves's likeness to make porn without his consent**. Attached hereto as **Exhibit 4** is a true and correct copy of Gacutan's February 5, 2024 posts under the username @OvergrownRuin on *NexusMods*.

32. In February 2024, Gacutan began contacting Plaintiff's friends and sending messages such as "how dare you include [Plaintiff] in your work" and **falsely claiming that Plaintiff had harassed and abused people in the past**.

~~33.~~32.    **In or about April 2024,** Gacutan was eventually banned from *NexusMods.com* **because she violated the website's policy by creating multiple accounts to harass Plaintiff and others**. It is reasonably believed that she did so in order to harass Plaintiff constantly, while encouraging others to do the same. By maintaining her anonymity, Gacutan likely felt that she could harass Plaintiff without consequences. *NexusMods.com* published the reason Gacutan was banned, the multiple accounts she held, and the harassing comments she made. Attached hereto as ~~Exhibit 4~~**Exhibit 5** **is a true and correct copy of the post** *NexusMods.com* published on April 30, 2024 explaining Gacutan's ban.

~~34.~~33.    Gacutan then began acting as though she was the victim and posted a statement on X on May 2, 2024, in which she gaslit Plaintiff claiming that she was an advocate for those that had been bullied, despite having been consistently bullying Plaintiff and encouraging others to do the same.

~~35.~~34.    Soon thereafter, one of Plaintiff's friends, Lucent, confronted Gacutan about the *NexusMods.com* harassment and ban via private messages on X. Gacutan claimed that it had actually been ~~someone other than her~~her husband who had used the *NexusMods.com* account in

that manner, and accused Plaintiff of being the aggressor. It is of Plaintiff's reasonable belief that ~~this~~ the statement that it was her husband who used the *NexusMods* account is false and just a way for Gacutan to avoid liability. Gacutan then told Lucent that Plaintiff is **"known to harass tons of people, filing back charges on PayPal against artists, [and] getting people banned from Discord for no reason."** All of these claims are demonstrably false and the falsity can be proven. Attached hereto as **Exhibit 6~~5~~** is a true and correct copy of the message between Lucent and Defendant Gacutan where ~~she~~ Gacutan makes these false statements about the Plaintiff on May 2, 2024.

~~36.~~35.    Lucent responded that Gacutan was falsifying accusations. In response, Gacutan "doxxed" Lucent by posting his private information, including his business and personal phone number, online. It is reasonably believed that she did so in order to also cause Plaintiff to be in fear.

**F.  Beginning in March 2024, Defendant Ervin Initiated His Campaign of Harassment, Cyberbullying, and Defamation**

~~37.~~36.    Defendant Kyle James Ervin ("Ervin") and Plaintiff became friends in January 2023 over their mutual love of "Cyberpunk 2077." They ~~spoke~~ communicated daily via messaging and the occasional phone call and worked on projects related to the community.

~~38.~~37.    In January 2023, Ervin agreed not to redistribute anything Plaintiff shared with him. From then on, Plaintiff would commission Ervin for his work on visual art projects. Ervin would create various visual images using Plaintiff's character and post them on his *Patreon.com* website. Plaintiff offered to pay Ervin numerous times for the visual images, but he would decline.

~~39.~~38.    In or about March 2023, Ervin disclosed his romantic intentions towards Plaintiff several times, but she informed him each time that she was only interested in him as a friend and that she

1    had a boyfriend. Ervin then expressed that he still wanted to be friends with her, despite his

2    romantic feelings.

3    40.39.    However, beginning in April 2023, Ervin began to exhibit possessive behaviors toward

4    Plaintiff and often engaged with Plaintiff as though they were in a romantic relationship. He

5    would often become enraged if she did not text him enough or if he saw her interact with others

6    publicly, especially friends who were men. Ervin also continued to confess his romantic feelings

7    to Plaintiff, often becoming emotionally abusive towards her. On one occasion, he threatened

8    suicide when she rejected him. Ervin demanded all of Plaintiff's time, often demanding she

9    spend hours talking with him, working together, and watching movies with him online. Plaintiff

10   was continuously overwhelmed and struggled with trying to maintain a friendship with Ervin.

11

12   41.40.    In February 2024, Plaintiff and Ervin had a falling out. Plaintiff reiterated that she was

13   not romantically interested in him, and, as a result of this conflict, their friendship abruptly

14   ended.

15

16   42.41.    In the same month, Plaintiff asked a mutual friend to contact Ervin, since he had blocked

17   her online, to have him delete her 3D assets and mods. In a Discord message on or about

18   February 20, 2024, Ervin claimed he had done so. On April 3, 2024, Ervin again stated he had

19   deleted the models. Attached hereto as **Exhibit 76** is a true and correct copy of a Discord

20   message from Ervin to Plaintiff's friend stating he "deleted everything to do with [Plaintiff]."

21   43.42.    On March 28, 2024, Ervin publicly attacked Plaintiff on a public server on *Discord.com*

22   ("Discord") and demanded payment for the mod renderings of her likeness that she had already

23   paid for stating that she owed him $10,000. Ervin proceeded to call her a "piece of shit" and had

24   to be moderated by Discord. Nevertheless, Ervin continuously publicly berated and harassed

25   Plaintiff.

26

27   44.43.    A few days later, on March 31, 2024, Ervin posted a message on the public Discord

28   server threatening to release Plaintiff's character in nude, explicit poses.

45.44.     On June 13, 2024, Ervin tweeted a 3D seminude model/render of Plaintiff's character to his 18,000+ followers. Plaintiff then tweeted stating that she did not consent to Ervin's sharing of her model in an explicit way. Attached hereto as **Exhibit 87** is a true and correct copy of a Tweet by Plaintiff expressing that she did not consent, and Ervin's acknowledgement thereof.

46.45.     Ervin then claimed that he never received payment for the seminude image and thus had the right to do what he liked with the work. Later that same day, the post was taken down by X. However, Ervin reposted it to his account as well as posted it on his other social media platforms. Clearly, Ervin's intent was to embarrass and humiliate Plaintiff.

47.46.     Later in the day, Plaintiff posted a Tweet stating that she had been harassed by Ervin. Ervin responded to her Tweet by calling Plaintiff a "psychotic piece of garbage" and claimed that she had been stalking and harassing him. Ervin then published Plaintiff's phone number on a public Discord server stating that he was going to "put her on blast from now on." He then told others to "call this stupid bitch and tell her to fuck off" and "call that number nonstop." He then published a second phone number for people to call Plaintiff to harass her in case the first one was not working. Attached hereto as **Exhibit 98** is a true and correct copy of Ervin's Discord posts containing Plaintiff's phone number. Ervin also published numerous Tweets claiming that Plaintiff and Ervin had a romantic relationship or that Plaintiff pursued him romantically, along with publishing on his X accounts messages between him and Plaintiff, as well as private voice notes and personal information about Plaintiff.

48.47.     Ervin then went on a two-day long rant on X from June 14, 2024, to June 15, 2024. During this rant, Ervin falsely claimed that the feud with Plaintiff started because he did not want to talk to her anymore and that she was an abusive bigot who never wanted to pay him for the work she demanded. He also stated that Plaintiff had done nothing but attack him. None of these accusations were true. Ervin later published Tweets that called Plaintiff a bully, a bimbo, and a swindler. Ervin also reposted Tweets from Defendant Swoboda who had called Plaintiff a "vile

woman" who "makes others' lives miserable." Ervin boasted that he "took down" Plaintiff and hoped that she committed suicide. Attached hereto as **Exhibit 109** is a true and correct copy of an excerpt of Ervin's rant on X making these false accusations.

**G. In May 2024, the Cyberbullying and Online Harassment Against Plaintiff Continued Unrelentingly and Intensified**

48. After this occasion, the cyberbullying and online harassment towards Plaintiff only intensified. **Beginning in or about May 2024, Gacutan constantly tweeted about Plaintiff and even claimed that Plaintiff had bullied one of Gacutan's friends. This was false.** Attached hereto as **Exhibit 11** is a true and correct copy of Gacutan's tweets about Plaintiff.

49. Gacutan's continuous onslaught of hate towards Plaintiff, further normalized the bullying of Plaintiff and encouraged others to participate, placing Gacutan in a "ringleader" position as she incited others, including her own friends, to post about Plaintiff. Attached hereto as **Exhibit 12** is a true and correct copy of the disparaging comments brought on by Gacutan's posts, including her response for others to "[u]nleash the beast!".

50. On May 3, 2024, another friend of Gacutan's, Defendant Julien Dufresne ("Dufresne"), issued three Tumblr blog posts about Plaintiff and what he perceived to have occurred within the "Cyberpunk 2077" community. This post republished some of the comments Gacutan had posted (in fact, it was mainly based off Gacutan's prior posts by all indications) and included an album containing over forty images of every mod that Plaintiff had worked on. Dufresne also wrongfully accused Plaintiff of harassing people in the community for the past three years. This post only facilitated the continued onslaught of defamation and harassment against Plaintiff. Attached hereto as **Exhibit 130** is a true and correct copy of the Tumblr blog Dufresne posted on May 3, 2024.

50.51.    The pattern of Defendants' conduct shows that this was a coordinated campaign rather than isolated incidents. Specific accusations originate with one defendant and were then repeated and republished by other defendants across platforms.

**H.  Defendant Matusiak Initiates Her Campaign of Harassment and Defamation Against Plaintiff**

~~51.~~52.    In or about March 2024, Defendant Łucja Matusiak ("Matusiak") also jumped on the cyberbullying bandwagon.

~~52.~~53.    On May 3, 2024, Matusiak retweeted Gacutan's aforementioned statement regarding being an advocate for those being bullied and said, "this situation is more outrageous than I thought, I'm this close of choosing violence" along with an emoticon of the thumb and index fingers being held closely together, indicating little room. Plaintiff reasonably felt threatened by this message that Matusiak was so offended and angered by Plaintiff that she was willing to become violent against her.

~~53.~~54.    In June 2024, Matusiak began engaging in a concerted attempt to hurt Plaintiff's products and business; Matusiak falsely implied that Plaintiff was not selling custom mods nor had the ability to create custom mods and otherwise tarnished her products. Since Plaintiff runs a business selling mods (by way of "donation points" via *NexusMods* for unique downloads), these assertions damaged her professional reputation as they framed her as someone who is unskilled and incompetent in making mods. Individuals in the "Cyberpunk 2077" community thereafter became less interested in purchasing Plaintiff's mods. On June 13, 2024, **Defendant Matusiak also called Plaintiff a serial abuser and stated that Matusiak had no respect for Plaintiff's privacy**~~.~~ (See **Exhibit 14**, described hereinbelow).

~~54.~~55.    **Matusiak then declared that everyone may copy Plaintiff's mod and utilize photos of it publicly, since it was based on "vanilla assets."** This assertion falsely implied that Plaintiff did not own her mods, which she had monetized for years, since they were based on assets anyone could obtain for free (i.e., vanilla assets).

~~55.~~56.    On June 14, 2024, Defendant Matusiak then said that Plaintiff destroyed one of Matusiak's romantic relationships, hurt her mental health, and spread lies about her. She accused Plaintiff of being a "serial abuser" to many within the "Cyberpunk 2077" community. Attached hereto as **Exhibit 14**~~1~~ is a true and correct copy of multiple Tweets Matusiak posted about Plaintiff on June 13, 2024, and June 14, 2024. All of these statements are false.

1    56.57.    In June and July of 2024, Matusiak posted on X that Plaintiff was not able to create poses

2    herself, that she had no idea how to do so, and further claimed that Plaintiff had others make the

3    poses and mods for her falsely publishing them as her own. This assertion again questioned

4    Plaintiff's ability to create mods and damaged her professional reputation as a "modder" within

5    the community. Attached hereto as **Exhibit 15̶2̶** is a true and correct copy of multiple Tweets

6    posted by Matusiak.

7    57.58.    As a result of the literal onslaught of defamation, hate, and relentless cyberbullying over

8    an extended period of time, on July 4, 2024, Plaintiff attempted suicide a second time. Attached

9    hereto as **Exhibit 16̶3̶** is a true and correct copy of medical records detailing Plaintiff's suicide

10    attempt. Both suicide attempts were directly caused by the harassment Plaintiff faced at the

11    hands of the Defendants.

12    58.59.    That same evening, Plaintiff's significant other posted a Tweet directed towards the

13    "Cyberpunk 2077" community alluding to Plaintiff's attempt. ~~Shortly after, many people in the~~

14    ~~community, including Matusiak, claimed that Plaintiff was pretending to be her boyfriend to hide~~

15    ~~the fact that she was back online.~~ Within the comments of this post, other individuals also

16    suggested that Plaintiff had faked her suicide attempt and ~~referred to Plaintiff as a "thing."~~ went

17    on to continue mocking her (i.e., "Pathetic"; "When I think people in this community already

18    reached the rock bottom they always prove me wrong [teary-eyed smile emoji] Truly an

19    achievement."; "Faking suicide is really really the lowest thing somebody could do. There's no

20    coming back from that."). Attached hereto as **Exhibit 17̶4̶** is a true and correct copy of X threads

21    about Plaintiff's suicide attempt.

22    **I.    Plaintiff Comes to a Resolution with Ervin but He Immediately Violates the Agreement**

23    ~~58. On July 10, 2024, Plaintiff filed a Request for a Civil Harassment Restraining Order against~~

24    ~~Ervin. On July 12, 2024, the court granted a Temporary Restraining Order ("TRO") against~~

25    ~~Ervin and set a hearing for the Permanent Restraining Order on August 6, 2024. The hearing was~~

26    ~~continued until August 22, 2024.~~

27    ~~58. On August 22, 2024, before the hearing, Plaintiff and Ervin entered into a Joint Stipulation~~

28    ~~which stated that Plaintiff would drop the TRO against Ervin and, in exchange, no future~~

1    interactions between Ervin and Plaintiff would occur. Additionally, all previous posts from/about

2    Plaintiff and Ervin were required to be deleted, Ervin also specifically agreed to delete Plaintiff's

3    character model and never share it, and Plaintiff would delete any images Ervin made for her.

4    Further, they agreed not to talk about each other to anyone. Attached hereto as **Exhibit 15** is a

5    true and correct copy of the Joint Stipulation between Plaintiff and Defendant Ervin.

6    58. However, hours after it was finalized, Ervin disclosed information about the agreement on a

7    public Discord server. Ervin encouraged his followers to look up Plaintiff's personal information

8    and threatened "legal action" against her. Attached hereto as **Exhibit 16** is a true and correct

9    copy of Ervin's Discord posts.

10    58. Because of his immediate violation, Plaintiff filed a "Proposed Ex Parte RFO Emergency Order

11    for Support" on October 16, 2024, to have the court reconsider granting a Restraining Order

12    against Ervin.

13    58. On January 31, 2025, the court executed a Civil Harassment Restraining Order After Hearing

14    restraining Ervin from contacting Plaintiff for five years. The court also ordered Ervin to comply

15    with the terms of the Joint Stipulation and pay Plaintiff's attorney fees in the amount of $7,995.

16    Attached as **Exhibit 17** is a true and correct copy of the Civil Harassment Restraining Order

17    After Hearing ordered on January 31, 2025, by Judicial Officer Laura Cohen of the Superior

18    Court of California County of Los Angeles.

19    58. Following this, Defendant Ervin filed a request to terminate the restraining order on March 20,

20    2025, along with a two page declaration and seventeen (17) exhibits. On May 5, 2025, the court

21    terminated the Restraining Order. The apparent reason for this decision was that Ervin had

22    complied with the Restraining Order and promised to never contact Plaintiff again or talk about

23    her. The foregoing decisions, as it relates solely to the issuance of a restraining order against

24    him, does not foreclose Plaintiff's ability to recover damages for the claims stated herein.

25    **P.I.Plaintiff Attempts to Resolve the Situation Pre-Litigation with the Other Defendants**

26    59.60.    On December 18, 2024, Plaintiff's counsel sent notice to Defendants Gacutan, Swoboda,

27    Dufresne, and Matusiak in an attempt to amicably resolve the instant claims without the

28    necessity of litigation. Attached hereto as **Exhibit 18** is a true and correct copy of the notice of

1    claims letter that was sent to Defendant Gacutan and the other Defendants. The contents of said

2    letter, including the list of anonymous URLs set forth therein, is incorporated by reference as

3    though fully set forth.

4    60.61.    After notice was sent out, several of the hate blogs attacking Plaintiff that were

5    specifically identified in the notice of claims were suddenly deleted.

6    62. While Defendant Gacutan responded to the notice on December 27, 2024, and thereafter

7    expressed a purportedly sincere interest in resolving the claims without litigation, instead

8    Gacutan changed counsel on March 6, 2025; Defendant Gacutan's new counsel expressed

9    interest in consummating a resolution but then never followed up with any counter-offer or any

10    further communications after March 11, 2025. Ultimately, it appears that compliance with

11    Plaintiff's demands were dangled in front of the Plaintiff, then pulled away, for the sole purpose

12    of attempting to run out the statute of limitations and/or further antagonizing the Plaintiff and

13    running up her legal fees.However, of late, by all indications, Plaintiff and Gacutan appear to

14    have reached a resolution, which is expected to be reflected in a forthcoming stipulation.

15    61.63.    Although it is unclear if she was misleading Plaintiff with settlement talks, when

16    preparing the settlement agreement for signing, Gacutan agreed to take down anonymous posts

17    and accounts, essentially admitting responsibility for some of the anonymous content.

18    62.64.    The other Defendants that were sent notice did not respond. In fact, their harassment of

19    Plaintiff continued. Specifically, on March 19, 2025, Defendant Matusiak continued to push a

20    false narrative that Plaintiff does not know how to use the tools necessary to create mods.

21    Matusiak also reiterated that Matusiak's relationship ended due to Plaintiff's manipulation. Then,

22    on March 27, 2025, Matusiak again insinuated that Plaintiff had faked her suicide attempt in

23    order to manipulate others into having sympathy for her. Attached as **Exhibit 19** are true and

24    correct copies of Defendant Matusiak's messages in a Discord server.

25    65. Throughout all these instances of cyberbullying and harassment, Plaintiff has repeatedly reported

26    a plethora of Tweets, posts, blogs, and accounts to their respective social media providers. X has

27    not removed any of these posts or comments, and Tumblr has been nonresponsive, stating that

28    they will only engage if there is a legal proceeding involved. This practice has been extremely

burdensome and oppressive, as Plaintiff has received virtually no support against this harassment

to this day, increasing her feelings of helplessness and futility. Plaintiff and her significant other

have paused their plans to start a family and have been unable to move forward with their lives

due to this incessant harassment via a mob mentality, which was started by Defendant Swoboda,

with Defendant Gacutan as the new ringleader.

66. The following is a non-exhaustive chart of the defamation and abuse directed at the Plaintiff in a

concerted attack by Defendants in the past two years prior to filing this action.

| | |
|---|---|
| Dec. 16, 2023<br><br>Republished:<br>May 3, 2024<br>by Dufresne | • "can we stop promoting this zwei person on every mod on nexus. **Shes deadsss the most toxic modder int the entire cp community and manipulated, bullies and runs players out of the fandom.** She's a massive narcissist and attention w***e and she tried to stomp out everyone who uses white hair or dares to ship their w with johnny. If youre a modder watch out for her. **She'll just try to get favors and then stab u in the back.**" |
| March 2023 –<br>Dec. 2024 | • "honestly, zwei is the probably worst of the lot. I have never met more manipulative, controlling, narcissistic and petty person in any fandom or even real life."<br>• "…but if you then disagree with her or even DARE talk to people she doesn't approve of, she will then try to start controlling who you can talk to…"<br>• "she will then even go as far as to try and blacklist you in the fandom, by spreading lies and 'warning' people about you, so you'll be basically ostracized by everyone…"<br>• "I cannot count how many people have left the cyberpunk fandom or were turned into a black sheep because Queen Zwei decided she does not like them…"<br>• "This is literally high school bully behavior but zwei is in her thirties, which is even more pathetic..." |
| March 2023 –<br>Dec. 2024 | • "She is so insecure that she will step on anyone who threatens her precious fake character and ship."<br>• "Like other have said I'd had a few friends who have basically been run out of the community by her for doing nothing at all but having the same stupid ship or wearing a piece of clothing that's from the game that she thinks belong to her."<br>• "I deadass think most of Zwei's persona is fake AF – I'm not even convinced she's much of a modder she just has her minion angry, or someone do all the work and then she claims it." |
| March 2023 –<br>Dec. 2024 | • "Zwei goes through friends like a pair of socks. Brides you into friendship/sucks up to you if you show a modicum of talent or relevancy and then discards you once she realized she cannot control to whom you speak."<br>• **"We need to have someone as crazy as Zwei to bring her down."** |

| | | |
|---|---|---|
| | | • "The queen bee mean girl type like her will only break down when she no longer has any followers." |
| | March 2023 – Dec. 2024 | • "Zwei pretty much owns that server, if she doesn't like someone there she makes sure it's known to the mods…" |
| | March 2023 – Dec. 2024 | • "Zwei the narcissist…" |
| | March 2023 – Dec. 2024 | • "There is narcissism and then there's Zwei." |
| | March 2023 – Dec. 2024 | • "I'd still prefer her blunt, no-filter behavior over the two-faced hypocrites like Zwei…who will only smear you behind your back and spread rumours about you in order to blacklist you, despite being the shitty perpetrators 90% of the time." |
| | March 2023 – Dec. 2024 | • "Zwei is such a plague…" |
| | March 2023 – Dec. 2024 | • "She goes around spreading rumors about folks and doing everything BUT block and ignore them." |
| | Soon after May 2, 2024 | • **"Zwei has been known to harass tons of people, filing back charged on PayPal against artist, getting people banned from Discord for no reason."** |
| | May 3, 2024 | • "Zwei has been harassing people, either actively or passively, for the past 3 years."<br>• [Zwei] **"using Keanu Reeve's likeness to make porn without his consent."** |
| | June 14, 2024 | • "Zwei being serial abuser to so many people within the community…3/4 of the fandom hate your guts…" |
| | July 2, 2024 | • "She is narcisstic…" |
| | March 27, 2025 | • "Zwei using 'I'm gonna kill myself' as an manipulation tactic…she wont really do it, it's a scare tactic because she knows other people have empathy when she doesn't." |

63. 67.    After being served with the Complaint in this case on or about September 30, 2025, Dufresne engaged in a concerted effort and campaign to harass, annoy, defame, and humiliate the Plaintiff, which is currently the subject of a quasi-criminal proceeding in France. Gacutan has "liked" many of the posts, further indicating her agreement with the other Defendants to perpetuate the wrongful conduct set forth herein. Attached as **Exhibit 20** is a true and correct copy of an example showing Gacutan liking one of said posts.

**FIRST CAUSE OF ACTION**

**Defamation – Libel**

**(As to all Defendants)**

1    64.68.    Plaintiff repeats, realleges, and incorporates by reference the above paragraphs as though

2        fully set forth herein.

3    65.69.    Defendants Gacutan, Swoboda, Dufresne, Matusiak, and Ervin recklessly and/or

4        intentionally published defamatory content, of and concerning Plaintiff, to be made to

5        individuals within the "Cyberpunk 2077" community, as well as potential and actual clients of

6        Plaintiff.

7    66.70.    The defamatory statements made from ~~June 2023~~April 1, 2024 to present included

8        express and implied statements claiming Plaintiff is "a serial abuser," "known to harass tons of

9        people," a "swindler," and more. Defendants also claimed that Plaintiff's behavior had caused

10       others to exit the "Cyberpunk 2077" community.

11   67.71.    Around June 2024, Plaintiff was also wrongfully accused of not being capable of running

12       her own business with Defendants claiming that Plaintiff had other individuals create the mods

13       and poses she was selling. These statements were meant to undermine her business and

14       reputation.

15   68.72.    These false and defamatory publications were and are in violation of Cal. Civil Code §

16       45. The statements and similar ones published by Defendants also impliedly asserted that

17       Plaintiff has a history of cruelty which could not be further from the truth.

18   69.73.    Plaintiff is informed, believes, and fears that these false and defamatory statements will

19       continue to be published by the Defendants, and will foreseeably be republished by their

20       recipients, all to the ongoing harm and injury to Plaintiff's business, professional, and personal

21       reputations. Plaintiff also seeks redress in this action for all foreseeable republications.

22   70.74.    The defamatory statements intended to injure Plaintiff in her occupation, or to expose her

23       to hatred, contempt, ridicule, or shame, or to discourage others from associating or dealing with

24       her, constitute defamation *per se* as they accuse plaintiff of a crime including the violation of

25       Cal. Penal Code § 484(a) and Cal. Penal Code § 653.2.

26   71.75.    None of the Defendants' defamatory publications against Plaintiff referenced above are

27       true, nor are they privileged.

28

1    72.76.    The above defamatory statements were understood as assertions of fact, and not as

2    opinion. Plaintiff is informed and believes this defamation will continue to be negligently,

3    recklessly, and intentionally published and foreseeably republished by Defendants, and

4    foreseeably republished by recipients of the Defendants' publications, thereby causing additional

5    injury and damages for which Plaintiff seeks redress by this action.

6    73.77.    Each of these false defamatory publications were recklessly and intentionally published

7    in a manner equating to "malice." All the publications were made with hatred, ill will, and intent

8    to vex, harass, annoy, and injure Plaintiff, with knowledge that they were untrue. These false and

9    defamatory statements were made to cause damage to Plaintiff's professional and personal

10   reputation, her good name, her ability to economically benefit from this profession, and to

11   humiliate her before third parties.

12   74.78.    As a proximate result of the publication and republication of these defamatory statements

13   by the Defendants, Plaintiff has suffered injury to her personal, business, and professional

14   reputation including mental anguish, grief, anxiety, depression, pain, loss of ambition,

15   embarrassment, humiliation, severe emotional distress, anxiety, shunning, fear, and significant

16   economic loss in the form of lost wages and future earnings, all to Plaintiff's economic,

17   emotional, and general damage in an amount according to proof.

18   75.79.    The Defendants committed the acts alleged herein recklessly, maliciously, fraudulently,

19   and oppressively, with the wrongful intention of injuring Plaintiff, for an improper and evil

20   motive amounting to malice (as described above) and which abused and/or prevent the existence

21   of any conditional privilege, which in fact did not exist, and with a reckless and conscious

22   disregard of Plaintiff's rights.

23   76.80.    Plaintiff is thus entitled to recover general damages to compensate her for her loss of

24   reputation, special damages for the ~~harm caused to Plaintiff's profession~~medical fees and

25   diminution of business income, and punitive damages for the wanton, obnoxious, and despicable

26   acts in an amount to be determined at trial according to proof.

27                    **SECOND CAUSE OF ACTION**

28              **Civil Harassment (California Civil Code of Procedure § 527.6)**

1    **(As to Defendants Gacutan, Swoboda, Dufresne, and Matusiak only)**

2    77.81.    Plaintiff repeats, realleges, and incorporates by reference the above paragraphs as though

3    fully set forth herein.

4    78.82.    Plaintiff alleges that Defendants engaged in a credible threat of violence, or a

5    knowing and willful course of conduct, directed at her that seriously alarmed, annoyed, or

6    harassed her. Over the course of over two years, they instigated the "Cyberpunk 2077"

7    community to bully, berate, and mock Plaintiff, even after finding out of her attempted suicide.

8    In a sustained, concerted campaign of online abuse through blogs and social media posts,

9    Defendants described Plaintiff as "such a plague", and "a horrible person who should not exist",

10   and otherwise relentlessly harassing the Plaintiff.

11   79.83.    Defendants' course of conduct also served no legitimate purpose. Defendant Gacutan

12   herself admitted that she "did not like the Plaintiff … and freely shared that opinion,"

13   demonstrating a personal vendetta against Plaintiff rather than any legitimate concern or purpose.

14   (See Dkt. 65, p. 12).

15   80.84.    Defendants, individually and in conjunction with the other Defendants named in this

16   claim, perpetrated and continued a constant "hate train"campaign towards Plaintiff on multiple

17   social media platforms since 2022 to present time. Swoboda initiated the bullying via direct

18   messages ("maybe one day someone will hit [you] so hard that [you] will fall off [your] high

19   horse and thing for a moment as clearly right now you lack class and brain") and targeted, online

20   rants; Gacutan continued the bullying by posting and talking about Plaintiff so often that others

21   were incited to gang up on Plaintiff and she was even banned from *NexusMods.com* for, *inter*

22   *alia*, creating multiple accounts to harass Plaintiff; Dufresne republished many of Gacutan's

23   statements and made misleading and offending posts of his own (i.e., "Zwei has been harassing

24   people, either actively or passively, for the past 3 years"); and Matusiak joined in on the

25   concerted effort to harass Plaintiff by publicly invalidating her work and falsely accusing

26   Plaintiff of incompetence as it pertains to the creation of mods. Such unprovoked behavior and

27   course of conduct demonstrate that Defendants acted together in a concerted attempt to harm or

28   distress Plaintiff.

85. Although many publications were made in public forums, they were directed at Plaintiff because they repeatedly identified her by name/aliases, focused on her personal life and business, targeted her collaborators and friends to isolate her, and were intended to reach Plaintiff and those who interact with her.

81.86.    This pattern of conduct, especially on such a consistent, ongoing basis lasting more than a year, is such that it would cause a reasonable person to suffer substantial emotional distress and actually caused substantial emotional distress to Plaintiff, as illustrated by her suicide attempts in October 2023 and July 2024.

87. None of the courses of conduct were constitutionally protected activity.

88. Defendants' harassment has been ongoing and continuous and remains ongoing as of the filing of this Complaint.

82.89.    Absent court intervention, there is a substantial likelihood that Defendants will continue to harass Plaintiff.

83.90.    A permanent restraining order should be issued against all Defendants to protect Plaintiff from their continued harassment.

84.91.    Attorneys' fees should also be granted to Plaintiff pursuant to Cal. Civ. Code §527.6(s).

### THIRD CAUSE OF ACTION

**Intentional Infliction of Emotional Distress**

**(As to all Defendants)**

92. Plaintiff repeats, realleges, and incorporates by reference the above paragraphs as though fully set forth herein.

85.93.    Plaintiff's IIED claim is based not only on defamatory statements, but also on Defendants' broader course of harassment and intimidation, including coordinated dogpiling, gaslighting, repeated targeting of Plaintiff's associates, doxxing, insinuations of violence, and encouraging others to ostracize and harass Plaintiff. Such conduct is independently outrageous even apart from any single publication.

1    86.94.    Defendants engaged in extreme and outrageous conduct towards Plaintiff over an
2         extended period of time. The conduct included, but was not limited to, publicly calling her cruel
3         namesdegrading her (e.g., "Zwei is such a plague" and "a massive narcissist and attention
4         w***e"), defaming her personality and her reputation, as well as her business, constantly
5         harassing her online, encouraging other people to harass Plaintiff over an extended period of
6         time, and causing her to fear for her life. As alleged hereinabove, Defendants described Plaintiff
7         as "such a plague", and "a horrible person who should not exist", among numerous other
8         publications designed the beat the Plaintiff down.
9    95. Several of the Defendants asserted online that Plaintiff had faked her suicide attempt, and
10        continued to bully her even though the attempt was, in fact, real. Whether or not they believed
11        the suicide attempt was real, they were at minimum put on notice of the gravity of their
12        comments.
13   96. Defendant Gacutan, throughout her bullying campaign, falsely accused Plaintiff of using Keanu
14        Reeves's likeness to make porn without his consent and would personally confront Plaintiff's
15        friends, saying "how dare you include [Plaintiff] in your work," and falsely claiming Plaintiff has
16        harassed and abused people in the past. Gacutan even went so far as to dox Plaintiff's friend,
17        Lucent, after he stood up for Plaintiff, in an act that could reasonably be perceived as an
18        intimidation tactic towards Plaintiff by targeting a close ally.
19   97. In a call to community to ostracize Plaintiff and treat her as an untrustworthy peer, Gacutan
20        asserted in a public forum for "modders" to "watch out for her. She'll just try to get favors and
21        then stab u in the back."
22   87.98.    In April 2024, Gacutan was banned from *NexusMods* due to her violations of the
23        website's policy by, *inter alia*, creating multiple accounts to harass Plaintiff.
24   88.99.    Defendants' actions were intentional or carried out with reckless disregard for the
25        probability of causing emotional distress to the plaintiff. Defendants persisted after being put on
26        notice that their conduct was causing severe distress.
27   89.100.    Defendants knew that such conduct would likely result in severe emotional distress.
28

1    90.101.    Defendant Gacutan specifically should have known that such conduct would likely result

2         in severe emotional distress, as she claimed to be an advocate against bullying in May 2024. As

3         an "advocate," she should have been able to recognize that she and the other Defendants were

4         bullying and harassing Plaintiff.

5    91.102.    The Defendants' conduct was so extreme and outrageous that it went beyond all possible

6         bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community.

7         Specifically, Defendants repeatedly published cruel, false statements about Plaintiff, hoping that

8         they could push her out of the "Cyberpunk 2077" community, causing severe emotional harm

9         and leading to two suicide attempts.

10   92.103.    Furthermore, our society does not allow for cyberbullying, and its aversion to it is

11        illustrated in the many policies of websites that ban cyberbullying, as well as the general disgust

12        people have towards cyberbullying and harassment.

13   93.104.    As a direct and proximate result of Defendants' extreme and outrageous conduct,

14        Plaintiff has suffered severe emotional distress. Plaintiff's emotional distress was a foreseeable

15        result of Defendants' actions.

16   94.105.    Plaintiff has experienced severe emotional distress, including but not limited to, anxiety,

17        depression, suicidal ideation, and several suicide attempts.

18   95.106.    Plaintiff has sought medical and psychological treatment as a result of the distress caused

19        by Defendants' conduct.

20   96.107.    As a direct and proximate result of Defendants' intentional infliction of emotional

21        distress, Plaintiff has suffered damages, including but not limited to, medical expenses, lost

22        wages, and other economic and non-economic damages. Plaintiff seeks compensatory damages

23        as well as punitive damages to punish Defendants for their malicious conduct and to deter similar

24        conduct in the future.

25                          **FOURTH CAUSE OF ACTION**

26                  **Stalking (California Civil Code of Procedure § 1708.7)**

27                      **(As to Defendants Swoboda and Ervin only)**

28

1    97.108.    Plaintiff repeats, realleges, and incorporates by reference the above paragraphs as though

2           fully set forth herein.

3    98.109.    Defendant Swoboda and Defendant Ervin stalked Plaintiff and engaged in the patterns of

4           conduct outlined above with the intent to "harass the Plaintiff."

5    99.110.    Swoboda continuously harassed Plaintiff online through social media since 2022 thus

6           placing Plaintiff under surveillance with the intent to harass Plaintiff.

7    100.111.    Swoboda's harassing conduct "would cause a reasonable person to suffer substantial

8           emotional distress" and did cause Plaintiff to suffer substantial emotional distress.

9    101.112.    In or about October 2022, Plaintiff "clearly and definitely demanded" on multiple

10          occasions for Defendant Swoboda to cease her pattern of conduct through direct messaging and

11          through a cease-and-desist letter. Despite these attempts, Swoboda persisted in her pattern of

12          harassing conduct anyway.

13   102.113.    Beginning in April 2023, Ervin began harassing Plaintiff over text, becoming emotionally

14          abusive when she would not do what he wanted. Ervin was hostile and aggressive almost

15          instantly when he did not get his way. Ervin would also accuse Plaintiff of hurting his feelings

16          and state that she was ungrateful. Ervin would then degrade and gaslight Plaintiff. Once Plaintiff

17          finally did what he wanted, Ervin would tell her how much she meant to him. Ervin also stalked

18          Plaintiff and monitored her social interactions, becoming possessive of Plaintiff and trying to

19          isolate her from her friends.

20   103.114.    Plaintiff reasonably feared for her safety due to Ervin's pattern of conduct. Plaintiff also

21          suffered substantial emotional distress, as well as psychological and mental distress.

22   104.115.    Plaintiff demanded that Ervin cease and desist his pattern of conduct, through a mutual

23          friend. Nevertheless, Ervin continued to stalk and harass her.

24   105.116.    Swoboda and Ervin engaged in the foregoing conduct with hatred, ill will, and intent to

25          vex, harass, annoy, and injure Plaintiff equating their conduct to malice. Accordingly, punitive

26          damages should be awarded against both Defendants to punish and deter them and other such

27          persons from committing such wrongful and malicious acts in the future.

28

1    ~~106.~~117.   As a direct and proximate result of the Defendant's conduct, Plaintiff has suffered both

2         general and special damages in the form of medical expenses, lost wages, and other economic

3         and non-economic damages.

4    ~~107.~~118.   Plaintiff also seeks an injunction against Defendant Swoboda and Defendant Ervin

5         pursuant to Cal. Civ. Code §1708.7(d) to protect Plaintiff from their continued harassment.

6                              **FIFTH CAUSE OF ACTION**

7                            **Unfair Competition False Advertising**

8          **(California Business and Professions Code §§ 17200 et seq. and 17500 et seq.)**

9                              **(As to Defendant Matusiak only)**

10   ~~108.~~119.   Plaintiff repeats, realleges, and incorporates by reference the above paragraphs as though

11        fully set forth herein.

12   ~~109.~~120.   Defendant Matusiak engaged in unfair, deceptive, untrue, and misleading acts by posting

13        that Plaintiff does not create her own mods nor have the ability to create mods. These statements

14        meet the legal definition of false and misleading statements constituting unfair competition.

15   ~~110.~~121.   Defendant's statements concern Plaintiff's services since they reference Plaintiff's name

16        directly and explicitly state her inability to create her own mods.

17   ~~111.~~122.   The statements are untrue and misleading, and Defendant Matusiak knows, or by the

18        exercise of reasonable care should know, that her statements are untrue and misleading, and

19        these publications are unfair, illegal, and fraudulent.

20   ~~112.~~123.   Plaintiff's business of selling her custom mods has suffered due to Defendant Matusiak's

21        false allegations as the business relies on credibility to maintain its status.

22   ~~113.~~124.   As a direct and proximate result of Defendant Matusiak's conduct, Plaintiff has suffered

23        harm to her business thus allowing for Plaintiff to seek restitution and other remedies against

24        Matusiak pursuant to Cal. Bus. & Prof. Code § 17206.

25   ~~114.~~125.   Plaintiff may also seek an injunction against Defendant Matusiak pursuant to Cal. Bus. &

26        Prof. Code § 17203 to protect Plaintiff from the harm to her professional reputation.

27                              **SIXTH CAUSE OF ACTION**

28                            **Public Disclosure of Private Facts**

**(As to Defendant Ervin only)**

115.126.   Plaintiff repeats, realleges, and incorporates by reference the above paragraphs as though fully set forth herein.

116.127.   Defendant Ervin published Plaintiff's phone number and private communications and voice messages on a public Discord server. Plaintiff's phone number is private information, as phone numbers are identifying and could lead her to be identified and harassed.

117.128.   By publishing her phone number and other private information online, Ervin intended to humiliate and degrade the Plaintiff.

118.129.   Such conduct would be greatly offensive to the average person.

119.130.   Plaintiff's private information was not of legitimate public concern, as this was a private matter between Plaintiff and Defendant Ervin.

120.131.   After publishing her phone number and other private information, Ervin showcased malicious intent and said that he was going to put Plaintiff on blast from now on and told others to "call this stupid bitch and tell her to fuck off" and "call that number nonstop."

121.132.   Because of Ervin's disclosure of Plaintiff's private phone number and other private information, Plaintiff received many harassing phone calls that resulted in her suffering severe emotional distress.

122.133.   Plaintiff seeks to recover both general and special damages because of this disclosure as well as punitive damages to punish Defendant.

**SEVENTH CAUSE OF ACTION**

**Breach of Contract**

**(As to Defendant Ervin only)**

122.       Plaintiff repeats, realleges, and incorporates by reference the above paragraphs as though fully set forth herein.

122.       On or about August 22, 2024, Defendant Ervin and Plaintiff entered into a joint stipulation in which Ervin agreed not to talk about Plaintiff to anyone including anonymously. Additionally, they were to remove all posts about each other on all social media platforms.

1    Furthermore, the two were not to blog or retweet anything about each other going forward as set

2    forth in the Joint Stipulation attached hereto as **Exhibit 15**.

3    122.    Furthermore, Ervin agreed to delete Plaintiff's character model completely and remove

4    the images of the character model from his social media.

5    122.    Ervin and Plaintiff specifically agreed in the stipulation that in the event either party

6    breaches any term, covenant, or provision, the nonbreaching party may seek any available

7    remedy at law or in equity and shall be entitled to recover their costs and attorneys' fees of

8    seeking such remedies.

9    122.    Plaintiff performed all covenants and conditions required, except as excused by the

10    conduct of Defendant Ervin.

11    122.    On or about August 22, 2024, the same day the stipulation was entered into, Ervin

12    breached the stipulation when he published information about Plaintiff and the stipulation on a

13    public server several hours after signing.

14    122.    As a proximate result of Ervin's breach, Plaintiff suffered direct harm due to the

15    continued harassment from Ervin and others within the "Cyberpunk 2077" community.

16    122.    Plaintiff is entitled to special damages and her attorneys' fees due to Ervin's breach of the

17    stipulation.

18    ## ~~EIGHTH~~ SEVENTH CAUSE OF ACTION

19    **Distribution of Private Sexually Explicit Materials**

20    **(California Civil Code of Procedure § 1708.85)**

21    **(As to Defendant Ervin only)**

22    ~~123.~~134.    Plaintiff repeats, realleges, and incorporates by reference the above paragraphs as though

23    fully set forth herein.

24    ~~124.~~135.    Defendant Ervin intentionally distributed online via his X and other social media

25    platforms a virtual model of Plaintiff's likeness without her consent.

26    ~~125.~~136.    Ervin knew that Plaintiff had a reasonable expectation that the material would remain

27    private, as she had asked him to delete the material after their friendship ended.

28

1    126.137.    Defendant Ervin reasonably should have known that Plaintiff would not have wanted the

2        material to be published, as it was modeled after her likeness and her model was personal and

3        private to Plaintiff. Ervin also should have reasonably known that Plaintiff would not have

4        wanted the model published as others were aware that it resembled her likeness and that she

5        wanted it private.

6    127.138.    Additionally, Plaintiff made it strikingly clear that she did not consent to Ervin sharing

7        her model.

8    128.139.    Ervin published the model online with actual malice. He had a state of mind arising from

9        hatred or ill will toward Plaintiff, and he was hoping to embarrass her.

10    129.140.    The model was created through a collaboration between Ervin and Plaintiff, so it was

11        accurately reflective of Plaintiff's likeness. Individuals who saw the model would recognize it as

12        Plaintiff.

13    130.141.    The material distributed by Defendant Ervin exposed the entire nude body of Plaintiff via

14        a virtual model of her likeness. This distributed material was not privileged in any way.

15    131.142.    Defendant Ervin has also published material of Plaintiff's model engaging in an act of

16        sexual penetration. While Ervin had consent at the time of publication, Plaintiff had since

17        withdrawn her consent for this material to have been published, and Ervin was aware of this and

18        should have reasonably been aware.

19    132.143.    Plaintiff has suffered great emotional distress due to this and thus is entitled to recover

20        general and special damages.

21    144.        Plaintiff seeks an injunction ordering Defendant to cease distribution of this material as

22        well as reasonable attorneys' fees and costs.

23    //

24    133.    //

25                    NINTH CAUSE OF ACTION

26            Disclosure of Intimate Images (15 U.S.C.S. § 6851)

27                    (As to Defendant Ervin only)

28

1    134.    Plaintiff repeats, realleges, and incorporates by reference the above paragraphs as though fully

2        set forth herein.

3    134.    Plaintiff's intimate visual depiction was disclosed on the Internet, through X and other

4        social media platforms, which are modes of interstate commerce.

5    134.    The intimate visual depiction was a virtual model of Plaintiff's likeness and was

6        completely nude.

7    134.    The intimate visual depiction was disclosed without Plaintiff's consent.

8    134.    Ervin was aware, or recklessly disregarded, that Plaintiff had not consented to this

9        disclosure.

10   134.    Ervin was aware that Plaintiff would not have wanted the material to be published, as it

11       was modeled after her likeness and her model was personal and private to Plaintiff.

12   134.    In the alternative, Ervin recklessly disregarded that Plaintiff would not have wanted the

13       model published.

14   134.    Ervin also should have reasonably known that Plaintiff would not have wanted the model

15       published as it was clear that it resembled her likeness and that she wanted it private.

16   134.    The intimate visual depiction was not privileged in any way.

17   134.    Plaintiff is entitled to recover actual damages in an amount according to proof as well as

18       reasonable attorney's fees and costs incurred.

19   134.    Plaintiff also seeks an injunction ordering Defendant to cease display or disclosure of the

20       intimate visual depiction.

21                                      **RELIEF REQUESTED**

22   WHEREFORE, Plaintiff prays:

23                              **ON THE FIRST CAUSE OF ACTION:**

24   1.  For general damages in an amount to be proven at trial, but no less than $2,000,000;

25   2.  For special damages in an amount to be proven at trial, but no less than $2,000,000;

26   3.  For punitive damages in an amount sufficient to punish Defendants' wrongful conduct and future

27       misconduct.

28                          **ON THE SECOND CAUSE OF ACTION:**

1.  For a temporary restraining order, preliminary injunction, and permanent restraining order against the Defendants to protect Plaintiff from their continued harassment.

### ON THE THIRD CAUSE OF ACTION:

1.  For compensatory damages in an amount to be proven at trial, but no less than $2,000,000;
2.  For punitive damages in an amount sufficient to punish Defendants' wrongful conduct and future misconduct.

### ON THE FOURTH CAUSE OF ACTION:

1.  For general damages in an amount to be proven at trial, but no less than $2,000,000;
2.  For special damages in an amount to be proven at trial, but no less than $2,000,000;
3.  For punitive damages in an amount sufficient to punish Defendants' wrongful conduct and future misconduct;
4.  For a temporary restraining order, preliminary injunction, and permanent restraining order against Defendant Swoboda and Defendant Ervin to protect Plaintiff from their continued harassment.

### ON THE FIFTH CAUSE OF ACTION:

1.  For actual economic damages in an amount to be proven at trial;
2.  For civil penalties in the amount of $2,500 per violation to be paid to the Unfair Competition Law Fund;
3.  For an injunction against Defendant Matusiak to prevent Matusiak from committing acts that constitute unfair competition.

### ON THE SIXTH CAUSE OF ACTION:

1.  For general damages in an amount to be proven at trial, but no less than $2,000,000;
2.  For special damages in an amount to be proven at trial, but no less than $2,000,000;
3.  For punitive damages in an amount sufficient to punish Defendant's wrongful conduct and future misconduct.

### ~~ON THE SEVENTH CAUSE OF ACTION:~~

~~0.  For special damages in an amount to be proven at trial, but no less than $2,000,000.~~

### ON THE ~~EIGHTH~~ SEVENTH CAUSE OF ACTION:

**COMPLAINT**

1.  For general damages in an amount to be proven at trial, but no less than $2,000,000;

2.  For special damages in an amount to be proven at trial, but no less than $2,000,000;

3.  For an injunction ordering Defendant to cease distribution of Plaintiff's private sexually explicit materials.

~~ON THE NINTH CAUSE OF ACTION:~~

~~0.~~  ~~For actual damages in an amount to be proven at trial, but no less than $2,000,000;~~

~~0.~~  ~~For an injunction ordering Defendant to cease display or disclosure of Plaintiff's intimate visual~~ ~~depiction.~~

**ON ALL CAUSES OF ACTION:**

1.  For attorney's fees and costs incurred herein; and

2.  For any other and further relief this Court may deem proper.

**<u>JURY DEMAND</u>**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Complaint and on all other issues so triable.

Respectfully submitted,

~~June 13, 2025~~February 12, 2026                                      **LOWE & ASSOCIATES, P.C.**

By:  _____

~~Steven T. Lowe~~Giselle Espinola-Jimenez, Esq.

Attorney for Plaintiff

33

**COMPLAINT**
