UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ALISA TAYTS,

        Plaintiff,

      v.

LEILANI JOY GACUTAN, et al.,

        Defendants.

Case No.  3:25-cv-03001-JSC

**ORDER RE: MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Re: Dkt. No. 99

United States District Court
Northern District of California

Alisa Tayts brings defamation and assorted state law claims against five Defendants regarding statements she alleges Defendants made about her online. (Dkt. No. 93.[1])  The Court previously granted, in part, the motions to dismiss of the two appearing defendants, Leilani Joy Gacutan and Kyle James Ervin.  (Dkt. Nos. 79, 87.)  Plaintiff thereafter filed her Second Amended Complaint (SAC).  (Dkt. No. 93.)  Gacutan's renewed motion to dismiss the defamation, intentional infliction of emotional distress, and civil harassment claims pled as to her is now pending before the Court.  (Dkt. No. 99.)  Having considered the parties' briefs and having had the benefit of oral argument on April 30, 2026, the Court grants the motion to dismiss for failure to state a claim.

## BACKGROUND

### A.    Second Amended Complaint Allegations

Plaintiff is a video gamer in the "Cyberpunk 2077" community. (Dkt. No. 92 at ¶ 12.) "'Cyberpunk 2077' is a role-playing video game released in 2020 where players can create and customize their own protagonist."  (*Id*.)  Plaintiff, using the professional business names "Zwei,"

---

[1] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

"therockergf," and "rockergirlfriend," established popularity within the "Cyberpunk 2077" community and the video game modification ("mod") community beginning in 2021. (*Id*. at ¶ 13.) Zwei is a "character modeled after Plaintiff's own likeness." (*Id*. at ¶ 14.) Plaintiff has monetized her hobby of making mods by selling them on NexusMods.com. (*Id*. at ¶ 15.) She is well-known for her "pose mods" which are mods made to a video game character's posture. (*Id*.)

In 2022, Defendant Monika Swoboda contacted Plaintiff on X accusing her of going on a witch hunt following posts Plaintiff had made on X regarding a friend's stolen mods, and Plaintiff thereafter blocked Swoboda on X. (*Id*. at ¶¶ 16-18.) Swoboda then made additional tweets accusing Plaintiff of being a bully and "harrass[ing] Plaintiff and [making] several homophobic rants on her own X page" which Plaintiff believed were targeted towards her as a member of the LGBTQIA+ community. (*Id*. at ¶¶ 19-20.) Swoboda then "enlisted Dong Hae Lee ('Lee') to join her in harassing Plaintiff on X" and he "constantly tweeted that he 'ha[d] the ability to do something' to Plaintiff, but would then delete the post" which "caused Plaintiff to often feel unsettled, concerned for her safety, and emotionally distressed." (*Id.* at ¶ 21.) In October 2022, Plaintiff hired counsel who sent cease-and-desist letters to Swoboda and Lee. (*Id*. at ¶ 22.) In response, Swoboda has continued to ridicule Plaintiff and encourages other people to harass her. (*Id*.)

In March 2023, "anonymous hate blogs arose on Tumblr.com ("Tumblr") that were dedicated to harassing Plaintiff." (*Id*. at ¶ 24.) Since this time, five anonymous hate blogs were posted "each containing hundreds of defamatory posts." (*Id*. at ¶ 25.) Plaintiff "believes that Defendants herein, either alone or in conjunction with others, are responsible for the anonymous 'hate blogs.'" (*Id*. at ¶ 26.) Plaintiff's relationships suffered because people believed the derogatory messages were true and as a result of the continuous harassment, Plaintiff attempted suicide in October 2023. (*Id*. at ¶¶ 27-28.)

In December 2023, Defendant Leilani Joy Gacutan began harassing Plaintiff on NexusMods calling her a "massive narcissist" and "attention w***e" who "manipulates, bullies, and runs players out of the fandom." (*Id*. at ¶ 29.) After Plaintiff helped a friend "creat[] explicit poses for 'Cyberpunk 2077," Defendant Gacutan "falsely asserted that Plaintiff was using Keanu

Reeves's likeness to make porn without his consent." (*Id*. at ¶¶ 29-31.)  "Gacutan was eventually banned from NexusMods.com because she violated the website's policy by creating multiple accounts to harass Plaintiff and others." (*Id*. at ¶ 32.)  Gacutan then posted something on X claiming to have been bullied by Plaintiff and Gacutan falsely told one of Plaintiff's friends that Plaintiff was the harasser and would get people banned from Discord for no reason. (*Id*. at ¶¶ 33-34.)  Gacutan also "doxxed" Plaintiff's friend. (*Id*. at ¶ 35.)

In January 2023, Plaintiff became friends with Defendant Kyle James Ervin and Plaintiff commissioned Ervin "for his work on visual art projects" and he created images using Plaintiff's character which he posted on his Patreon.com website. (*Id*. at ¶¶ 36-37.) Ervin would not take any compensation for his work. (*Id*. at ¶¶ 37.)   In March 2023, Ervin declared his romantic feelings toward Plaintiff, but Plaintiff told him she already had a boyfriend.  (*Id*. at ¶ 38.)  Ervin began to "exhibit possessive behaviors toward Plaintiff" and "demanded all of Plaintiff's time." (*Id*. at ¶ 39.)  In February 2024, they had a falling out and their friendship abruptly ended.  (*Id*. at ¶ 40.) Around the same time, a mutual friend asked Ervin to delete all of Plaintiff's models and he said he did so.  (*Id*. at ¶ 41.)  Ervin then publicly demanded $10,000 from Plaintiff on Discord for his work and threatened to release nude explicit poses of her.  (*Id*. at ¶¶ 42-43.)  A few months later "Ervin tweeted a 3D seminude model/render of Plaintiff's character to his 18,000+ followers." (*Id*. at ¶ 44.)  Ervin claimed because he never received payment for the image, he had the right to do what he liked with the work.  (*Id*. at ¶ 45.)  Ervin then posted several things about Plaintiff including her phone numbers and called on his followers to harass her.  (*Id*. at ¶ 46.)

The online harassment and cyberbullying continued in May 2024. Gacutan was "constantly tweet[ing] about Plaintiff and even [falsely] claimed that Plaintiff had bullied one of Gacutan's friends." (*Id*. at ¶ 48.)  Defendant Julien Dufresne joined in and "wrongfully accused Plaintiff of harassing people in the community for the past three years." (*Id*. at ¶ 50.)  Defendant Łucja Matusiak likewise began posting about Plaintiff and "began engaging in a concerted attempt to hurt Plaintiff's products and business" falsely implying "Plaintiff was not selling custom mods nor had the ability to create custom mods and otherwise tarnished her products." (*Id*. at ¶¶ 52-54.)  As a result of all the harassment, Plaintiff attempted suicide again.  (*Id*. at ¶ 58.)

In December 2024, Plaintiff "sent notice to Defendants Gacutan, Swoboda, Dufresne, and Matusiak in an attempt to amicably resolve the instant claims without the necessity of litigation." (*Id*. at ¶ 60.)  Shortly after this notice was sent, several of the hate blogs regarding Plaintiff were deleted.  (*Id*. at ¶ 61.)  Defendant Matusiak has continued her harassment of Plaintiff. (*Id*. at ¶ 64.)

### B.    Procedural Background

This civil action was filed a few months later, in April 2025.  Plaintiff initially brought claims for defamation, harassment, intentional infliction of emotional distress (IIED), stalking, and violation of California's Unfair Competition Law against Gacutan, Swoboda, Dufresne, and Matusiak. (Dkt. No. 1.) Before any defendant appeared or responded to the Complaint, Plaintiff filed an Amended Complaint adding Ervin as a defendant and adding breach of contract and disclosure of intimate images claims. (Dkt. No. 12.)  To date, only Defendants Ervin and Gacutan have appeared in this action.

In November 2025, the Court granted Ervin's motion to dismiss the federal claim pled against him, but otherwise denied his motion to dismiss. (Dkt. Nos. 79, 87.)  The Court also granted Gacutan's motion to dismiss the intentional infliction of emotional distress claim and the civil harassment claim, but denied the motion to strike the defamation claim under California Code of Civil Procedure Section 425.16.  (Dkt. No. 87.)

Plaintiff thereafter filed the now operative Second Amended Complaint (SAC).  (Dkt. No. 92.)  Shortly thereafter she filed a motion for voluntary dismissal of her civil harassment claim as to Defendant Gacutan only and to strike the following sentences from the SAC:

- ¶ 31: In response to the explicit poses, Defendant Gacutan claimed that Plaintiff did not respect the game or its creators. **Defendant Gacutan also falsely asserted that Plaintiff was using Keanu Reeves's likeness to make porn without his consent.**
- ¶ 66, p. 16, line 23: **[Zwei] "using Keanu Reeve's likeness to make porn without his consent."**

(Dkt. No. 97 at 2 (citing Dkt. No. 92) (emphasis in original).)  Defendant Ervin failed to respond to the SAC and his default has been entered.  (Dkt. No. 105.)

Defendant Gacutan again moves to dismiss the defamation, civil harassment, and IIED claims.  (Dkt. No. 99.)  In opposing the motion to dismiss, Plaintiff indicates—contrary to her

4

United States District Court
Northern District of California

earlier notice of dismissal—she intends to prosecute her civil harassment claim against Gacutan. (Dkt. No. 104 at 8.)

Plaintiff's opposition was accompanied by separately filed objections to the Declaration of Max Rodriguez.  (Dkt. No. 104-2.)  The Court will not consider this separate filing as it violates Civil Local Rule 7-3(c), which requires "[a]ny evidentiary and procedural objections to the motion ... be contained within the [opposition] brief or memorandum." N.D. Cal. Civ. L.R. 7-3(a). "Courts in this district regularly strike separately-filed evidentiary objections and responses for violating Local Rule 7-3." *Go Daddy Operating Co., LLC v. Ghaznavi*, No. 17-CV-06545-PJH, 2018 WL 1091257, at *14 (N.D. Cal. Feb. 28, 2018) (collecting cases re: same).  Following Gacutan's reply, Plaintiff filed a request for leave to file a surreply (Dkt. No. 108) and an objection to an exhibit offered with Plaintiff's reply brief (Dkt. No. 107).  Because the Court has not considered the exhibit, it denies the objection as moot.   The Court grants Plaintiff leave to file the surreply.

**DISCUSSION**

**I.      DEFAMATION CLAIM**

"As a federal court sitting in diversity, '[the Court] must apply the substantive law of California, as interpreted by the California Supreme Court.'" *Moore v. Mars Petcare US, Inc*., 966 F.3d 1007, 1016 (9th Cir. 2020) (quoting *Hinojos v. Kohl's Corp*., 718 F.3d 1098, 1103 (9th Cir. 2013)).  Under California law, "[t]he elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." *Sanders v. Walsh*, 219 Cal. App. 4th 855, 862 (2013).

The SAC contains a chart listing the allegedly defamatory statements.  (Dkt. No. 92 at ¶ 16, ECF 15-16.)   At oral argument, Plaintiff conceded the statements made before April 1, 2024 were barred by the one-year statute of limitations for California law defamation claims. *See Shively v. Bozanich*, 31 Cal. 4th 1230, 1239 (2003), as modified (Dec. 22, 2003) (citing Cal. Code. Civ. Proc. § 340(c)).  Plaintiff also clarified her defamation claim as to Gacutan is limited to the following four statements:

1. In a private message on X, on May 2, 2024, "Gacutan told Lucent [a friend of Plaintiff's] that Plaintiff is 'known to harass tons of people, filing back charges on PayPal against artists, [and] getting people banned from Discord for no reason.'"

(Dkt. No. 92 at ¶ 34.)  This message to attached as Exhibit 6.  (Dkt. No. 92-6.)

2. In May 2024, Gacutan tweeted about Plaintiff being a "bully" and claimed that Plaintiff had bullied one of Gacutan's friends.  (Dkt. No. 92 at ¶ 48.)  These tweets are attached as Exhibit 11.  (Dkt. No. 92-11.)

3. On May 3, 2024, Defendant Julien Dufresne, a "friend" of Plaintiff's "republished some of the comments Gacutan had posted" in his Tumblr blog.  (Dkt. No. 92 at ¶ 50.)  The blog is attached as Exhibit 13.  (Dkt. No. 92-13.)

4. On June 14, 2024, Defendant Lucja Matusiak "accused Plaintiff of being a 'serial abuser' to many within the 'Cyberpunk 2077' community" on Twitter.  (Dkt. No. 92 at ¶¶ 54-55.)  These tweets are attached as Exhibit 14.  (Dkt. No. 92-14.)

### A.    Statement One: May 2, 2024 Private Message to Lucent

#### 1.    Opinion or Fact

The threshold question in every defamation suit is "whether a reasonable factfinder could conclude that the [contested] statement implies an assertion of objective fact." *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1157 (9th Cir. 2021). "If the answer is no, the claim is foreclosed by the First Amendment." *Gardner v. Martino*, 563 F.3d 981, 987 (9th Cir. 2009).  "Whether a statement declares or implies a provably false assertion of fact is a question of law for the court to decide, unless the statement is susceptible of both an innocent and a libelous meaning, in which case the jury must decide how the statement was understood." *Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 385 (2004).  Courts apply a three-factor test to resolve this question:

(1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact,

(2) whether the defendant used figurative or hyperbolic language that negates that impression, and

(3) whether the statement in question is susceptible of being proved true or false.

*Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995).

//

//

//

//

//

//

6

United States District Court
Northern District of California

The following is a screenshot of Gacutan's message to Lucent.[2]

> Oh Jesus. I haven't even seen these. Yeah these are from the account my husband made. Zwei has been known to harass tons of people, filing back charges on PayPal against artists, getting people banned from Discord for no reason. I vented to my husband a lot about her behavior and probably said some of these things myself. We gotta own it now. I just wish they'd make her comments public too because they were super cruel and basically drove someone out of the fandom.

(SAC, Ex. 6 (Dkt. No. 92-6).)  The challenged statement is "Zwei has been known to harass tons of people, filing back charges on Paypal against artists, getting people banned from Discord for no reason." (Dkt. No. 92 at ¶ 34.)  Gacutan insists these are non-actionable statements of opinion.

### a.    Known to Harass Tons of People

The statement "Zwei has been known to harass tons of people" is a hyperbolic statement of opinion as a matter of law.  First, "the general tenor of [Gacutan's statement] negates the impression that she was asserting objective facts." *Obsidian Fin. Grp., LLC v. Cox*, 740 F.3d 1284, 1293 (9th Cir. 2014).  She made the statement in a direct message on X and appears to be responding to a message about other posts she or her husband made.  (SAC at ¶ 34.)  Further, Gacutan describes herself as "venting" "about [Zwei's] behavior" and "super cruel" comments. (Dkt. No. 92-6.)  Second, Gacutan's "consistent use of extreme language negates the impression that the blog posts assert objective facts." *Obsidian*, 740 F.3d at 1293 (citing as examples "immoral," "really bad," "thugs," and "evil doers.").  Gacutan uses similarly hyperbolic language:

---

[2] The Court considers the screenshots attached to the SAC, rather than Plaintiff's characterization of the statements because "the context of a statement may control whether words were understood in a defamatory sense." *Koch v. Goldway*, 817 F.2d 507, 509 (9th Cir. 1987); *see also Nietzche as trustee for KRME Int'l Tr. v. Freedom Home Mortg. Corp.*, No. 19-35876, 2023 WL 2570417, at *1 (9th Cir. Mar. 20, 2023) ("The district court properly interpreted the documents attached to the complaint and refused to accept speculative, conclusory allegations.").

United States District Court
Northern District of California

"oh Jesus," "super cruel," and "harass tons of people." (Dkt. No. 92-4; Dkt. No. 92-6). "[S]atirical, hyperbolic, imaginative, or figurative statements are protected because the context and tenor of the statements negate the impression that the author seriously is maintaining an assertion of actual fact." *Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 385 (2004). Third, the statement is subjective and not capable of being proven true or false. *Obsidian*, 740 F.3d at 1294 ("in the context of a non-professional website containing consistently hyperbolic language, Cox's blog posts are 'not sufficiently factual to be proved true or false.'"); *see also Krinsky v. Doe 6*, 159 Cal. App. 4th 1154, 1175 (2008) (finding posts which "convey scorn and contempt," have a "sarcastic, derisive tone" and included "juvenile name-calling" could not be read as stating actual facts when the totality of the context was considered). No reasonable factfinder could find the statement implies an assertion of objective fact. *See Herring Networks*, 8 F.4th at 1157.

At oral argument, Plaintiff insisted *ZL Techs., Inc. v. Does 1-7*, 13 Cal. App. 5th 603 (2017), supported her theory. In *ZL Techs.*, the court considered whether Glassdoor (a website where employees provide reviews regarding jobs and companies) reviews which criticized the plaintiff's management and work environment were defamatory. *Id*. at 607. In the statements at issue, "after identifying themselves as current or former employees or associates, presumably drawing upon firsthand experience, and using language appropriate to a more professional work environment, defendants shared their general assessments" regarding the plaintiff's "work environment," "company culture," and "professionalism". *Id*. at 627. The statement as issue here is inapposite. Gacutan's statement in a direct message on X that Zwei has been known "to harass tons of people" features the type of hyperbolic language the Ninth Circuit holds is not actionable. *See Hartzell v. Marana Unified Sch. Dist.*, 130 F.4th 722, 747 (9th Cir.), *cert. denied*, 146 S. Ct. 298 (2025) (finding "the words 'harass,' 'bully,' 'intimidate,' and 'threaten' cannot be actionable because they 'merely describe how the author of the Second Document interpreted Plaintiff's communications.'"). Drawing all reasonable inferences in Plaintiff's favor, it is nothing like the professional Glassdoor statement in *ZL Techs.*

Accordingly, the statement "harass tons of people" is a non-actionable statement of opinion protected by the First Amendment.

### b.    Filing Back Charges on Paypal

Next, Plaintiff challenges Gacutan's statement that Plaintiff has been known to file back charges on PayPal against artists.  In contrast to the fiery rhetoric regarding Zwei's "tons of harassment," this particular statement is not modified or amplified by hyperbolic language. A reasonable trier of fact could find it is a statement of fact: Zwei has filed back charges on Paypal against artists.  And, it is capable of being proven true or false.

### c.    Getting People Banned from Discord

Drawing inferences in Plaintiff's favor, the statement Zwei gets people banned on Discord for no reason can be interpreted as a statement of fact that can be proven true or false.

### 2.    Falsity

Next, the Court considers whether Plaintiff has adequately alleged the falsity of the two "factual" statements.  *See Cort v. St. Paul Fire & Marine Ins. Companies, Inc*., 311 F.3d 979, 985 (9th Cir. 2002) ("An essential element of defamation is that the publication in question must contain a false statement of fact.") (quoting *Savage v. Pac. Gas & Elec. Co*., 21 Cal.App.4th 434, 444 (1993)). Plaintiff's allegations of falsity are conclusory; she merely alleges the legal conclusion—"All of these claims are demonstrably false and the falsity can be proven"—without any facts supporting this conclusion.  (Dkt. No. 92 at ¶ 34.) "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

At oral argument, Plaintiff contended she had alleged falsity and emphasized her declaration as an offer of proof.  (Dkt. No. 104-3, Tayts Decl. at ¶ 2 (attesting she has not filed chargebacks on Paypal); ¶ 5 (attesting she has not "gotten" anybody banned on Discord).) However, "when ruling on a motion to dismiss, [the court] must disregard facts that are not alleged on the face of the complaint or contained in documents attached to the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).  As currently pled, the SAC fails to adequately allege falsity so the claim is subject to dismissal on this basis.  *See Crittendon v. Muldrow*, No. 22-CV-09153-RS, 2023 WL 2743582, at *3 (N.D. Cal. Mar. 31, 2023) (dismissing defamation claim because "the pleadings themselves are conclusory as to the falsity of the challenged statements").

9

### 3.    Limited-Purpose Public Figure

Gacutan also insists the claim is subject to dismissal because Plaintiff is a limited-purpose public figure and thus Plaintiff must allege the defamatory statements were made with actual malice; "that is, 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Planet Aid, Inc. v. Reveal*, 44 F.4th 918, 924 (9th Cir. 2022) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964)). "[L]imited-purpose public figures [] achieve their status by thrusting themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." *Planet Aid*, 44 F.4th at 924 (cleaned up).

As a threshold matter, Plaintiff maintains the Court already addressed this issue when it rejected Gacutan's anti-SLAPP motion concluding Gacutan had failed to demonstrate the challenged speech implicated an issue of public concern. While the inquiries touch on similar issues, they are not identical. *See Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 266 (9th Cir. 2013) (separately examining whether the speech was in connection with a public issue for purposes of Cal. Civ. Code § 425.16(e) and whether Trump University was a limited purpose public figure for which actual malice was required).

To determine whether an individual or entity is a limited purpose public figure, the Court "examine[s] the nature and extent of [the individual or entity's] 'participation in the particular controversy giving rise to the defamation.'" *Makaeff*, 715 F.3d at 266 (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 352 (1974)). In making this determination, courts consider whether

1) a public controversy existed when the statements were made,
2) whether the alleged defamation is related to the plaintiff's participation in the controversy, and
3) whether the plaintiff voluntarily injected itself into the controversy for the purpose of influencing the controversy's ultimate resolution.

*Id*. at 925. Gacutan has not shown that drawing inferences from the SAC's allegations in Plaintiff's favor, the SAC alleges the required public controversy.

A matter is a public controversy if it is being "debated publicly"—as evidenced by media coverage, widespread attention, or the like—and if its "outcome [...] affects the general public or some segment of it." *Planet Aid*, 44 F.4th at 925; *Waldbaum v. Fairchild Publications, Inc.*, 627

United States District Court
Northern District of California

United States District Court
Northern District of California

F.2d 1287, 1297 (D.C. Cir. 1980) ("[A] public controversy is a dispute that in fact has received public attention because its ramifications will be felt by persons who are not direct participants."). The SAC does not allege there was any public debate or media coverage regarding disputes within the Cyberpunk 2077 community. Drawing inferences in Plaintiff's favor, the SAC's allegations—and exhibits thereto—do not compel the inference Plaintiff's conduct within the Cyberpunk 2077 community was a genuine public controversy such that Plaintiff is a limited-purpose public figure.

### 4.    Proof of Damages

Finally, Gacutan contends Plaintiff's defamation claim fails because she has not plausibly alleged defamation per se or special damages.

Plaintiff insists the statement that she filed back charges on PayPal is defamatory per se because it "implies fraud of theft-type conduct, which is a crime under *Cal. Penal Code* 484(a)." (Dkt. No. 104 at 18.) *See* Cal. Civ. Code § 46(1) (providing a statement that "[c]harges any person with crime, or with having been indicted, convicted, or punished for crime" is defamation per se). Plaintiff does not cite to any authority that remotely suggests filing back charges on Paypal is a crime. The SAC's allegations thus do not plausibly support an inference Gacutan was accusing Plaintiff of a crime and thus defamation per se does not apply. *See Crowe v. Cnty. of San Diego*, 608 F.3d 406, 444 (9th Cir. 2010) (finding "statements regarding Aaron 'exhibiting sociopathic tendencies' and being 'highly manipulative and controlling' cannot constitute defamation per se under California Civil Code § 46(1) because they do not charge Aaron with a crime.").

Because the two potentially actionable statements are not libelous on their face, "Plaintiff must allege special damages. *See* Cal. Civ. Code § 45a ("Defamatory language not libelous on its face is not actionable unless the plaintiff alleges and proves that he has suffered special damage as a proximate result thereof."). Special damages are "all damages that plaintiff alleges and proves that he or she has suffered in respect to his or her property, business, trade, profession, or occupation, including the amounts of money the plaintiff alleges and proves he or she has expended as a result of the alleged libel, and no other." Cal. Civ. Code § 48a(d)(2). Plaintiff's special damages allegations are conclusory. She alleges she has suffered "special damages for the

11

medical fees and diminution of business income." (Dkt. No. 92 at ¶ 80; *see also* ¶ 117 ("special damages in the form of medical expenses, lost wages").) These allegations neither identify the "amounts of money" she lost in business income or medical fees, nor in any way support a plausible inference these alleged losses were the result of either of these statements. This is an additional reason the defamation claim fails. *See Knight v. Climbing Mag.,* 615 F. App'x 409 (9th Cir. 2015) (affirming dismissal of defamation claim because the plaintiff failed to allege sufficient facts evidencing that the allegedly defamatory statements constituted defamation per se or that he suffered special damages).

***

Accordingly, drawing all inferences in Plaintiff's favor, while Gacutan's statements regarding filing back charges on Paypal and getting people banned on Discord are potentially actionable, Plaintiff has not adequately alleged falsity or damages. So, her defamation claim based on the May 2, 2024 Private Message to Lucent is dismissed for failure to state a claim.

### B.    Statement Two: May 2, 2024 Tweet

Plaintiff alleges the following Tweet is defamatory:



Valerie Silverhand @MrsVSilverhand · May 2
Imagine viciously bullying someone out of the fandom for using vanilla assets that belong ONLY to the game creators. Absolutely unbelievable tbh.

💬 1          🔁          ♡ 13          ılı 262          🔖 ⬆

(Dkt. No. 92-11 at 3.)

This statement is not actionable. "[V]iciously bullying someone out of the fandom" is a hyperbolic statement of opinion that is not capable of being proven true or false. *See Hartzell v. Marana Unified Sch. Dist.*, 130 F.4th 722, 747 (9th Cir.), *cert. denied*, 146 S. Ct. 298 (2025) (concluding a note stating the plaintiff "had been using her university email account to 'harass,' 'bully,' 'intimidate,' and 'threaten' cannot be actionable because they 'merely describe how [the speaker] interpreted Plaintiff's communications.'"). Further, no reasonable factfinder could conclude that the statement implies an assertion of objective fact. While the clause "using vanilla assets that belong ONLY to the game creators," which Plaintiff contends means using the original

United States District Court
Northern District of California

United States District Court
Northern District of California

unmodified game items, might be interpreted as a statement of fact, the statement can only be interpreted as describing the person Plaintiff allegedly bullied, not Plaintiff.  So, it is also not actionable.  *See Issa v. Applegate*, 31 Cal. App. 5th 689, 702 (2019) ("The defamatory statement must specifically refer to, or be 'of and concerning,' the plaintiff.").  The defamation claim based on the May 2, 2024 tweet is therefore dismissed.

### C.    Statement Three: Dufresne May 3, 2024 Tumblr Blog Post

Plaintiff alleges Dufresne republished Plaintiff's December 16, 2023 statement on his May 3, 2024 Tumblr blog and thus the statement is not barred by the statute of limitations.  (Dkt. No. 92 at ¶¶ 50, 66.)  However, her allegations as to what Dufresne posted are inconsistent.  The SAC alleges at page 15 Dufresne republished the following statement:

> can we stop promoting this zwei person on every mod on nexus. **Shes deadsss the most toxic modder int the entire cp community and manipulated, bullies and runs players out of the fandom.** She's a massive narcissist and attention w***e and she tried to stomp out everyone who uses white hair or dares to ship their w with johnny. If youre a modder watch out for her. **She'll just try to get favors and then stab u in the back.**

(Dkt. No. 92 at 15 (emphasis in original).)  But SAC Paragraph 50 alleges Dufresne's May 2, 2024 post is attached as Exhibit 13 and Exhibit 13 does not contain the above statement.  (*Compare* Dkt. No. 92 at ¶ 50 *with* Dkt. No. 92-13 (Ex. 13).)  The Court is not "required to accept as true allegations that contradict exhibits attached to the Complaint."  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  Plaintiff has thus not alleged facts which support a plausible inference Gacutan's December 16, 2023 statement was republished within the statute of limitations.

Further, even if the Court accepted Plaintiff's contradicted factual allegations as true, republication of an allegedly defamatory statement(s) by a third party can only give rise to liability when the repetition was reasonably foreseeable.  *Shively v. Bozanich*, 31 Cal. 4th 1230, 1243 (2003), as modified (Dec. 22, 2003) ("[T]he repetition by a new party of another person's earlier defamatory remark also gives rise to a separate cause of action for defamation against the original defamer, when the repetition was reasonably foreseeable.").

In *Schneider v. United Airlines, Inc.*, 208 Cal. App. 3d 71 (1989), for example, the court of

appeal held republication was foreseeable when the defendant reported information to a credit reporting agency which the credit reporting agency "republished" in credit reports containing the information to two banks. *Id*. at 73-74. In concluding such republication was foreseeable, the court stated when the defendant provided the "credit reporting agency information pertinent to appellants' credit, they necessarily must have foreseen that said information would be distributed to others (republished) as that is the function of a credit reporting agency." *Id*. at 75. And in *Canatella v. Van De Kamp*, 486 F.3d 1128, 1133 (9th Cir. 2007), the Ninth Circuit, relying on *Schneider*, concluded it was not foreseeable someone would communicate information on the California State Bar website's summary of attorney disciplinary proceedings to a third-party in a court filing. *Id*. at 1135. In doing so, the Ninth Circuit distinguished between a situation such as in *Schneider* where the defendant provided "information to an agency charged with republishing that information in response to specific inquiries" with the situation in *Canatella* when the defendant "merely posted the allegedly offensive statement on a public website."

Plaintiff has not alleged facts which plausibly support an inference Dufrense's alleged republication was foreseeable. At oral argument, Plaintiff insisted republication was foreseeable because Gacutan and Dufresne were "friends," an inference derived from the language Dufresne used in the blog post. The blog post, however, does not plausibly support an inference they are friends. Dufresne begins the post by stating it is an "[i]nformative post about what's currently going on involving Nexus Mods, Valerie Silverhand, Zwei/Rockergirldfirend, and others" and is followed by a narrative describing the history of the interactions between Plaintiff, Gacutan, and others. (Dkt. No. 92-13 at 2-4.) And Dufresne concluded the post by stating:

> I am not involved in this situation but I choose to speak up about it, to write this post, for multiple reasons
>
> The main reason being to educate/make people aware of Zwei's behavior before they choose to support her/side "with her" What is happening to Valerie Silverhand, this harassement [sic] from Zwei and her friends, isn't fair

(*Id*. at 4.) Nothing in the above suggests a friendship.

More importantly, even if they were online friends, that does not make republication sufficiently foreseeable to support liability. If it was not foreseeable the information at issue

14

in *Canatella*—disciplinary information posted online, accessible to the public via a search function, and likely to be of interest to persons seeking an attorney—would be republished, it was not foreseeable that Dufresne would repost the statements Gacutan made on a public website. To conclude otherwise would suggest anytime there is an online debate regarding a topic—such as is alleged here between persons passionate about a particular online game—it would be foreseeable for any of their many online comments discussing the game, gameplay, or other gamers to be republished by another gamer no matter how attenuated in time. This would lead to "endless retriggering of the statute of limitations." *Traditional Cat Assn., Inc. v. Gilbreath*, 118 Cal. App. 4th 392, 404 (2004) ("a multiple publication rule would implicate an even greater potential for endless retriggering of the statute of limitations, multiplicity of suits and harassment of defendants. Inevitably, there would be a serious inhibitory effect on the open, pervasive dissemination of information and ideas over the Internet, which is, of course, its greatest beneficial promise."). Plaintiff has not cited any case that remotely suggests Gacutan can be held liable for Dufresne's alleged republication.

Instead, Plaintiff's only response is to insist foreseeability is a question of fact. (Dkt. No. 104 at 16.) While "foreseeability is a question of fact for the finder of fact, [] it may be decided as a question of law if under the undisputed facts there is no room for a reasonable difference of opinion." *Kumaraperu v. Feldsted*, 237 Cal. App. 4th 60, 69 (2015). Such is the case here. Plaintiff has not alleged any facts which support an inference it was foreseeable Dufresne would include Gacutan's post on his blog, and, at oral argument she was unable to identify any. Accordingly, Gacutan may not be held liable for Dufresne's alleged republication of Gacutan's December 2023 statement, and the statute of limitations bars any claim based on the 2023 statement.

### D.      Statement 4: Matusiak's June 14, 2024 Tweets

At oral argument, Plaintiff argued Gacutan is liable for several June 14, 2024 tweets by Defendant Matusiak. According to the SAC:

> On June 14, 2024, Defendant Matusiak then said that Plaintiff destroyed one of Matusiak's romantic relationships, hurt her mental health, and spread lies about her. She accused Plaintiff of being a

"serial abuser" to many within the "Cyberpunk 2077" community. Attached hereto as **Exhibit 14** is a true and correct copy of multiple Tweets Matusiak posted about Plaintiff on June 13, 2024, and June 14, 2024.

(Dkt. No. 92 at ¶ 56.)  The SAC does not allege Gacutan had anything to do with these tweets or that they republished any prior statements by Gacutan.  And, Exhibit 14 does not reference Gacutan (or her online aliases).  (Dkt. No. 92-14.)

At oral argument, Plaintiff argued Gacutan could nonetheless be liable for Matusiak's statements because she "incited" them with her earlier statements.  Plaintiff insisted this theory was supported by *Crouch v. Trinity Christian Ctr. of Santa Ana, Inc*., 39 Cal. App. 5th 995, 998 (2019).  *Crouch* is wholly inapposite.  It was not a defamation case, but an IIED case, which held "[y]elling at a 13-year-old girl who had been drugged and raped that she was stupid and she was at fault exceed[ed] all possible bounds of decency" and supported an IIED claim.  *Id*.  *Crouch* in no way supports a theory that someone can be liable for inciting third parties to defame someone based on earlier statements they made on an online forum.

Accordingly, Plaintiff has failed to allege a basis for holding Gacutan liable for Matusiak's statements.

*** 

In sum, the only potentially actionable statements are Gauctan's statement about Plaintiff filing back charges on Paypal and getting people banned on Discord, but neither statement is adequately pleaded as to falsity or damages.

## II.    IIED CLAIM

To state a claim for IIED, a plaintiff must allege: (1) the defendant's extreme and outrageous conduct; (2) the defendant intended to cause, or recklessly disregarded the probability of causing, emotional distress; (3) the plaintiff suffered severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *See Potter v. Firestone Tire & Rubber Co*., 6 Cal. 4th 965, 1001 (1993). To be outrageous, conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id*. (quotation marks and citation omitted).

The Court previously dismissed Plaintiff's IIED claim because the statements she

United States District Court
Northern District of California

attributed to Gacutan were not so extreme as to exceed all bounds of that usually tolerated in a civilized community.  (Dkt. No. 87 at 16.)   In her SAC, Plaintiff amended her IIED claim to include allegations regarding the alleged defamatory statements, *see* SAC ¶¶ 94-97, and an allegation "Defendants" engaged in a "broader course of harassment and intimidation, including coordinated dogpiling, gaslighting, repeated targeting of Plaintiff's associates, doxxing, insinuations of violence, and encouraging others to ostracize and harass Plaintiff" (*Id*. at ¶ 93).

Plaintiff's conclusory allegations of a group course of conduct fail to state a claim. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The only allegations specific to Gacutan are the statements the Court previously concluded were not atrocious or utterly intolerable in a civilized community.[3]  (Dkt. No. 87 at 16.)  "Liability for intentional infliction of emotional distress generally 'does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities,' but only to conduct so extreme and outrageous 'as to go beyond all possible bonds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Abiola v. ESA Mgmt., LLC*, No. 13-CV-03496-JCS, 2014 WL 988928, at *5 (N.D. Cal. Mar. 3, 2014) (quoting *Alcorn v. Anbro Eng'g, Inc.*, 2 Cal. 3d 493, 499, n.5 (1970)).

Accordingly, Plaintiff's IIED claim is again dismissed for failure to state a claim.

## III.    CIVIL HARASSMENT CLAIM

Although Plaintiff filed a notice of voluntary dismissal of this claim as to Gacutan (Dkt. No. 97), because Gacutan argued in her motion that Plaintiff could not voluntarily dismiss a single claim under Federal Rule of Civil Procedure 41, Plaintiff's opposition states she has decided to continue to prosecute the harassment claim. (Dkt. No. 104 at 7-8.)  The claim, however, fails for the reasons previously stated.  (Dkt. No. 87 at 17.)  Plaintiff's allegations rely on the same statements the Court concludes do not state a claim for IIED and thus do not state a claim for harassment under California Code of Civil Procedure § 527.6.  That statue defines harassment as

---

[3] While the SAC alleges "defendants" "continued to bully her" regarding her suicide attempt, there are no allegations that support a plausible inference Gacutan knew about her alleged suicide attempt or that she made any of the statements asserting the attempt was fake. (Dkt. No. 93 at 24.)

United States District Court
Northern District of California

> unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner.

Cal. Code Civ. Proc. § 527.6(b)(3). Plaintiff does not allege facts that plausibly support an inference of such conduct.

Accordingly, Plaintiff's civil harassment claim is again dismissed for failure to state a claim.

## IV.    LEAVE TO AMEND

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," because "the court must remain guided by the underlying purpose of Rule 15 ... to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (cleaned up). "The decision of whether to grant leave to amend nevertheless remains within the discretion of the district court," which may deny leave to amend if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the party seeking amendment has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

As the Court previously granted Plaintiff leave to amend to cure the pleading deficiencies in her IIED and civil harassment claims and she failed to do so, the dismissal of those claims is without leave to amend. Further, oral argument demonstrated further leave to amend would be futile. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("where the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district court's discretion to deny leave to amend is particularly broad.") (cleaned up); *see also Brown v. Brita Prods. Co.*, No. 24-6678, 2026 WL 1028347, at *5 (9th Cir. Apr. 16, 2026) (finding the district court did not error in concluding leave to amend would be futile "where the plaintiff simply wishes to plead more specifically, and the claim would certainly be defeated even with the amendment.") (cleaned up).

Plaintiff is granted leave to amend her defamation claim as to the two potentially actionable statements discussed above to the extent she has a good faith basis consistent with Rule

11 for alleging falsity and special damages. *Lake v. Gates*, 130 F.4th 1064, 1067–68 (9th Cir. 2025) ("[courts] employ an objective standard of reasonableness and do not consider the attorney's subjective good faith.") (citing *Bus. Guides, Inc. v. Chromatic Commc'ns Enter., Inc.*, 892 F.2d 802, 811 (9th Cir. 1989), (holding that Rule 11 does not allow for a "pure heart, empty head" defense)).

**CONCLUSION**

For the reasons stated above, Gacutan's motion to dismiss is GRANTED without leave to amend, except that leave to amend is granted solely for her defamation claim based on Gacutan's statements regarding filing back charges on Paypal and getting people banned on Discord. Any amended complaint must be filed by **May 29, 2026.** Plaintiff may not add any new defendants or claims, or reassert dismissed claims, without further leave of court.

This Order disposes of Docket Nos. 99, 108.

**IT IS SO ORDERED.**

Dated: May 7, 2026

JACQUELINE SCOTT CORLEY
United States District Judge

United States District Court
Northern District of California